Sylvia J. Rolinski, Esq., D.C. Federal Bar No. 430573
ROLINSKI LAW GROUP, LLC
14915 River Road
Potomac, MD 20854
(301) 987-0202 (Telephone)
(301) 263-7100 (Facsimile)
sjr@rolinski.com

 *Pro hac vice*

J. Will Varin ISB #6981
Varin Thomas LLC
242 N. 8th Street, Suite 220
P.O. Box 1676
Boise, Idaho 83701
Phone (208) 922-7060
Fax 1-866-717-1758
willvarin@varinthomas.com

Attorneys for Defendants
Doudou Roussel Fwamba Likunde
and Anthony Nkinzo Kamole

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| PayServices Bank, an Idaho corporation<br><br>Plaintiff,<br><br> v.<br><br>The Democratic Republic of the Congo *et al.*<br><br>Defendants. | Case No.: 1:2026cv00009-REP<br><br>REPLY OF DEFENDANTS FWAMBA AND NKINZO TO PLAINTIFF'S RESPONSE (DKT.24) TO DEFENDANTS' MOTION TO ENLARGE TIME TO RESPOND TO THE COMPLAINT (DKT. 19) |

**TABLE OF CONTENTS**

**INTRODUCTION** ................................................................................... 1

**A.    The Complaint**.................................................................................. 2

**B.    Plaintiff's Delays and Missteps with Service and Fed.R.Civ.P 26** .............................. 6

**C. The Claim Against Defendant Doudou Roussel Fwamba Likunde and The Claim Against Defendant Doudou Roussel Fwamba Likunde Is False and Meritless**………………………7

**1.** The Claim Against Defendant Doudou Roussel Fwamba Likunde Is False and Meritless…….8

**2.**The Claim Against Defendant Anthony Nkinzo Kamole Is False and Meritless .....................9

**D. Defendants Who Have Not Yet Appeared in this Action** …………………………………10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ava R. Mandel, v. Defense Counterintelligence And Security Agency*,
  2026 WL 982748 (D. Md. Apr. 13, 2026) .................................................................................3

*Govan v. Owens*,
  2025 WL 894867 (D. Idaho Mar. 24, 2025) ............................................................................10

*Insure Idaho, LLC v. Horn*,
  572 P.3d 183 (Idaho 2025)......................................................................................................10

*Jemez Mountain Elec. Coop., Inc. v. United States*,
  2025 WL 2260271 (D.N.M. July 21, 2025)....................................................................3, 4, 7

*Kexuan Yao v. Crisnic Fund, S.A.*,
  2011 WL 3818406 (C.D. Cal. 2011).........................................................................................6

*PayServices Bank v. Fed. Reserve Bank of San Francisco*,
  1:23-CV-00305-REP, 2024 WL 1347094 (D. Idaho 2024).................................................1, 2

*Republic of Argentina v. Weltover*,
  504 U.S. 607, 112 S.Ct. 2160, 119 L.Ed.2d 394 (1992)...........................................................9

*Stonecipher v. City of Alamogordo*,
  2026 WL 25707 (D.N.M. Jan. 5, 2026) ....................................................................................3

*Wadler v. Bio-Rad Laboratories, Inc.*,
  916 F.3d 1176 (9th Cir. 2019) ..................................................................................................5

**Statutes**

28§ U.S.C. 1391(b) .........................................................................................................................9

Bank Secrecy Act............................................................................................................................1

**Rules**

Fed.R.Civ.P. 4(f)(1) ........................................................................................................................7

Fed.R.Civ.P. 4(f)(2)(A), (C) ...........................................................................................................6

Fed.R.Civ.P 4 (l)(2)(B) ...................................................................................................................6

Fed.R.Civ.P. 12b..............................................................................................................................8

Fed.R.Civ.P 26 .................................................................................................................5

Fed.R.Civ.P. 44.1 .............................................................................................................6

Local Rule Civ. 7.1(b)(3) ..................................................................................................1

Rule 4(d) ..........................................................................................................................4

Rule 4(f)(2) .......................................................................................................................6

Rule 4(f)(2)(C)(ii) .............................................................................................................6

Rule 4(l)(2)........................................................................................................................6

Rule 12 ........................................................................................................................7, 10

Rule 26(f) ..........................................................................................................................7

Defendants Doudou Roussel Fwamba Likunde ("Fwamba") and Anthony Nkinzo Kamole ("Nkinzo") by and through undersigned counsel and pursuant to District Local Rule Civ. 7.1(b)(3) reply to the Response (Dkt. 24) of Plaintiff PayServices Bank ("PayServices" or "Plaintiff") to the Motion of Defendants Fwamba and Nkinzo for an Enlargement of Time to Respond to the Complaint (Dkt. 19) as follows:

## INTRODUCTION

Plaintiff PayServices, already embroiled in disputes with the the Federal Reserve Bank[1] and the Idaho Department of Finance[2] over PayServices' *bona fides,* opposes a modest 30-day

---

[1] *See PayServices Bank v. Fed. Reserve Bank of San Francisco*, 1:23-CV-00305-REP, 2024 WL 1347094 (D. Idaho 2024), on appeal at appellate case number 0:2024cv02355 (9th Circuit).

On May 31, 2023, FRBSF denied PayServices' request for a master account. *PayServices Bank v. Fed. Rsrv. Bank of San Francisco*, 2024 WL 1347094, at *4 (D. Idaho 2024). The Federal Reserve Bank wrote about PayServices:

> PayServices Bank's unproven risk management framework is considered insufficient to address the heightened risks associated with its novel, monoline business model, including its ability to mitigate money laundering and terrorism financing risks. Most notably, the significant risks and concerns in the areas of [Bank Secrecy Act]/[Anti-Money Laundering] and [Office of Foreign Assets Control] risk management, credit and settlement process and controls, cyber and information security risk management, enterprise risk management, strategic planning, and the limited banking and bank-specific risk management experience among management, presents undue risk to the Reserve Bank. The proposal also presents potential concerns with respect to PayServices' ability to be resolved safely and effectively upon failure, due to its uninsured status.

This District Court agreed. *PayServices Bank v. Fed. Reserve Bank of San Francisco*, 2024 WL 1347094 (D. Idaho 2024).

[2] In state proceedings, on August 4, 2023, seven months before the alleged "Subscription Agreement," the Department of Finance of the State of Idaho notified PayServices that it had not met the conditions to receive a bank charter. PayServices itself would later describe the basis for the denial as follows: "citing issues with its business model… (with respect to) PayServices' safety and soundness as an institution."

1

extension of time for two of twelve defendants to respond to an 18-page complaint asserting

complex, multi-billion-dollar claims arising from alleged events spanning multiple jurisdictions

and governmental entities. This Reply is not intended to address the merits of Plaintiff's claims,

which will be the subject of forthcoming motions under Rule 12, but rather to demonstrate the

scope, complexity, and international nature of this action establish good cause for a modest

enlargement of time. For the reasons set forth in the motion and as is more fully set out below,

the Motion to Enlarge Time to Respond to the Complaint (Dkt. 19) should be granted.

### A.  The Complaint

Plaintiff's concern over a thirty-day extension is hard to reconcile with its languid

approach to this litigation. According to the Complaint itself, one or more defendants breached,

or conspired to induce the breach of an agreement [3] in March 2024, nearly two years before the

---

On October 18, 2024, two days after the expiration of a preliminary extension, that
department directed PayServices to cease and desist advertising  or transacting  business
in Idaho under a name or title that contains the word "bank," "banker," "bancorp,"
"savings bank," "trust company," or a word or words of similar import.

On April 20, 2026, the Fedetal Reserve filed with the Ninth Circuit in 24cv02355
(9th Circuit) a Response to PayServices' Sealed Documents (Redacted)
which noted that the rescission of preliminary approval had been "reversed pending remand."
App.Dkt. 86.1at 2.

[3] According to PayServices in the Federal Reserve action, "PayServices is a private Idaho
depository institution that focuses almost exclusively on facilitating trade commodities for the
small to medium enterprises from and to the United States…Its model 'focuses almost
exclusively on one area…. In short, PayServices' success depends on having a master account.'"
*PayServices Bank v. Fed. Rsrv. Bank of San Francisco*, 2024 WL 1347094, at *4.  Nothing in
PayServices' self-description to the Federal Reserve or to this Court in the Federal Reserve
action approaches its claim in this case that PayServices could "…revitalize the DRC's state-
owned bank, CADECO, and digitize the national economy." Complaint, Dkt.1 at ¶ 29. In its
Federal Reserve Action Complaint, PayServices acknowledges and doesn't dispute the Federal
Reserve description of PayServices' "… intention to focus on one market segment – the
commerce of commodities… PayServices focuses on the most secure transactions that involve a
physical verification of merchandises by government officials." June 27, 2023, Complaint, at ¶¶
6,44, 46, 59.  According to PayServices, its model "is not novel in any shape or form," it

January 2026 filing of the Complaint. Notwithstanding that the heart of the Complaint is an alleged March 2024 agreement, Complaint, at ¶ 16, accompanied in some unexplained way by the assertion that from "January to March 2024, the DRC government, with full presidential authorization, executed a series of binding, exclusive agreements with PayServices," *id.*, at ¶ 30, none of these ostensibly critical documents was appended to the complaint.[4]

Even if the claims in the Complaint were clear and non-contradictory, Plaintiff's refusal to produce the myriad documents[5] in its pleading warrants a reasonable enlargement of time to locate, examine and respond to documents apparently spread over multiple agencies[6] and people. This process is necessary to ensure that any response is accurate, complete, and consistent with the obligations imposed by Rule 11. Further, 30-day extensions of time to respond to a complaint are common. *See, e.g., Ava R. Mandel, v. Defense Counterintelligence And Security Agency,* 2026 WL 982748, at *3 (D. Md. Apr. 13, 2026), *Stonecipher v. City of Alamogordo,* 2026 WL 25707, at *5 (D.N.M. Jan. 5, 2026), *Jemez Mountain Elec. Coop., Inc. v. United States*, 2025 WL 2260271, at *2-4 (D.N.M. July 21, 2025)("The Court finds that the United States has shown good cause for a thirty-day extension of the deadline to respond to the Complaint. The Complaint

---

[4] "…operates no physical branches," and it does not "focus its business on retail customers." Id., at ¶ 45.

[4] While there is no requirement that an alleged contract be attached to the complaint, Plaintiff is required to "identify the express contractual provisions Defendant allegedly breached," in order to avoid dismissal. *E-Distributors, Inc. d/b/a Audiosavings v. Robert Woitkowski a/k/a Robert Blatt* 2026 WL 925829, at *5 (E.D.N.Y. Apr. 6, 2026).

[5] Indeed, at least 15 allegations in the Complaint rely on, refer to or imply the existence of supporting documentation, but no such documentation is provided. *See* Complaint at: ¶¶ 16, 19 24, 26. 27,30, 31, 32, 33, 37, 38, 40, 41, 45, and 49.

[6] *See* Complaint, at ¶ 30 (referring to alleged MOU's or agreements with CADECO" … and … with the Ministries of Digitalization, Health, Handicap, and the Post.")

is twenty-five pages long and includes sixty-five paragraphs. In addition, it references and thus incorporates a number of lengthy documents that reflect complex factual matters….").[7]

Nor is the actual claim of sufficient clarity or plausibility to facilitate review and response in a matter of less than a month. On its face, the Complaint variously asserts contract claims arising out of an unattached "Subscription Agreement," Complaint at ¶ 53, and "its related agreements," Complaint at ¶ 58. Elsewhere, PayServices contends that "[f]rom January to March 2024, the DRC government, with full presidential authorization, executed a series of binding, exclusive agreements with PayServices, including the "MOU with CADECO" (establishing a 50/50 revenue-share) and agreements with the Ministries of Digitalization, Health, Handicap, and the Post." Complaint at ¶ 30. The "DRC government" goes undefined and unidentified in paragraph 30, but PayServices makes no claim that contract Defendant DRC signed the Subscription Agreement or any of the so-called "related agreements." PayServices' "revenue share" damages claim appears to arise solely out of an agreement with an entity which is not even a defendant in this case.

PayServices then abandons contract language in favor of the term "joint venture." Complaint at ¶¶1, 2, 6, 13, 22, 24, 29, 31, 51, 59, 64, and 70. PayServices characterizes the alleged $20 million payment as a "…$20 million *investment in PayServices* (emphasis added)," rather than a contract payment. *Id*., at 24.  As to that payment, PayServices variously claims that certain defendants "blocked the payment," *id.* at ¶ 26 or merely "…prevented PayServices from transferring the funds out of the country." *Id*., at ¶34. PayServices then claims that the funds

---

[7] Indeed, had plaintiff and the individual defendants proceeded pursuant to the waiver of service provisions of Rule 4(d), the individual defendants would have been entitled to 60 days to respond.  *See* and *compare* Plaintiff's Response, Dkt. 24, at 4 (proposing waiver of service in exchange for a 36-37 day extension of time).

were to be "the catalyst to "open a representative office in the DRC"" *id.*, at ¶33.[8] Movants'

preliminary investigation already shows, however, that, in correspondence on April 1, 2025 –

undisclosed in the Complaint – PayServices wrote that the payment was only a "relatively

modest amount," though the Complaint now contends that the modest payment for a local office

somehow caused four billion  dollars in PayServices losses.[9]   These inconsistencies and

implausibilities all increase the need for additional investigation in order to respond to the

Complaint. Where, as here, the Complaint appears to describe a product entirely distinct from the

"one area" that PayServices characterizes in the Federal Reserve Action as the sole focus of its

business, and without a hint in the Complaint to specific patents, licenses or other documented

intellectual property, defendants' pre-response investigation easily requires several weeks.

In addition, this case presents unusual logistical complexity. Defendants include a foreign

sovereign, multiple high-ranking officials, and individuals located outside the United States.

Responsive investigation requires coordination across jurisdictions, languages, and governmental

entities. Counsel for Defendants are also coordinating with separate counsel representing other

parties, further necessitating additional time to ensure consistently and avoid duplicative or

piecemeal filings.

---

[8] According to PayServices in the Federal Reserve Action, PayServices "…operates no physical branches," and it does not "focus its business on retail customers." Complaint, at ¶ 45.

[9] In the Federal Reserve Action, PayServices claimed that "PayServices' business plan projects to have about $1 billion dollars by the third year." June 27, 2023, Complaint, at ¶ 58, presumably from its focus on one market segment – the commerce of commodities. This is a far cry from the alleged four billion dollar profit from a project that PayServices declines to characterize as the "commerce of commodities," the latter of which it advised this Court in the Federal Reserve Action  was its nearly sole area of business.
With red flags abounding, *see, e.g. Wadler v. Bio-Rad Laboratories, Inc.,* 916 F.3d 1176, 1182 (9th Cir. 2019), it is no wonder that responsible officials declined to enter into a final agreement with PayServices.

### B. Plaintiff's Delays and Missteps with Service and Fed.R.Civ.P 26

Plaintiff insists that a 30-day extension to respond to its 12 defendant, 4-billion-dollar claim is unjustified, Response, Dkt.24, at 3-4, but it is silent on the months and perhaps years it devoted to the preparation of the Complaint, as well as Plaintiff's failure to commence the service of process procedures for two weeks after filing the Complaint. *See* and *compare* Dkt. 1 with Dkt. 6, and *see* Dkt. 10, Plaintiff's Notice of Filing Proof of Service, asserting service nearly two weeks before filing of the defective proof of service.

Then, rather than engage one of the many reputable process servers operating in the DRC, Plaintiff elected to proceed through international delivery service – an approach which is fraught with the potential for inadequacy under US[10] and Congolese law,[11] and thus delay as the

---

[10] As the district court explained in nearly identical circumstances in *Kexuan Yao v. Crisnic Fund, S.A.,* 2011 WL 3818406 at *6 (C.D. Cal. 2011):

> Plaintiff's counsel asserts that he sent a copy of the summons and complaint to Defendant Crisnic's office via Federal Express ….
> But for this service to be effective, Plaintiff needs to submit proof. Rule 4(l)(2), governing proof of service outside the United States, requires "if made under Rule 4(f)(2) or (f)(3) ... a receipt signed by the addressee, or by other evidence satisfying the court that the summons and complaint were delivered to the addressee."
>
> Plaintiff submits insufficient proof. For the Federal Express delivery, Plaintiff submits a copy of a receipt signed by someone apparently named Katherine Cruz….But this is neither a receipt signed by Defendant Gentile, nor evidence to satisfy this Court that the summons and complaint were delivered to Defendant Gentile. There is no evidence that Ms. Cruz passed along the delivery to Defendant Gentile…. Thus, the Court further finds that Plaintiff has failed to show service of Defendant Gentile by mail with a signed receipt, under Rule 4(f)(2)(C)(ii).

*Kexuan Yao v. Crisnic Fund, S.A.,* 2011 WL 3818406 at *6 (C.D. Cal. 2011). Not a single individual defendant signed a receipt, and Plaintiff's proof of service, Dkt. 10-1, does not authenticate DHL business records, identify the server, or the place of service, or provide any evidence at all of the recipient's authority to accept service or any obligation to deliver the service package to the defendant.

[11] Plaintiff represented to the Court that its planned method of service conformed with Congolese law. Dkt 6 at 4 ("There is no prohibition in DRC law against service by mail"), and *see*

6

sufficiency of such service is litigated. Predictably, because Plaintiff failed to suitably instruct its "server" to secure sufficient evidence to satisfy the requirements of Fed.R.Civ.P 4 (l)(2)(B), the Court is faced with the need to satisfy itself on the sufficiency of service under both U.S. and Congolese law. Plaintiff's ill-founded fear of delay, Response, at 3, arise from its own choices, resolvable even now, by properly effecting service of process.

Moreover, Plaintiff confuses Rule 12 filings with Rule 26(f) requirements. It is the requirement for a conference of the parties, followed in 14 days by a report and proposed scheduling order, with a resultant scheduling conference or scheduling order, that controls the timing and management of the litigation. *See Jemez Mountain Elec. Coop., Inc. v. United States,* 2025 WL 2260271 *supra*, at *3. That initial conference between counsel must be conducted "as soon as practicable." Fed.R.Civ.P. 4(f)(1). Yet, though Plaintiff's counsel has conferred with counsel for some defendants for a week or more, Plaintiff's counsel has not yet initiated a Rule 4(f)(1) conference.

Compared to the failure to date to commence the scheduling order process, and Plaintiff's admission that Defendants DRC and the Ministry of Portfolio have 60 days to respond to the complaint, Plaintiff's objection to granting the individual defendants a similar deadline is meritless.

### C. The Claim Against Defendant Doudou Roussel Fwamba Likunde and The Claim Against Defendant Anthony Nkinzo Kamole Is False and Meritless

Defendant Doudou Roussel Fwamba Likunde and Defendant Anthony Nkinzo Kamole are in the process of investigating a broadly-false, sprawling, multi-year, multi-party, multi-agency Complaint so unfairly incomplete that the simplest stages of early investigation have been

---

Fed.R.Civ.P. 4(f)(2)(A), (C)(incorporating "foreign country's law"), but failed to comply in any respect with Fed.R.Civ.P. 44.1("Determining Foreign Law").

unnecessarily hobbled. Both Defendants fully expect to address comprehensively issues of subject matter jurisdiction, personal jurisdiction and venue.

Moreover, the Complaint itself is so flawed that relief under Fed.R.Civ.P. 12(b)(6) is likely. These motions, even if the outcome is obvious, require the sort of time and care that is simply not available in the absence of a 30-day extension. Further, both Movants vigorously deny the false allegations made against them and are entitled to a reasonable opportunity to investigate and present those issues to this Court at the earliest opportunity.

1. <u>The Claim Against Defendant Doudou Roussel Fwamba Likunde Is False and Meritless</u>

Plaintiff fabricates in paragraphs 41 and 42 of the Complaint claims against Finance Minister Fwambe which are intrinsically non-sensical and will be disputed. Even a preliminary investigation of a small portion of the documentary will show, beyond any contravention, that the Minster explained the non-final, non-binding nature of the alleged Ministry memorandum, and thereafter sought to avoid Plaintiff like the plague.

In Plaintiff's own written words on March 24, 2025: "In January, we spent two weeks in Kinshasa.[12] During my stay, following what we had agreed in New York, I contacted the minister via WhatsApp to organize a meeting, but I did not receive a response."[13] That is, Plaintiff, which

---

[12] On March 24, 2025, Plaintiff announced that "(l)ast Monday, I was at Mar-a-Lago in Florida, which is 25 minutes from our office, to discuss PayServices." Public records show that PayServices has registered at least three entities in Florida, the first of which appears to have been registered in 2015. PayServices, Inc. was in good standing in Delaware as of 2015. Plaintiff's initial filing date with the Idaho Office of the Secretary of State was September 12, 2022. Without a single contention that either Minister Fwamba or Anthony Nkinzo was ever in Idaho, Plaintiff will be unable to establish personal jurisdiction or venue in this district, or in this country. *See* 28§ U.S.C. 1391(b), all of which will be addressed in Movants' filings on May 22, 2026, or such other date as the Court fixes.

[13] PayServices also alleges that: "In or around March 2025, Olga Kadima sent a message to PayServices to follow up on this pretextual 'behind closed doors' meeting." But documents available to Plaintiff – again  excluded from the Complaint – show that, from January 16, 2025 to April 1, 2025, Plaintiff reached out in writing to Ms. Kadima at least 30 times, only to be

implies that a closed-door meeting in Kinshasa was suspicious, Complaint, at ¶ 42 persistently sought such a meeting with the Finance Minister, but was just as persistently ignored by the Finance Minister. [14]

Plaintiff's allegations in paragraph 41 and 42 of the Complaint are under continuing investigation, and will be shown to be false, in many instances through the written words of PayServices itself. PayServices' allegations are and will be vigorously contested and will be the subject of comprehensive motions under Rule 12 and, where applicable, other rules. Movants have been diligently investigating these claims and require additional time in order to present to the Court in as comprehensive a manner as is possible each of the responses and requests for relief that are warranted by the results of the investigation.

**2.** The Claim Against Defendant Anthony Nkinzo Kamole Is False and Meritless

Plaintiff's half-hearted claim against Defendant Nkinzo in paragraph 43 of the Complaint[15] is meritless on its face, and so elusive that it defies easy examination. First,

---

ignored, or rebuffed by replies such as: "we can talk tomorrow;" "My network is not good;" "I am in a meeting;" "I will call you back;" and the like. Directly contrary to the Complaint, Ms. Kadima did not initiate the follow-up calls.

[14] PayServices sought on March 28, 2025, in its own written words, to compel someone to "finalize" the non-final memorandum by threatening to use American political influence to disrupt a "minerals agreement" and "security support." PayServices characterized the agreement it sought to "finalize" as an essential component of the bilateral relationship between the DRC and the US. In its March 28, 2025, writing, PayServices stated "(t)he ITAM transaction *must be finalized* within the next week before this very important meeting takes place (emphasis added)".This statement, as with the claim in the Complaint that the project included the commitment to "digitize the national economy," Complaint at ¶ 29, dispenses with the assertion that this national economic and foreign relations undertaking was a "commercial activity" invoking the jurisdiction of a federal court. *See Republic of Argentina v. Weltover*, 504 U.S. 607, 112 S.Ct. 2160, 119 L.Ed.2d 394 (1992).").

[15] The only allegation against Defendant Nkinzo is as follows:

Compounding and likely in collaboration with this bribery, Defendant Nkinzo (the President's Chief of Staff) abused his access to the President to intentionally prevent PayServices from attending a scheduled meeting in New York. This was not a policy decision

paragraph 43 makes no attempt to allege any of the elements of conspiracy against Nkinzo, *see Govan v. Owens*, 2025 WL 894867 at *3 (D. Idaho Mar. 24, 2025), or "interference," *see Insure Idaho, LLC v. Horn*, 572 P.3d 183, 201 (Idaho 2025). Second, the Complaint fails to provide any date for the New York meeting.[16] The Complaint makes no claim that Plaintiff made any assertion to the President in the May 2025 meeting of any of the bribery misconduct alleged in the Complaint, *Id.*, at ¶ 38.

Defendant Nkinzo should not have been embroiled in this case and is entitled to the time to conduct a reasonable investigation so to bring a full range of dispositive motions.

### D. Defendants Who Have Not Yet Appeared in this Action

It appears that five defendants have not yet appeared in this action: Celestin Mukeba Muntuabu ("Mukeba"), Norbert Eholo Eoni ("Eoni"), Jean Pierre Dikoma Kitengie ("Kitengie"), Aphy Badaga Mubagwa ("Mubagwa"), and Jean-Luc Mugogwa Katshelewa ("Mugogwa"). Though undersigned counsel does not represent those five defendants, the Court should be apprised that the insufficiency of service of process, may apply to each of the defendants who have not yet appeared. *See* Dkt. 10-1. And *see* Response at 3 ("It is inequitable to ask Plaintiff to wait until May 22, 2026 to learn of Movants' potential attack of service….") *See* also, nn.9, 10, *supra*.

---

but a personal act of interference designed to keep the President in the dark regarding the bribery demands made by his co-conspirators.

[16] It is a matter of public record that Defendant Nkinzo was not even appointed to the position of Chief of Staff to the President of the DRC until June 13, 2024, more than a year after the alleged commencement of the conspiracy. The Complaint itself concedes that Plaintiff was granted a meeting with the President in May 2025, and the Complaint makes no claim that any allegation of corruption was made in that meeting.

April 29, 2026                                    Respectfully submitted,


        /s/ J. Will Varin, Esq.
        J. Will Varin
        Varin Thomas LLC
        242 N. 8th Street, Suite 220
        P.O. Box 1676
        Boise, Idaho 83701
        Phone (208) 922-7060
        Fax 1-866-717-1758
        willvarin@varinthomas.com


        /s/ Sylvia J. Rolinski, Esq.
        Sylvia J. Rolinski, Esq.
        Rolinski Law Group, LLC
        14915 River Road
        Potomac, MD 20854
        Phone: 301-987-0202
        Fax 301-263-7100
        sjr@rolinski.com


        *Counsel for Defendants*
        *Doudou Roussel Fwamba Likunde and*
        *Anthony Nkinzo Kamole*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing REPLY OF DEFENDANTS FWAMBA AND NKINZO TO PLAINTIFF'S RESPONSE (DKT.24) TO DEFENDANTS' MOTION TO ENLARGE TIME TO RESPOND TO THE COMPLAINT (DKT. 19) was served on this 29th day of April 2026 to all counsel of record via the Court's electronic case filing system:


All counsel of record.


/s/ J. Will Varin.