Jennifer Aiko, ISB 9275
**HOLLAND & HART LLP**
800 W. Main Street, Suite 1750
Boise, ID 83701
Tel: 208-342-5000
Email: jmaiko@hollandhart.com

Peter Fox, *pro hac vice pending*
Matthew Brown, *pro hac vice pending*
**SCOOLIDGE PETERS RUSSOTTI & FOX LLP**
2 Park Ave 20th Floor
New York, NY 10016
Tel: 212-729-7708
Email: pfox@sprfllp.com
        mbrown@sprfllp.com

*Attorneys for Defendant Julie Shiku*

### UNITED STATES DISTRICT COURT FOR THE
### DISTRICT OF IDAHO

| | |
|---|---|
| PayServices Bank,<br><br>            Plaintiff,<br><br>v.<br><br>The Democratic Republic of Congo, et al.,<br><br>            Defendants. | Case No. 1:26-cv-00009-REP<br><br>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT JULIE SHIKU'S MOTION TO DISMISS** |

TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................................... 1

FACTS ......................................................................................................................... 2

ARGUMENT ................................................................................................................. 3

I.      PERSONAL JURISDICTION ................................................................................. 3

        A.  Legal Standard ..................................................................................... 3

        B.  PayServices Fails to Adequately Plead Purposefully Directed Activities .............. 5

        1.  Failure to Allege Minister Shiku Aimed Activity toward Idaho ........................... 5

        2.  Allegations of In-State Harm Are False and Otherwise Insufficient ..................... 6

        C.  There is No Derivative Basis to Exercise Jurisdiction over Minister Shiku........... 8

II.     Failure to State a Claim.......................................................................... 9

        A.  Legal Standard ..................................................................................... 9

        B.  Rule 9(b)'s Heightened Pleading Standard Applies............................................. 10

        C.  The Allegations Against Minister Shiku Are Insufficiently Pled and/or Negated
            Under Either Pleading Standard.................................................................... 12

        1.  Allegations of Facts Known to PayServices "upon Information and Belief" Must
            Be Disregarded.......................................................................................... 12

        2.  The Allegation that Minister Shiku "Installed" Mr. Mukeba at CADECO Is
            Negated by Facts in the Public Record ............................................................ 13

        3.  Even Considering All of PayServices's Allegations, PayServices Fails to Plead the
            "Who, What, When, Where, and How" of the Alleged Fraudulent Scheme, or to
            Satisfy the Less Stringent 8(a) Standard ......................................................... 14

        D.  PayServices's Theories of Liability Preclude Relief............................................ 17

III.    Amendment of the Complaint Would Be Futile ................................................... 19

IV.     Insufficient Service of Process..................................................................... 20

CONCLUSION................................................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Aardema v. U.S. Dairy Sys., Inc.*,
146 Idaho 785 (2009) .....................................................................................................................18

*Alexander v. Meiling*,
No. 20-16688, 2022 WL 1797332 (9th Cir. June 2, 2022) ...........................................................19

*Alliant, LLC v. McCoy*,
No. 25-CV-00143, 2026 WL 18808 (D. Idaho Jan. 2, 2026) .........................................................8

*Am. Title Ins. Co. v. Lacelaw Corp.*,
861 F.2d 224 (9th Cir. 1988) ........................................................................................................19

*AMX Int'l, Inc. v. Battelle Energy All.*,
744 F. Supp. 2d 1087 (D. Idaho 2010) .........................................................................................17

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...................................................................................................................9, 10

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
874 F.3d 1064 (9th Cir. 2017) .........................................................................................................4

*BCS Bus. Consulting Servs. Pet. Ltd. v. Baker*,
755 F. Supp. 3d 1285 (C.D. Cal. 2024) ........................................................................................13

*Bristol-Myers Squibb Co. v. Superior Ct.*,
582 U.S. 255 (2017) .........................................................................................................................8

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) .....................................................................................................................4, 8

*Butler v. IMA Regiomontana S.A. de C.V.*,
210 F.3d 381 (9th Cir. 2000) ........................................................................................................14

*Calder v. Jones,* 465 U.S. 783, 790 (1984) ......................................................................................4

*CollegeSource, Inc. v. AcademyOne, Inc.*,
653 F.3d 1066 (9th Cir. 2011) .........................................................................................................3

*Color Switch LLC v. Fortafy Games DMCC*,
377 F. Supp. 3d 1075 (E.D. Cal. 2019) ........................................................................................13

*Cook, Perkiss & Liehe, Inc. v. N. California Collection Serv. Inc.*,
911 F.2d 242 (9th Cir. 1990) ........................................................................................................19

*Core-Vent Corp. v. Nobel Industries AB*,
  11 F.3d 1482 (9th Cir. 1993) ...................................................................................7

*Coto Settlement v. Eisenberg*,
  593 F.3d 1031 (9th Cir. 2010) ...............................................................................10

*Cuba R.R. Co. v. Crosby*,
  222 U.S. 473 (1912)................................................................................................14

*Dogan v. Barak*,
  932 F.3d 888 (9th Cir. 2019) ...................................................................................3

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
  751 F.3d 990 (9th Cir. 2014) ...................................................................................9

*Eminence Capital, LLC v. Aspeon, Inc.*,
  316 F.3d 1048 (9th Cir. 2003) ...............................................................................19

*Global Verge, Inc. v. Rodgers*,
  No. 10-CV-01360, 2011 WL 70611 (D. Nev. Jan. 7, 2011)................................7, 8

*Gover v. Isom*,
  137 Idaho 770 (2002).............................................................................................14

*Humphries v. Becker*,
  159 Idaho 728 (2015).............................................................................................18

*In re Ex Parte Application of Jommi*,
  No. 13-CV-80212, 2013 WL 6058201 (N.D. Cal. Nov. 15, 2013) ........................13

*In re Finjan Holdings, Inc.*,
  58 F.4th 1048 (9th Cir. 2023) ..................................................................................9

*Indus. Builders, Inc. v. Robson Handling Tech. USA Inc.*,
  No. 23-CV-00499, 2024 WL 1416483 (D. Idaho Apr. 2, 2024) ......................17, 19

*Intri-Plex Techs., Inc. v. Crest Grp., Inc.*,
  499 F.3d 1048 (9th Cir. 2009) ...............................................................................10

*Kinsale Ins. Co. v. Clearview Horizon, Inc.*,
  No. 21-CV-00360, 2022 WL 742718 (D. Idaho Mar. 11, 2022)..............................3

*Magnuson v. Magnuson*,
  No. 15-CV-000282, 2016 WL 3906579 (D. Idaho July 14, 2016)..........................17

*Neubronner v. Milken*,
  6 F.3d 666 (9th Cir. 1993) ...............................................................................13, 14

*Newport Fin. Corp. v. Bermuda Monetary Auth.*,
680 F. Supp. 3d 1151 (C.D. Cal. 2023) ...................................................................3

*Pebble Beach Co. v. Caddy*,
453 F.3d 1151 (9th Cir. 2006) ...............................................................................4

*Philip v. Macri*,
261 F.2d 945 (9th Cir. 1958) ................................................................................14

*Picot v. Weston*,
780 F.3d 1206 (9th Cir. 2015) ...............................................................................6

*Pistor v. Garcia*,
791 F.3d 1104 (9th Cir. 2015) ...............................................................................3

*Pyle v. Hatley*,
239 F. Supp. 2d 970 (C.D. Cal. 2002) ...................................................................8

*Samantar v. Yousuf*,
560 U.S. 305 (2010) ...........................................................................................3, 9

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004) ........................................................................3, 4, 7

*Soo Park v. Thompson*,
851 F.3d 910 (9th Cir. 2017) ...............................................................................13

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001) ..........................................................................10, 17

*Steckman v. Hart Brewing, Inc.*,
143 F.3d 1293 (9th Cir. 1998) .............................................................................10

*Taylor v. McNichols*,
149 Idaho 826 (2010) ...........................................................................................19

*Underwager v. Channel 9 Australia*,
69 F.3d 361 (9th Cir. 1995) ...................................................................................8

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) ..........................................................................9, 10

*Walden v. Fiore*,
571 U.S. 277 (2014) ................................................................................................4

*Wells Cargo, Inc. v. Transport Ins. Co.*,
676 F. Supp. 2d 1114 (D. Idaho 2009) ..................................................................3

*Wilson v. St. Luke's Reg'l Med. Ctr., Ltd.*,
  No. 13-CV-00122, 2014 WL 7186811 (D. Idaho Dec. 16, 2014) ...........................................18

*Witzke v. Idaho State Bar*,
  643 F. Supp. 3d 1093 (D. Idaho 2022) ..........................................................................10, 13

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*,
  433 F.3d 1199 (9th Cir. 2006) ........................................................................................3, 4

*Zazzali v. Ellison*,
  973 F. Supp. 2d 1187 (D. Idaho 2013) ...............................................................................13

### RULES AND REGULATIONS

Fed. R. Civ. P. 4(f)(2) .........................................................................................................20

Fed. R. Civ. P. 4(f)(2)(C)(ii) ...............................................................................................20

Fed. R. Civ. P. 4(l)(2)(B) ....................................................................................................20

Fed. R. Civ. P. 8(a) ...............................................................................................................9

Fed. R. Civ. P. 9(b) ....................................................................................................... passim

Fed. R. Civ. P. 12(b)(1)..........................................................................................................3

Fed. R. Civ. P. 12(b)(6)..........................................................................................................9

Fed. R. Evid. 201(b)..............................................................................................................10

**INTRODUCTION**

The Complaint speaks for itself. Normally, this is an argument confident plaintiffs make in opposition to motions to dismiss, but this is not a normal case. *This* is a case where, once the legal boilerplate, conclusory allegations, and inflammatory adjectives are shorn from the pleadings, almost nothing remains.

And what does remain is strange. PayServices claims that between January and March 2024, it entered into multiple unspecified agreements with the Democratic Republic of Congo ("Congo") creating a joint venture to "digitize . . . the entire national economy of DRC." According to PayServices, the parties expected the joint venture to earn $8 billion. PayServices claims that in "reliance" on these agreements, it "poured" over $72 million into Congo in the form of unidentified "technology and services." PayServices says it completed this outlay by no later than April 9, 2024—*i.e.*, less than one month after the parties signed a "Subscription Agreement," which PayServices calls the "financial keystone of the project." This "financial keystone" for an $8 billion venture was a $20 million equity investment by Congo in PayServices (0.25% of the putative enterprise value), so that PayServices could open a local office in Kinshasa. All of this was supposedly done on Congo's part pursuant to a "Presidential mandate," except that PayServices does not claim it actually met the President until May 2025.

Missing from this story are any well-pled allegations connecting Minister Shiku to Idaho, or that she committed any wrongdoing anywhere at all. Heavy on invective, the Complaint in fact only accuses Minister Shiku of three discrete acts: "demanding" a bribe; "blocking" payment on a supposed contract; and "installing" Defendant Célestin Mukeba as "GM" of a state-owned bank. None of them are well pled.

The bribery allegation is devoid of any specificity and is so obviously contrived that PayServices pleads it "upon information and belief" even though PayServices claims that it,

*itself*, received the solicitation. The Mukeba allegation is negated by facts of which the Court can take judicial notice. And the blocking allegation is pled without any specificity whatsoever. Moreover, PayServices alleges that Minister Shiku is responsible for Congo's alleged breach of the Subscription Agreement, a contention that under the "stranger-to-the-contract" doctrine precludes relief for tortious interference with that supposed contract or conspiracy to tortiously interfere with it.

For these reasons, the Complaint should be dismissed against Minister Shiku for lack of personal jurisdiction because: (1) PayServices fails to allege Minister Shiku "aimed" any activity toward Idaho; and, (2) evidence shows that PayServices is not even based in Idaho. It should also be dismissed against her for failure to state a claim because, among other reasons, (a) all allegations of wrongdoing by Minister Shiku are insufficiently pled or negated; and (b) PayServices's own allegations preclude relief. Finally, if the Court is not disposed to dismiss the Complaint on these grounds, it should nonetheless dismiss it for insufficient service of process.

## FACTS

The relevant allegations from the Complaint are discussed and attributed throughout the Argument below, as are facts (i) drawn from documents incorporated by reference in the Complaint, (ii) of which judicial notice can be taken, or (iii) which are proved by evidence submitted on the issue of personal jurisdiction.

**ARGUMENT**

## I.     PERSONAL JURISDICTION[1]

### A.     Legal Standard

Plaintiff has the burden to establish jurisdiction. *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011). At the pleading stage, allegations in a complaint are taken as true, but only to the extent they are not contradicted by evidence. *See id.* Conclusory allegations and legal boilerplate must be disregarded under general federal pleading standards. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) ("[P]laintiff cannot simply rest on the bare allegations of its complaint.").

In the absence of a federal statute governing personal jurisdiction, "the district court applies the law of the state in which the district court sits." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006). Because Idaho's long-arm statute allows broader application of personal jurisdiction than the due process permits, the jurisdictional analysis "need look only to the Due Process Clause to determine personal jurisdiction." *Kinsale Ins. Co. v. Clearview Horizon, Inc.*, No. 21-CV-00360, 2022 WL 742718, at *2 (D. Idaho Mar. 11, 2022).

Due process requires sufficient minimum contacts, which "can result in general or specific jurisdiction." *Wells Cargo, Inc. v. Transport Ins. Co.*, 676 F. Supp. 2d 1114, 1119 (D. Idaho 2009). Specific jurisdiction comes from "the relationship among the defendant, the forum state, and the

---

[1] Minister Shiku does not at this time assert conduct-based immunity under common law principles applicable to foreign government officials acting in an official capacity. *See, e.g., Dogan v. Barak*, 932 F.3d 888 (9th Cir. 2019); *Newport Fin. Corp. v. Bermuda Monetary Auth.*, 680 F. Supp. 3d 1151 (C.D. Cal. 2023). Such immunity, derived from common law foreign sovereign immunity, *Samantar v. Yousuf*, 560 U.S. 305, 324 (2010), goes to subject matter jurisdiction, and is properly raised under Fed. R. Civ. P. 12(b)(1) at any time, *Pistor v. Garcia*, 791 F.3d 1104, 1111 (9th Cir. 2015). Minister Shiku expressly reserves all such arguments and this filing shall not be construed as a waiver thereof.

litigation."[2] *Walden v. Fiore*, 571 U.S. 277, 284 (2014). Such minimum contacts exist to support specific jurisdiction only where: (1) the defendant has purposefully directed activities at the forum state or purposefully availed itself of the privilege of conducting activities there; (2) the claim arises out of or relates to the defendant's forum-state-related activities; and (3) the exercise of jurisdiction is reasonable, *i.e.*, it "comport[s] with fair play and substantial justice." *Yahoo! Inc.*, 433 F.3d at 1205-06. The minimum contacts test ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

The plaintiff bears the burden on the first two prongs of this test. *See Schwarzenegger*, 374 F.3d at 802. If the plaintiff fails to establish the first prong (directed activities or purposeful availment), the inquiry ends and the case must be dismissed. *See, e.g., Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006) (affirming dismissal without further analysis).

For intentional tort claims, courts apply the "effects test" from *Calder v. Jones* to determine whether the first prong is satisfied. *See Yahoo! Inc.*, 433 F.3d at 1206. *Calder* requires: (1) commission of an intentional act; (2) expressly aimed at the forum state; (3) causing harm that the defendant knew would likely be suffered in the forum state. *See* 465 U.S. 783, 790 (1984).

All three factors must be satisfied. A plaintiff must establish "something more" than a mere foreseeable effect in the forum state. *See Pebble Beach Co.*, 453 F.3d at 1156. This "something more" is the forum-state "aiming" referenced in *Calder*'s second factor. *See id.* Foreseeable effects in the forum state based on contact with the plaintiff are therefore insufficient by themselves. *See Walden*, 571 U.S. at 289–90; *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1070 (9th Cir. 2017).

---

[2] PayServices does not invoke general jurisdiction. *Cf.* Compl. ¶ 20.

### B. PayServices Fails to Adequately Plead Purposefully Directed Activities

#### 1. Failure to Allege Minister Shiku Aimed Activity toward Idaho

PayServices fails to allege that Minister Shiku aimed any act at Idaho. The word "Idaho" appears in the allegations 14 times: three times to describe the Subscription Agreement's choice-of-law provision, twice to describe its choice-of-forum provision, and six times to denote that PayServices is an "Idaho corporation." The remaining three references are: (1) the conclusory (and false) allegation that PayServices is "based" in Idaho, Compl. ¶ 1; (2) the conclusory (and likewise false) allegation that Congo's alleged breach of the Subscription Agreement caused "massive financial loss in Idaho," *id.* ¶ 19, and (3) the rote legal boilerplate that the individual defendants "knew or should have known that PayServices is an Idaho corporation and that the brunt of the financial injury from their conduct would be felt in Idaho," *id.* ¶ 20.

Thus, PayServices has pled nothing but alleged in-state effects of Minister Shiku's supposed torts. There are no allegations of "aiming;" no allegations of the "something more." PayServices does not allege that Minister Shiku ever visited Idaho. It does not allege that she ever communicated with anyone in Idaho. Far from it. PayServices alleges only three acts by Minister Shiku: (a) "demanding" a bribe, *id.* ¶ 35; (b) "blocking" payments Congo supposedly owed on a contract, *id.*; and (c) "installing" Mr. Mukeba as "GM" of CADECO, *id.* ¶ 44. PayServices does not bother to allege where Minister Shiku was when she supposedly took these actions, but given its allegations that she was Deputy Chief of Staff of the Ministry of Finance "at the time of the initial breach," *id.* ¶ 7, and that her alleged "blocking" payment "constituted" Congo's initial breach of the Subscription Agreement, *id.* ¶ 35, the only reasonable inference is that she would have been in Congo. Similarly, her supposed "installment" of Mr. Mukeba at CADECO—a quintessential government function—can only imply that such action would be in Congo.

The immediate effects of these alleged acts—by the very terms of the Complaint—were felt in Congo. Money that was in Congolese accounts stayed in Congolese accounts. Mr. Mukeba assumed the role of "GM" of a Congolese supposedly state-owned bank.

None of this is "aiming." Like in *Picot v. Weston*, 780 F.3d 1206, 1215 (9th Cir. 2015), where dismissal for lack of personal jurisdiction was affirmed because the defendant never visited California, never made statements to a California resident, and the payments at issue were from a non-California entity, no alleged conduct of Minister Shiku touches on Idaho.

### 2. Allegations of In-State Harm Are False and Otherwise Insufficient

In any event, even were in-state harm alone sufficient to establish purposeful direction, PayServices's allegations of "massive financial loss" in Idaho, *id.* ¶ 19, are false. PayServices is not "based" in Idaho, it is based in Boca Raton, Florida. That is where its co-founders Lionel Danenberg and Ron Raitan live, *see* Exs. D and E to Decl. of Peter Fox ("Fox Decl."); and where PayServices, *itself*, claims on LinkedIn it is headquartered, Ex. A to Fox Decl. Its allegation that its "principal place of business" is at 950 W. Bannock Street, Suite 1100, Boise, ID 83702 appears to be an outright falsehood. That address is Regus Offices' co-working space. *See* Decl. of Jennifer Aiko ("Aiko Decl.") ¶ 2; Ex. A to Aiko Decl. PayServices's membership is virtual; it does not have a physical presence at the Regus. Aiko Decl. ¶ 3; Ex. B to Aiko Decl. PayServices appears to have no members or employees in the state of Idaho. *See* Fox Decl. ¶ 4; Ex. B to Fox Decl.

PayServices's claim that Congo's supposed breach of Subscription Agreement caused losses in Idaho is further belied by the Agreement itself. Not only is PayServices not in Idaho—its money is not either. Payment under the Subscription Agreement was supposed to be routed, not to a bank account in Idaho, but to one in New York. Ex. C to Decl. of Julie Shiku ("Shiku Decl."), at 1-2. Moreover, the "brochure" PayServices references in the Complaint, Compl. ¶¶ 33, 63, indicates that PayServices wanted (or claimed to want) to use Congo's investment "to open a

representative office in DRC." Ex. D to Shiku Decl., at 14, *see also* Compl. ¶ 33. Indeed, the

brochure shows that the entirety of the supposed joint venture PayServices claims the breach

"destroyed," Compl. ¶ 63, was based in Congo, *see* Ex. D to Shiku Decl., at 3, 9–16, 19–20.

Since nearly all of PayServices's allegations about harm in Idaho are false, it is almost

beside the point to note that they are also insufficient. Nevertheless, it is true that, under general

federal pleading standards, conclusory allegations like that PayServices is "based" in a given

location or that "massive financial losses occurred" somewhere must be disregarded if not

supported by more specific factual matter. *See Schwarzenegger*, 374 F.3d at 800.

Finally, as for PayServices's corporate status: PayServices may indeed be organized under

Idaho law, but this by itself is insufficient to establish harm to the corporation. Corporate harm "is

not necessarily suffered in the place of incorporation." *Core-Vent Corp. v. Nobel Industries AB*, 11

F.3d 1482, 1486-87 (9th Cir. 1993). Rather, the inquiry is focused on a corporation's "principal

place of business[.[" *Id*. In *Global Verge, Inc. v. Rodgers*, No. 10-CV-01360, 2011 WL 70611 (D.

Nev. Jan. 7, 2011), a Nevada corporation, headquartered in Missouri, failed to establish jurisdiction

over an out-of-state defendant because:

> *Personal jurisdiction by way of express aiming does not logically extend from a corporation's principle place of business, where it actually is, to its state of incorporation, where its foundational papers are. Corporations generally incorporate in a particular state either because they are located in the state or for internal governance and legal matters. However, by incorporating in a particular forum a corporation may be sued there regardless of whether they do anything else there. Corporations do this because they believe that certain states internal governance laws can afford great protection and be very valuable to the corporation. However, it does not follow that by this strategy the corporation gains the right to sue anybody else in that same forum regardless of where the bad acts took place.*

*Id.* at *6. So it is here. PayServices may have chosen to incorporate in Idaho, but that does not permit it to drag Minister Shiku into Idaho court solely because its "foundational papers" are here.[3]

**C.    There is No Derivative Basis to Exercise Jurisdiction over Minister Shiku**

PayServices's (inadequately pled) assertion of a "civil conspiracy" claim, and its attempt to establish personal jurisdiction over Congo based on the Foreign Sovereign Immunities Act (the "FSIA"), do not provide end-runs around PayServices's burden to prove personal jurisdiction.

With respect to the supposed conspiracy, PayServices would first need to adequately plead a conspiracy and Minister Shiku's participation in it, *see Underwager v. Channel 9 Australia*, 69 F.3d 361, 364 (9th Cir. 1995) (rejecting jurisdictional arguments based on conclusory allegations of "conspiracy"); *Pyle v. Hatley*, 239 F. Supp. 2d 970, 979-80 (C.D. Cal. 2002) (same), and next actually demonstrate that Minister Shiku targeted Idaho in furtherance of the conspiracy, *see Alliant, LLC v. McCoy*, No. 25-CV-00143, 2026 WL 18808, at *5 n.6 (D. Idaho Jan. 2, 2026).[4] It

---

[3] The second prong and third prongs of the minimum contacts test make no sense in the absence of purposefully directed activities toward Idaho. Since Minister Shiku is not properly alleged to have done anything relating to Idaho, or even affected anyone meaningfully connected to Idaho, the claim against her obviously does not arise out of Idaho contacts. For the same reason, to hale Minister Shiku into court in Idaho—roughly 8,000 miles away from her home and the place of her public duties—would be extremely unfair. *See Burger King*, 471 U.S. at 477 (setting out balancing test for evaluating reasonableness); *Bristol-Myers Squibb Co. v. Superior Ct.*, 582 U.S. 255, 263 (2017) (explaining that the "primary concern" is "the burden on the defendant," which encompasses not only the practical burden of litigating in a distant forum but also "the more abstract matter of submitting to the coercive power of a State that may have little legitimate interest in the claims in question"). Here, Minister Shiku, a member of the Congolese (capital "G") Government, would face practical burdens participating in a litigation so far away, in a foreign language and under a strange legal system. Idaho, for its part, has no interest in protecting the carpetbagging PayServices, which has no physical presence in the State.

[4] Even were personal jurisdiction over a single "co-conspirator" sufficient to confer jurisdiction over all of them (which it is not), there still would be no personal jurisdiction because the same obvious failures by PayServices to connect this case to Idaho in any way apart from its incorporation here extend equally to each individual defendant. *See, e.g.*, Def. Wameso Nkualoloki's Mot. to Dismiss (ECF No. 42), at 8-13; Def. Thibonge Mbiye's Mot. to Dismiss (ECF No. 41-1), at 9-17..

fails at both. As discussed below, the allegations of conspiracy are conclusory, and as just detailed, there are no specific allegations that Minister Shiku did anything whatsoever relating to Idaho.

As for the FSIA, it does not cover claims against foreign officials sued in their individual capacities, as Minister Shiku is here. *See Samantar v. Yousuf*, 560 U.S. 305, 323-25 (2010) Thus, whether PayServices has personal jurisdiction over Congo is irrelevant for Minister Shiku.

## II. Failure to State a Claim

### A. Legal Standard

To survive a Rule 12(b)(6) motion, a complaint must satisfy the applicable federal pleading standard—either the general one under Rule 8(a) or the heightened one under Rule 9(b). Under Rule 8(a), a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible when the allegations allow the Court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* And, while inferences are drawn in the plaintiffs' favor, it is not enough for plaintiffs to "offer allegations that are merely consistent with their favored explanation but are also consistent with the alternative explanation. Something more is needed . . . in order to render plaintiffs' allegations plausible." *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996-97 (9th Cir. 2014).

Under Rule 9(b), allegations must be pled with "particularity." A plaintiff must plead "the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

Rule 9(b) applies to fraud allegations—both claims formally denominated as fraud, and also claims grounded in or dependent upon a unified course of fraudulent conduct. *See In re Finjan Holdings, Inc.*, 58 F.4th 1048, 1057 (9th Cir. 2023). Where allegations of fraud are not background,

but form the basis of the alleged wrongdoing, "the claim as a whole must satisfy the particularity requirement of Rule 9(b)." *Vess*, 317 F.3d at 1103.

Even under the general pleading standard, however, a minimum level of specificity is required. A court cannot accept legal conclusions or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

Nor can a court rely on factual allegations—no matter how specific—that are negated by other, inconsistent allegations in the complaint, *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), facts apparent from documents that are incorporated by reference in the complaint, *see Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998), or facts subject to judicial notice, *see Sprewell*, 266 F.3d at 988.[5] A document is incorporated by reference when "[the] contents of the document are alleged in [the] complaint." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). A fact is subject to judicial notice if it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *Witzke v. Idaho State Bar*, 643 F. Supp. 3d 1093, 1104 (D. Idaho 2022).

Finally, once the well-pled allegations are tallied, and even if they plausibly support the plaintiff's telling of the facts, they still must amount to a claim for relief. This means that, if proven true, the well-pled allegations would establish liability under a cognizable cause of action.

### B. Rule 9(b)'s Heightened Pleading Standard Applies

The throughline in the Complaint are (conclusory) allegations about a "conspiracy . . . designed to defraud PayServices" out of its investment in a supposed joint venture with Congo.

---

[5] Facts contained in the documents incorporated in the complaint by reference and materials subject to judicial notice are the exceptions to the general rule that courts must limit their review of the pleadings to the complaint itself. *See Intri-Plex Techs., Inc. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2009).

Compl. ¶ 23. PayServices never explains what it claims it contributed to this enterprise—variously calling it "technology and services," *id.* ¶ 2, "intellectual property," *id.* ¶¶ 10, 11, 12, 23, 28, 40, 44, 48, a "core banking system," *id.* ¶ 36, "trade know-how," *id.* ¶ 40, "trade secrets," *id.* ¶ 50, "work product," *id.* ¶ 49, and "proprietary 'ITAM' architecture," *id.*—but PayServices is consistent in its story that the individual defendants procured whatever it is supposed to be by fraud.

According to PayServices, it was "defrauded," *id.* ¶ 23—"induced to invest" in the project, *id.* ¶ 26, and, in reliance on some otherwise unidentified "proposed contract," "poured technology and services into DRC," *id.* ¶ 2; *see also id.* ¶ 36 ("In reliance on [also unidentified] agreements. . PayServices began performance . . ..."). This supposed reliance was allegedly intended by the individual defendants, whom PayServices baldly claims were in a conspiracy "to commit the tort[] of fraud," *id.* ¶ 72, and who wanted to "steal" PayServices's intellectual property/know-how/whatever, *id.* ¶¶ 11, 12, 16, 23, 28, 44, 47.

These are allegations of fraud. And they infuse both of the claims PayServices makes against Minister Shiku. This is obviously true with respect to the civil conspiracy claim, the very object of which PayServices says was "to commit the tort[] of fraud." *Id.* ¶ 73. The supposed "overt acts" of the conspiracy to defraud also include the only three specific alleged acts by Minister Shiku: "soliciting" a bribe, "blocking" a payment, and "installing" a "GM" of CADECO. *Id.* ¶ 75.

But it is also true of the tortious interference claim. Not only are the acts underlying the tortious interference claims the same as those supporting PayServices's theory of conspiracy liability for Minister Shiku, but tortious interference claims themselves are part of PayServices's theory of fraud. PayServices alleges that individual defendants caused Congo to breach contracts with PayServices as a strategic measure designed to force PayServices out of the supposed joint venture and misappropriate its "know-how" for use with a competitor. *Id.* ¶¶ 28, 47.

Thus, the non-fraud claim is "part of a unified course of fraudulent conduct" and is "entirely dependent" on that course of conduct since the alleged interference with contact derives its supposed wrongfulness from its role in the alleged fraud asserted throughout the Complaint.

Because PayServices asserts a claim for conspiracy to commit fraud, and claims for interference with contract and advantage that are only tortious because they are alleged to be in furtherance of such conspiracy, Rule 9(b) applies to both causes of action in their entirety.

### C. The Allegations Against Minister Shiku Are Insufficiently Pled and/or Negated Under Either Pleading Standard

#### 1. Allegations of Facts Known to PayServices "upon Information and Belief" Must Be Disregarded

PayServices's pleads facts *within its own actual knowledge* on information and belief.

The most glaring example of this is Paragraph 35 of the Complaint where PayServices alleges that Minister Shiku "demanded" a bribe from PayServices.[6] This highly inflammatory accusation is the lynchpin of PayServices's claims against Minister Shiku since it is the only alleged conduct that is even arguably outside the scope of typical governmental duties.

And yet, PayServices claims it *does not know* whether it, *itself*, received a solicitation. According to PayServices, "*[u]pon information and belief . . .* Defendant Shiku . . . demanded a 10% bribe." Any doubt that PayServices is alleging the solicitation was made to it, itself—and therefore that PayServices would have actual knowledge of it if it had really happened—is resolved two sentences later, where according to PayServices, "PayServices . . . refused this solicitation."

This type of distancing from an allegation of facts actually known to the pleader is tantamount to admitting the allegation is false. This is why information-and-belief pleading is

---

[6] PayServices attempts the same sleight of hand in Paragraph 41, where it alleges that Olga Kadima participated in the solicitation of a bribe *to itself* "upon information and belief," and again in Paragraph 69, addressing its alleged solicitation generally.

limited to where "the facts are peculiarly within the possession and control of the defendant . . .." *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017). The standard is even higher when Rule 9(b) applies. In that instance "[T]he general rule that allegations of fraud based on information and belief do not satisfy Rule 9(b)." *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993); *see also Zazzali v. Ellison*, 973 F. Supp. 2d 1187, 1198 (D. Idaho 2013) ("A number of allegations are also made upon 'information and belief,' with no supporting facts—a practice that is not permissible under either the heightened pleading standards of Rule 9(b)."). This alone warrants dismissal of any claim based on the bribery allegation.

### 2. The Allegation that Minister Shiku "Installed" Mr. Mukeba at CADECO Is Negated by Facts in the Public Record

PayServices alleges in Paragraph 44 of the Complaint that "[i]n late 2025, Defendant Shiku installed Defendant Mukeba as the new GM of CADECO." But the Congolese government's official gazette, the "*Journal Officiel*," conclusively demonstrates that this is false. Mr. Mukeba was appointed *directeur general* of CADECO by the President of Congo pursuant to *Ordonnance n°25/238* of July 19, 2025. Ex. B to Shiku Decl. Minister Shiku was not even a minister then. The Ministry of Portfolio confirms Minister Shiku took office on August 8, 2025. Ex. A to Shiku Decl.

Courts within the Ninth Circuit routinely take judicial notice of public records, official government publications, foreign governmental records, and information posted on official government websites. *See, e.g.*, *Witzke*, 643 F. Supp. 3d at 1104; *BCS Bus. Consulting Servs. Pet. Ltd. v. Baker*, 755 F. Supp. 3d 1285, 1298 (C.D. Cal. 2024); *Color Switch LLC v. Fortafy Games DMCC*, 377 F. Supp. 3d 1075, 1090 n.6 (E.D. Cal. 2019); *In re Ex Parte Application of Jommi*, No. 13-CV-80212, 2013 WL 6058201, at *2 (N.D. Cal. Nov. 15, 2013). The official website of the Ministry of Portfolio and a decree published in the *Journal Officiel* are paradigmatic public governmental records "whose accuracy cannot reasonably be questioned."

Once the allegations of bribery and the appointment Mr. Mukeba are dispensed with, there is only one specific allegation against Minister Shiku—"blocking" a contractual payment. This is not nearly enough to maintain any claim against her under any pleading standard.

### 3. Even Considering All of PayServices's Allegations, PayServices Fails to Plead the "Who, What, When, Where, and How" of the Alleged Fraudulent Scheme, or to Satisfy the Less Stringent 8(a) Standard

Even if the bribery and Mukeba allegations were considered, the Complaint is still woefully insufficient as to Minister Shiku.[7] Although PayServices repeatedly accuses Ms. Shiku of participating in a corrupt scheme, it pleads those accusations almost entirely through conclusory labels and speculation rather than the "who, what, where, when" that Rule 9(b) requires.

For example, even if the bribery allegation were live, it would still be naked. PayServices alleges no facts identifying when this alleged solicitation occurred, where it occurred, how it was communicated, who was present, or what was said. The same is true for PayServices's allegation that Minister Shiku "blocked" payment under the Subscription Agreement. Compl. ¶¶ 34, 35. How? On what authority? Through what governmental process? If PayServices does not know for certain, what is the basis for its suspicion? *Cf. Neubronner*, 6 F.3d at 672 ("[A] plaintiff who makes allegations on information and belief must state the factual basis for the belief.").[8]

---

[7] PayServices altogether fails even to identify what law governs its state-law claims. Given that the alleged conduct involves a foreign government official acting in a foreign country in connection with a foreign contract, Congolese law may well govern. *See Gover v. Isom*, 137 Idaho 770 (2002). One accepted approach in the Ninth Circuit is to treat PayServices's failure to identify either Congolese law or to allege the viability of its claims thereunder as a failure to prove an essential element. *See Butler v. IMA Regiomontana S.A. de C.V.*, 210 F.3d 381 (9th Cir. 2000); *Philip v. Macri*, 261 F.2d 945, 948 (9th Cir. 1958). That approach is particularly appropriate here because the Congo follows a civil law tradition, making the application of Idaho law as a default inappropriate. *See Cuba R.R. Co. v. Crosby*, 222 U.S. 473, 479 (1912).

[8] By the same token, PayServices's allegations that Minister Shiku acted in "contravention of the State's interests" or that she "abus[ed] her position," Compl. ¶ 35, are insufficient absent facts about what Minister Shiku supposedly did, or what was the scope of her position.

To be sure, PayServices repeats that Minister Shiku "conspired," *id.* ¶¶ 2, 12, 23, acted "ultra vires," *id.* ¶ 7, 25, and "outside the scope of her lawful authority," or "legitimate employment," *id.* ¶¶ 7, 69. But these allegations are legal conclusions and must be disregarded.

Equally wanting are PayServices's conspiracy allegations. PayServices alleges that Minister Shiku and the other individual defendants had a "meeting of the minds" to seal their supposed conspiracy, Compl. ¶74, but never alleges when this happened, who was there, or what was said. PayServices's invocation of terms such as "scheme" (four times), "conspiracy," (*13* times), and "co-conspirators" (4 times), cannot substitute for particularized facts.

And the list goes on. PayServices's claim for tortious interference with prospective economic advantage appears to turn exclusively on the conclusory allegation in Paragraph 71 that the individual defendants disrupted PayServices's potential business by "enforcing" the exclusivity provisions of some unidentified agreements. This is the first and only time in the Complaint that any such "enforcement" is alleged, and PayServices's omits any detail about who "enforced," when, and in what context. With no specific allegations tying Minister Shiku to any "enforcement" of the regional exclusivity, this tortious interference claim cannot lie against her.

The effect of Minister Shiku's alleged interference with contracts is also insufficiently pled. PayServices alleges the individual defendants "intentionally and unlawfully interfered" with "valid binding contracts" (plural) that PayServices "held." *Id.* ¶ *67*. However, except for the Subscription Agreement, PayServices never identifies these "contracts" with any specificity. It cannot mean the "'MOU with CADECO' referenced in Paragraph 30, which is an expressly non-binding instrument governed by Congolese law, as are the other memoranda of understanding PayServices signed in Congo. Even the more specific pleading around the Subscription Agreement is insufficient. For example, PayServices fails to specifically allege that it performed under the Agreement. Were the

share certificates PayServices promised in exchange for the $20 million investment, *see* Ex. C to Shiku Decl. § 4, ever issued? The Complaint is silent on the issue, except for the rote recitation of the performance element in Paragraph 54.

Nor is there sufficient detail to support PayServices's damages claims. As described above, its supposed $72 million "investment," Compl. ¶¶ 3, 23, 27, 64, 65, is variously described as coming the form of "know-how," "work product," and the like. PayServices never describes what this material is, or why—if it is intangible as PayServices suggests—it is lost to PayServices. Similarly, PayServices claims its supposed joint venture with Congo was projected to generate "over $8 billion" in revenue, Compl. ¶¶ 22, 23, 27, 37, 64, but never alleges how this revenue was expected to be generated, on what assumptions, or over what time frame. These are necessary facts given that the "brochure" PayServices relies upon, Compl. ¶¶ 33, 63, indicates PayServices's proposal to Congo was wholly incredible. *See generally*, Ex. D to Shiku Decl.

Indeed, the entire Complaint alternates between the nonsensical and the fantastical. To recap: PayServices claims that between January and March 2024, it entered into certain unspecified agreements with Congo creating a joint venture, *id.* ¶ 30, to do no less than "digitize . . . the entire national economy of DRC," *id.* ¶ 1. According to PayServices, the parties expected the joint venture to earn $8 billion. *Id.* ¶ 22. PayServices claims it "poured" over $72 million in unidentified "technology and services" into the project, *id.* ¶ *2*, by no later than April 9, 2024, *id.* ¶ 37—*i.e.*, less than one month after the parties signed the Subscription Agreement, which PayServices describes as the "financial keystone of the project," *id.* ¶ 32. This "financial keystone" for an $8 billion venture was a $20 million equity investment by Congo in PayServices (0.25% of the putative enterprise value), so that PayServices could perform the all-important task of opening a local office in Congo. *Id.* ¶ 33. And all of this was supposedly done on Congo's part pursuant to

a "Presidential mandate," *id.* ¶¶ 7, 10, 25, 28, 30, except that PayServices did not actually meet the President until May 2025, *id.* ¶ 38, more than a year *after* the contracting, investment, and alleged breach. Lest there be any doubt the source of PayServices's putative presidential mandate was the 2025 meeting, PayServices specifies that "any *subsequent* actions by Individual Defendants . . . were acts of insubordination and ultra vires conduct." *Id.* But the acts PayServices alleges violated the mandate all occurred a year *prior.*[9]

Courts need not accept allegations contradicted by the Complaint's own factual chronology, *see, e.g.*, *Sprewell*, 266 F.3d at 988, nor need they credit a narrative that defies belief.

**D.      PayServices's Theories of Liability Preclude Relief**

In Idaho a party cannot tortiously interfere with its own contract. *See Indus. Builders, Inc. v. Robson Handling Tech. USA Inc.*, No. 23-CV-00499, 2024 WL 1416483, at *5 (D. Idaho Apr. 2, 2024). Known as the "stranger-to-the-contract" doctrine, this rule extends to agents acting within the scope of their authority. *See AMX Int'l, Inc. v. Battelle Energy All.*, 744 F. Supp. 2d 1087, 1091-92 (D. Idaho 2010). "Thus, if a defendant's actions fall within the scope of his or her authority as an agent, there is no third party to the contract, and the plaintiff cannot state a claim." *Indus. Builders*, 2024 WL 1416483, at *5; *See, e.g.*, *Magnuson v. Magnuson*, No. 15-CV-000282, 2016 WL 3906579, at *3 (D. Idaho July 14, 2016) (dismissing tortious interference claim against trustee because, where the alleged misconduct formed the basis for the trust's own liability, the trustee was not a "stranger" to the contractual relationship and therefore could not be liable for interfering

---

[9] A similar disjuncture in timing arises from PayService's theory of intent for the alleged fraud. PayServices claims that the individual defendants wanted to "destroy" or "sabotage" the alleged joint venture "to benefit competing technology companies," Compl. ¶¶ 2, 14, 23, 28, 63, and that they achieved this by causing Congo to breach supposed contracts with PayServices, including the Subscription Agreement, *id.* ¶¶ 28, 47, 63, 73. But PayServices claims that Congo was in breach of contract no later than April 9, 2024, *id.* ¶ 37, whereas the supposed "competitors" do not appear on the scene until September and November 2025 respectively, *id.* ¶¶ 45, 48.

with it); *Wilson v. St. Luke's Reg'l Med. Ctr., Ltd.*, No. 13-CV-00122, 2014 WL 7186811, at *12 (D. Idaho Dec. 16, 2014) (holding employees alleged to have interfered with plaintiff's employment could not be liable for tortious interference where they acted as agents of the employer within the scope of their duties and therefore were not "strangers" to the contractual relationship).

Here, the only arguably specific act PayServices alleges Minister Shiku committed with respect to Congo's performance of the Subscription Agreement is her putative "blocking" of Congo's payment under the Agreement. Compl. ¶ 35. Although PayServices alleges in conclusory fashion that the blocking was a "private 'frolic' for personal gain," *id.*, and that she acted "ultra vires and outside the scope of her lawful authority," *id.* ¶ 7, it nonetheless alleges that "Defendant Shiku's blockage of the payment . . . *constituted* the DRC's initial breach of the Subscription Agreement," *id.* ¶ 35. "Only acts by the agent that are within the scope of the agency relationship affect the principal's legal liability." *Humphries v. Becker*, 159 Idaho 728, 735 (2015).

Thus, the allegation is fatal to the tortious interference claim since it paints Minister Shiku as Congo's agent, whose conduct is binding on Congo for purposes of assessing performance under the Subscription Agreement. As such, Minister Shiku cannot, as a matter of law, be treated as a stranger to the contractual relationship, and the tortious interference claim fails.

At bottom, PayServices attempts to have it both ways: PayServices alleges that Minister Shiku's alleged conduct *constituted* Congo's breach of the Subscription Agreement, Compl. ¶ 35, while *also* asserting that the very same conduct *interfered* with Congo's performance, *id.* ¶ 69.[10]

---

[10] This bootstrapping contractual liability into tort liability violates not only stranger-to-the-contract doctrine specifically, and also the independent tort theory more generally. *See Aardema v. U.S. Dairy Sys., Inc.*, 147 Idaho 785, 790 (2009) ("A tort requires the wrongful invasion of an interest protected by the law, not merely an invasion of an interest created by the agreement of the parties. Generally, a plaintiff may not recover in tort where the sole allegation is that the defendant prevented the plaintiff from gaining a purely economic advantage."

Finally, and for the same reason, PayServices's conspiracy claim fails because civil conspiracy is not a standalone cause of action under Idaho law. Rather, it depends upon the existence of an actionable underlying tort, *see Taylor v. McNichols*, 149 Idaho 826, 843-44 (2010), and, as a matter of law, a party cannot "conspire" to commit a tort that it could not otherwise commit independently, *Indus. Builders*, 2024 WL 1416483, at *7. Since, under PayServices's version of the facts, Minister Shiku could not tortiously interfere with the Subscription Agreement, she also could not *conspire* to interfere with the Agreement.

## III. Amendment of the Complaint Would Be Futile

Leave to amend is properly denied where amendment would be futile. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051-52 (9th Cir. 2003). Amendment is futile where "the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe, Inc. v. N. California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). That is this case.

First, no amendment can create personal jurisdiction. PayServices has not alleged—and cannot allege—that Minister Shiku aimed any conduct at Idaho. Jurisdictional contacts are facts, not pleading choices that PayServices could cure.

Second, no amendment can make Minister Shiku a stranger to the Subscription Agreement. PayServices has pled that she bound Congo for purposes of performance, which is a judicial admission that estops PayServices from changing this position. *See Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988); *Alexander v. Meiling*, No. 20-16688, 2022 WL 1797332, at *2 (9th Cir. June 2, 2022). This is fatal to both the tortious interference and conspiracy claims.

Finally, *Eminence Capital* identifies bad faith as an independent ground to deny leave. 316 F.3d at 1052. PayServices attempts to drag Minister Shiku into court halfway around the world without any colorable jurisdictional grounds, and on the basis of only three alleged acts, all of which suffer from egregious pleading defects.

## IV.     Insufficient Service of Process

Last, even if the Court is not disposed to dismiss the Complaint on the grounds stated above, it still must be dismissed because PayServices has failed to validly serve Minister Shiku under Rule 4(f)(2)(C)(ii) of the Federal Rules of Civil Procedure, or prove service in the manner required by Rule 4(l)(2)(B).

PayServices claims to have effected service of process on Minister Shiku pursuant to Rule 4(f)(2)(C)(ii) by having the Clerk of Court send via DHL Express to her in Kinshasa Congo. *See* Pl's Mot. for Alternative Service (ECF No. 11) ¶¶ 1, 3. PayServices then filed a receipt for the delivery of the service signed by a "Sosthene Kimvula."  *See* Pl's Not. of Filing Proof of Service (ECF No. 10) ¶ 3 & Ex. 1 (ECF No. 10-1), at PDF 3/11.

But Ms. Kimvula was not the addressee of the service package, *cf.* Clerk's Cert. of Service via DHL (ECF No. 9), at PDF 4/12, and so PayServices has failed to comply with Rule 4(l)(2)(B), which limits proof of service under Rule 4(f)(2) to receipts signed by the addressee.[11]

## CONCLUSION

For the foregoing reasons the Complaint should be dismissed in its entirety against Minister Shiku without leave to amend.

---

[11] Minister Shiku also joins the arguments of Defendant Andre Wameso that non-personal service of an individual defendants at such defendant's place of work is prohibited by Congolese law. *See* Def. Wameso Nkualoloki's Mot. to Dismiss (ECF No. 42), at 19-20. Here, the service package was addressed to 707 Avenue Wagenia Gombe, Clerk's Cert. of Service via DHL (ECF No. 9), at PDF 4/12, which is the address of the Ministry of Portfolio, *see* Ex. A to Shiku Decl. And, obviously, Ms. Kimvula is not Minister Shiku.

DATED THIS 26th day of May, 2026

**HOLLAND & HART LLP**

By  /s/ Jennifer M. Aiko
Jennifer Aiko, ISB No. 9275
HOLLAND & HART LLP
800 W. Main Street, Suite 1750
Boise, ID 83702
Telephone: 208.342.5000
jmaiko@hollandhart.com


By  /s/ Peter Fox
Peter Fox*
Matthew Brown*
SCOOLIDGE PETERS RUSSOTTI & FOX
LLP
2 Park Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 729-7708
pfox@sprfllp.com
mbrown@sprfllp.com
   *pro hac vice applications pending

*Attorneys for Defendant Julie Shiku*

38003663_v1