C. Anderson Parker, Federal Bar No. 567726
andy@psd.law
*Pro hac vice*
Miguel Andrés Sánchez-Ross, Federal Bar No. 743446
andres@psd.law
*Pro hac vice*
*PARKER SANCHEZ & DONNELLY PLLC*
700 Louisiana St., Suite 4520
Houston, TX 77002
(713) 659-7200 (Telephone)
(713) 659-7203 (Facsimile)

John F. Kurtz, Jr., ISB No. 2396
jfk@kurtzlawllc.com
*KURTZ LAW PLLC*
910 W Main Street, Ste 364
Boise, ID 83702
(208) 287-8167 (Telephone)
(208) 287-8130 (Facsimile)

Attorneys for Plaintiff PayServices Bank

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| PAYSERVICES BANK, an Idaho corporation,<br><br>Plaintiff,<br><br>v.<br><br>THE DEMOCRATIC REPUBLIC OF THE CONGO et al<br><br>Defendants. | **Civil Action No. 1:26-cv-00009-REP**<br><br>**PLAINTIFF'S RESPONSE TO THE MOTION OF THE DEMOCRATIC REPUBLIC OF THE CONGO AND THE MINISTRY OF STATE IN CHARGE OF THE PORTFOLIO TO DISMISS THE COMPLAINT [43]** |

I

**TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................................................................II

ARGUMENT ............................................................................................................................... 3

   I. The Court Has Subject-Matter Jurisdiction Over the State Defendants ................................. 3

     A. The Burden Framework ................................................................................................. 3

     B. The State Defendants Waived Immunity Under § 1605(a)(1) ........................................... 4

     C. In the Further Alternative, the Commercial-Activity Exception Reaches Both State Defendants ........................................................................................................................ 5

   II. Service Was Properly Made on Each State Defendant Under the Provision That Governs It 7

     A. The DRC Was Served in Strict Compliance With § 1608(a)(3)........................................ 8

     B. The Ministry Was Served Under § 1608(b), Which the Motion Does Not Address ....... 10

     C. Even If Any Element Were Wanting, the Remedy Is to Quash and Permit Re-Service, Not Dismissal .................................................................................................................... 11

   III. Venue Is Proper in This District ...................................................................................... 11

     A. Section 1391(f) Supplies Multiple Independent Bases for Venue.................................. 11

     B. The Subscription Agreement's Exclusive Idaho Forum-Selection Clause Confirms Venue .................................................................................................................................... 12

   IV. The Complaint States a Claim Upon Which Relief Can Be Granted ................................. 13

     A. The DRC's Status as a Non-Signatory of the Subscription Agreement Does Not Defeat Claim for Relief I............................................................................................................... 13

     B. Section 2.4's Effect Presents a Congolese-Law Question Not Resolvable on the Pleadings, and Claim for Relief I Stands on the Subscription Agreement Regardless......... 14

     C. The Motion Rests on an Altered Version of the Parties' Agreement.............................. 15

     D. The Kalonji Declaration Cannot Establish Congolese-Law Unenforceability on a Motion to Dismiss....................................................................................................................... 17

     E. The Subscription Agreement Is Not Facially Unenforceable.......................................... 18

     F. Claim for Relief II and III Provide No Basis for Dismissal With Prejudice .................... 19

     G. Claim for Relief VI States a Claim for Unjust Enrichment in the Alternative ................ 20

   V. The Complaint Should Not Be Dismissed for Failure to Join CADECO or the Non-Party Ministries ........................................................................................................................... 21

   VI. The Jury Demand Does Not Warrant Dismissal and Is Properly Limited to the Individual Defendants ......................................................................................................................... 21

CONCLUSION......................................................................................................................... 22

# TABLE OF AUTHORITIES

**Cases**

*Aberdeen-Springfield Canal Co. v. Peiper*, 133 Idaho 82, 982 P.2d 917 (1999) ........................21

*Adler v. Federal Republic of Nigeria*, 107 F.3d 720 (9th Cir. 1997).............................................7

*Alfred Dunhill of London, Inc. v. Republic of Cuba*, 425 U.S. 682 (1976) ...............................19

*Animal Science Prods., Inc. v. Hebei Welcome Pharm. Co.*, 585 U.S. 33 (2018)................15, 18

*Arbon Valley Solar LLC v. Thomas & Betts Corp.*, 2017 U.S. Dist. LEXIS 193792 (D. Idaho Nov. 21, 2017) ....................................................................................................................15

*Atlantic Marine Constr. Co. v. U.S. Dist. Court*, 571 U.S. 49 (2013) ...................................13, 14

*Attestor Master Value Fund v. Republic of Argentina*, 113 F.4th 220 (2d Cir. 2024)...................7

*Bailey v. Ness*, 109 Idaho 495, 708 P.2d 900 (1985)......................................................................14

*Bank of the United States v. Planters' Bank of Georgia*, 22 U.S. (9 Wheat.) 904 (1824)...........19

*Caballero v. Wikse*, 140 Idaho 329, 92 P.3d 1076 (2004).......................................................14, 15

*Carpenter v. Payette Valley Co-op., Inc.*, 99 Idaho 143, 578 P.2d 1074 (1978) ........................15

*CC/Devas (Mauritius) Ltd. v. Antrix Corp.*, 605 U.S. 223 (2025).....................................................8

*Dengler v. Hazel Blessinger Family Trust*, 141 Idaho 123, 106 P.3d 449 (2005)......................20

*Dole Food Co. v. Patrickson*, 538 U.S. 468 (2003)..........................................................................6

*Eckert Int'l, Inc. v. Government of Fiji*, 32 F.3d 77 (4th Cir. 1994)..................................................5

*Ella & Ramin LLC v. Travelers Ins. Co.*, 2026 U.S. Dist. LEXIS 69445 (N.D. Ill. Mar. 31, 2026) ............................................................................................................................................14

*First Nat'l City Bank v. Banco Para el Comercio Exterior de Cuba*, 462 U.S. 611 (1983) .........6

*Gemini Techs., Inc. v. Smith & Wesson Corp.*, 931 F.3d 911 (9th Cir. 2019)............................13

*Jones v. HealthSouth Treasure Valley Hosp.*, 147 Idaho 109, 206 P.3d 473 (2009)..................15

*Joseph v. Office of Consulate Gen. of Nigeria*, 830 F.2d 1018 (9th Cir. 1987) ........................4, 7

*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018).........................................18

*Knudsen v. J.R. Simplot Co.*, 168 Idaho 256, 483 P.3d 313 (2021).....................................20, 21

*La. Firefighters' Ret. Sys. v. N. Trust Invs., N.A.*, 2012 U.S. Dist. LEXIS 22693 (N.D. Ill. Feb. 23, 2012) .............................................................................................................................14

*Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001).............................................................18

*LTRAC LLC v. Wayne*, 2025 U.S. Dist. LEXIS 75776 (D. Idaho Apr. 21, 2025).......................20

*Marder v. Lopez*, 450 F.3d 445 (9th Cir. 2006)............................................................................18

*Marlowe v. Argentine Naval Comm'n*, 604 F. Supp. 703 (D.D.C. 1985).............................5, 6, 8

*M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972) ...........................................................13

*Myers v. Bennett Law Offices*, 238 F.3d 1068 (9th Cir. 2001) .....................................................13

*Nix v. Elmore County*, 158 Idaho 310, 346 P.3d 1045 (2015)......................................................21

*OBB Personenverkehr AG v. Sachs*, 577 U.S. 27 (2016) ...............................................................8

*Odhiambo v. Republic of Kenya*, 764 F.3d 31 (D.C. Cir. 2014)......................................................7

*Pablo Star Ltd. v. Welsh Gov't*, 961 F.3d 555 (2d Cir. 2020) ....................................................4, 7

*Pioneer Hotel Grp., Inc. v. Choice Hotels Int'l, Inc.*, 2026 U.S. Dist. LEXIS 63248 (D. Idaho Mar. 23, 2026)........................................................................................................................15

*Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82 (D.C. Cir. 2002) ...................8

*Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607 (1992) ................................................6, 7

*Republic of Sudan v. Harrison*, 587 U.S. 1, 139 S. Ct. 1048 (2019)................................9, 10, 12

*Roeder v. Islamic Republic of Iran*, 333 F.3d 228 (D.C. Cir. 2003).............................................8

*Saudi Arabia v. Nelson*, 507 U.S. 349 (1993)..............................................................................8

*Schlueter v. Nelson*, 74 Idaho 396, 263 P.2d 386 (1953)..........................................................20

*Stevenson v. Windermere Real Estate/Capital Grp., Inc.*, 152 Idaho 824, 275 P.3d 839 (2012) 21

*Strange v. Islamic Republic of Iran*, 320 F. Supp. 3d 92 (D.D.C. 2018).....................................7

*Takeda v. Nw. Nat'l Life Ins. Co.*, 765 F.2d 815 (9th Cir. 1985)...............................................22

*Temple v. Synthes Corp.*, 498 U.S. 5 (1990)..............................................................................22

*Terenkian v. Republic of Iraq*, 694 F.3d 1122 (9th Cir. 2012) ....................................................4

*Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148 (D.C. Cir. 1994)............................8

*Vanderford Co. v. Knudson*, 144 Idaho 547, 165 P.3d 261 (2007) ...........................................21

*Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480 (1983)................................................8

*Ward v. Apple Inc.*, 791 F.3d 1041 (9th Cir. 2015) ...................................................................22

*Weisel v. Beaver Springs Owners Ass'n*, 152 Idaho 519, 272 P.3d 491 (2012) ........................20

*Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081 (9th Cir. 2018) .......................13

**Statutes and Rules**

28 U.S.C. § 1330(a), (b)...........................................................................................................8, 22

28 U.S.C. § 1391(f)..................................................................................................................12, 13

28 U.S.C. § 1441(d) .......................................................................................................................22

28 U.S.C. § 1603(a), (b), (d) ....................................................................................................6, 22

28 U.S.C. § 1604...............................................................................................................................4

28 U.S.C. § 1605(a)(1)..................................................................................................................2, 5

28 U.S.C. § 1605(a)(2)..................................................................................................................4, 6

28 U.S.C. § 1608(a), (b), (c) ............................................................................................8, 9, 11, 12

Idaho Code § 29-110.......................................................................................................................13

Fed. R. Civ. P. 8(d) ..................................................................................................................20, 21

Fed. R. Civ. P. 9(c) .........................................................................................................................20

Fed. R. Civ. P. 12(b)(3), (b)(6), (b)(7), (d) ............................................................................12, 14

Fed. R. Civ. P. 19............................................................................................................................22

Fed. R. Civ. P. 44.1..................................................................................................................15, 18

**Other Authorities**

H.R. Rep. No. 94-1487 (1976), reprinted in 1976 U.S.C.C.A.N. 6604............................................

**INTRODUCTION**

PayServices Bank ("PayServices") brought this action to recover the $20 million the Democratic Republic of the Congo (the "DRC") and its Ministry of State in Charge of the Portfolio (the "Ministry," and together the "State Defendants") agreed to pay for equity in an Idaho company, together with the value of the proprietary banking infrastructure PayServices built and deployed at their direction. The State Defendants now move to dismiss on every available ground at once. None has merit.

The motion can be denied on the simplest of grounds: the State Defendants agreed to litigate this dispute in Idaho. The Subscription Agreement they themselves submit as Exhibit DRC/MX2 contains an irrevocable, exclusive submission to the courts of Idaho and an Idaho governing-law clause. A foreign state that agrees to be sued in a United States forum has waived its immunity under 28 U.S.C. § 1605(a)(1), and that waiver disposes of both the immunity defense and any objection to personal jurisdiction. The State Defendants cannot invoke the Subscription Agreement to argue the merits while disowning the forum clause within it.

The motion fails at every other turn as well. The commercial-activity exception independently supplies jurisdiction, because subscribing for shares of a private company for cash is a quintessentially commercial act, and the resulting obligation to pay $20 million into a New York account produced a direct effect in the United States. Service was properly made on each State Defendant under the provision that governs it — § 1608(a)(3) for the DRC, § 1608(b) for the Ministry — and any defect would warrant quashing, not dismissal. Venue is proper under § 1391(f) and is confirmed by the parties' Idaho forum-selection clause. And the Complaint states a claim: the breach of the Subscription Agreement — an Idaho-law instrument the Ministry signed and the DRC authorized — does not depend on the preliminary status of the Memoranda the motion attacks.

1

One feature of the motion warrants the Court's particular attention. The version of the Memorandum of Understanding the State Defendants use as a central framework document (Exhibit DRC/MX1 (the "MOU")) appears to have been altered after execution by the parties to favor the State Defendants and to the detriment of the PayServices. The version the State Defendants filed omits a key sentence of Article 5.2 that appears in the parties' executed original: the sentence providing that any delay in the Subscription Agreement payment automatically extends the term — and with it the State's exclusivity obligation — for as long as the $20 million remains unpaid. The document has a telltale and otherwise unexplainable blank space where this sentence had been subsequently removed after execution. A movant cannot edit the very document on which its motion depends and then ask the Court to dismiss a well-pleaded complaint on the strength of movant's edited copy.

Throughout, the State Defendants attempt to recast a specific commercial agreement their own government approved as part of a non-binding diplomatic framework. The Ministry executed the Subscription Agreement as Purchaser; the DRC undertook the venture in its own name in the MOU and, as the Complaint alleges, authorized and later reaffirmed it at the highest level. That the individual defendants are alleged to have corrupted the venture through personal, ultra vires self-dealing does not change the fact that the State made the specific agreement at issue.

Finally, the motion opens by decrying a demand for "billions of dollars." The Complaint makes no such demand. Its prayer seeks $20 million on the Subscription Agreement and, in the alternative, restitution of no less than $72 million, with consequential and tort damages to be proven at trial. The multi-billion-dollar figure is not PayServices' valuation but the DRC's own: the DRC's state-owned bank and CADECO projected that the venture would generate in excess of

2

$8 billion, of which PayServices was contractually entitled to half. The size of the demand is a question of proof, not a basis for dismissal.

For the reasons set out below, the motion should be denied in its entirety.

## ARGUMENT

### I. The Court Has Subject-Matter Jurisdiction Over the State Defendants

The State Defendants contest subject-matter jurisdiction under the FSIA. The challenge fails for three independent reasons. First, the State Defendants waived their immunity: the Subscription Agreement movants submit as Exhibit DRC/MX2 contains an irrevocable, exclusive submission to the Idaho courts and an Idaho governing-law clause, and a foreign state that agrees to litigate in a United States forum has waived immunity under § 1605(a)(1). Second, if the Court treats the Ministry as an organ of the DRC, that waiver is still the State Defendants'. Third, even if the two are treated as wholly separate, the commercial-activity exception of § 1605(a)(2) reaches each of them on the nature of the transaction and its New York place of performance. The motion can be denied on any one of these grounds.

#### A. The Burden Framework

A foreign state that establishes its status is presumptively immune; the plaintiff then bears a burden of production to show that an enumerated exception applies; and the burden of persuasion remains on the sovereign to prove by a preponderance that the exception does not apply. *Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1131 (9th Cir. 2012); accord *Joseph v. Office of Consulate Gen. of Nigeria*, 830 F.2d 1018, 1021 (9th Cir. 1987); *Pablo Star Ltd. v. Welsh Gov't*, 961 F.3d 555, 560 (2d Cir. 2020). PayServices does not dispute the State Defendants' foreign-state status. The question is whether the State Defendants can carry their burden of disproving the waiver and commercial-activity exceptions to immunity. They cannot.

**B. The State Defendants Waived Immunity Under § 1605(a)(1)**

The FSIA withdraws immunity where a foreign state "has waived its immunity either explicitly or by implication." 28 U.S.C. § 1605(a)(1). The Subscription Agreement contains both forms. Section 13, captioned "Submission to Jurisdiction," provides that the undersigned irrevocably submits to the jurisdiction of the federal or state courts located in the State of Idaho, which submission shall be exclusive.[1] Section 14 provides that the Agreement is governed by and construed in accordance with the laws of the State of Idaho. An irrevocable, exclusive submission to a named United States forum is the clearest case of waiver the statute contemplates: a foreign state that has expressly agreed to be sued in Idaho has consented to the very jurisdiction it now resists.

Ninth Circuit law confirms the point. In *Joseph*, the court held that a foreign state waived immunity through a lease that did not even specify a governing jurisdiction, reasoning that waiver by contract is premised on an agreement that United States courts may become involved in disputes arising under the contract, and that where an agreement contemplates adjudication by United States courts the waiver exception applies regardless of whether the governing law is identified. 830 F.2d at 1022–23. If a clause merely contemplating adjudication in court suffices, an express and exclusive submission to the Idaho courts plainly does. The choice-of-law clause supplies an independent basis for the same conclusion: courts treat a foreign state's agreement that a U.S. jurisdiction's law governs a contract as an implied § 1605(a)(1) waiver. See *Eckert Int'l, Inc. v.*

---

[1]The State Defendants nowhere confront § 1605(a)(1) or the submission to jurisdiction in Section 13 of the Subscription Agreement. Their sole immunity argument is that the transaction was not "commercial activity" within § 1605(a)(2) — recasting the Ministry's purchase of corporate shares as sovereign conduct. Case law does not support this. *See* I.C., below. Section 13 surfaces only once: a lone footnote in the venue argument asserting that "[t]here is no basis for reliance on the forum selection clause in the Subscription Agreement," followed by a cross-reference to a "discussion" the Motion never supplies. Mem. in Supp. p. 12, n.15.

*Government of Fiji*, 32 F.3d 77, 79–80 (4th Cir. 1994); *Marlowe v. Argentine Naval Comm'n*, 604 F. Supp. 703, 708–09 (D.D.C. 1985). The House Report confirms that an agreement that the law of a particular country governs a contract is a paradigm implied waiver. H.R. Rep. No. 94-1487, at 18 (1976), reprinted in 1976 U.S.C.C.A.N. 6604, 6617.

If the Court declines to treat the Ministry and the DRC as a single party and instead views the Ministry as an organ of the State, the result is the same: the organ's contractual waiver binds the State. The juridical status of a foreign-state organ is a question of federal law, not of the foreign state's own law. *First Nat'l City Bank v. Banco Para el Comercio Exterior de Cuba*, 462 U.S. 611, 621–23 (1983). On that principle, *Marlowe* rejected the very argument the DRC presses: the Argentine Naval Commission contended it was a mere subordinate command and that the only proper defendant was the Republic; the court held that federal law determined the entity's status, treated the Commission as the foreign state itself, and held its contractual choice-of-law clause waived the State's immunity. 604 F. Supp. at 705–09. The Ministry stands in the same position. This characterization is advanced for FSIA jurisdictional purposes; which entity ultimately bears contractual liability is a merits question governed by *Bancec* and *Dole Food Co. v. Patrickson*, 538 U.S. 468 (2003).

### C. In the Further Alternative, the Commercial-Activity Exception Reaches Both State Defendants

Even if the Court sets the waiver aside and treats the Ministry and the DRC as wholly separate, § 1605(a)(2) independently supplies jurisdiction over each, because the exception turns on the nature of the act, not the identity or motive of the actor. The commercial character of an act is determined by reference to its nature, not its purpose. 28 U.S.C. § 1603(d). When a foreign state acts not as a regulator of a market but in the manner of a private player within it, its actions are commercial. *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 614 (1992). The Subscription

Agreement is such an act: the Ministry agreed to subscribe for 36,700 shares of PayServices Bank — a 3.67% equity interest — for US$20 million, on terms that mirror an ordinary private placement. That the State Defendants pursued the investment for governmental ends is immaterial; the statute commands separating nature from purpose. Id. at 614–17. *Joseph* likewise rejected any requirement of a profit motive. 830 F.2d at 1023–24. *Strange v. Islamic Republic of Iran*, 320 F. Supp. 3d 92, 97 (D.D.C. 2018), is not to the contrary: it held a nation-to-nation framework noncommercial while reaffirming that contracts to acquire goods or services are commercial. PayServices' claims rest on the operative equity-purchase contract, not on the MOU framework instrument. See also *Pablo Star*, 961 F.3d at 564; *Attestor Master Value Fund v. Republic of Argentina*, 113 F.4th 220, 231 (2d Cir. 2024).

The transaction is not only commercial in nature; it also satisfies § 1605(a)(2)'s requirement of a direct effect in the United States. The breach caused a direct effect in the United States because the money was due in New York and never arrived. An effect is direct if it follows as an immediate consequence of the defendant's activity; it need be neither substantial nor foreseeable. *Weltover*, 504 U.S. at 618. Where a sovereign fails to make a payment due into a designated New York account, that failure necessarily has a direct effect in the United States. Id. at 619. The Ninth Circuit applied that rule on materially identical facts in *Adler v. Federal Republic of Nigeria*, where a sovereign contractually obligated to transfer funds to the plaintiff's New York bank account caused a direct effect by failing to do so. 107 F.3d 720, 727, 729 (9th Cir. 1997). The Subscription Agreement directed payment of US$20 million to a designated account at Chase Bank in New York; the State Defendants did not perform. *Adler* forecloses the State Defendants' subsidiary points: what the payee intended to do with the funds afterward is not the issue, and the absence of

6

any prior payment into the account does not matter. Id. at 729; accord *Odhiambo v. Republic of Kenya*, 764 F.3d 31, 40 & n.2 (D.C. Cir. 2014).

The action is "based upon" that activity within the meaning of § 1605(a)(2): the phrase reaches those elements of a claim that, if proven, would entitle a plaintiff to relief. *Saudi Arabia v. Nelson*, 507 U.S. 349, 357 (1993); see *OBB Personenverkehr AG v. Sachs*, 577 U.S. 27, 35 (2016). The gravamen of the State Defendants' liability on Claims for Relief I, II, III, and VI is the failure to pay the US$20 million owed under the Subscription Agreement — the commercial act and the claim are one and the same. For purposes of both the commercial-activity and waiver analyses, the Ministry is an organ of the State whose acts are the State's: an entity such as the Ministry whose core functions are governmental must be treated as the state itself rather than as its agent. *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 234 (D.C. Cir. 2003); *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 151–53 (D.C. Cir. 1994).

Finally, a § 1605(a)(1) waiver defeats any personal-jurisdiction defense, because the FSIA governs both immunity and personal jurisdiction. *Marlowe*, 604 F. Supp. at 709–10 (citing *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 485 n.5 (1983)). Independently, once an exception applies and the State has been served under § 1608, personal jurisdiction exists automatically under § 1330(b), with no minimum-contacts showing required. *CC/Devas (Mauritius) Ltd. v. Antrix Corp.*, 605 U.S. 223 (2025); *Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 89 (D.C. Cir. 2002). Having themselves invoked *CC/Devas*, the State Defendants cannot escape its holding.

## II. Service Was Properly Made on Each State Defendant Under the Provision That Governs It

The State Defendants seek dismissal for insufficient service, but they analyze the DRC and the Ministry as though a single rule governed both. It does not. Section 1608(a) governs service

7

on a foreign state or political subdivision; § 1608(b) governs service on an agency or instrumentality. PayServices served the DRC — the foreign state — under § 1608(a)(3), and served the Ministry — pleaded as an agency or instrumentality (Compl. ¶ 6) — under § 1608(b). The motion's failure to keep the two regimes separate is the source of its errors.

### A. The DRC Was Served in Strict Compliance With § 1608(a)(3)

Because no special arrangement or applicable convention governed, PayServices proceeded under § 1608(a)(3), which calls for sending the summons, complaint, and a notice of suit, with a translation of each into the official language of the foreign state, by mail requiring a signed receipt, addressed and dispatched by the clerk to the head of the ministry of foreign affairs. Each element was satisfied. The packet dispatched to the DRC contained the summons, the Complaint, and a Notice of Suit, each accompanied by a French translation, and the summons was addressed to Thérèse Kayikwamba Wagner, the head of the DRC's ministry of foreign affairs, at the Ministry's offices in Kinshasa. (Dettman Decl. ¶¶ 5–6 & Ex. A.) That is precisely the configuration the Supreme Court required in *Republic of Sudan v. Harrison*, 587 U.S. 1, 139 S. Ct. 1048 (2019): a mailing sent directly to the foreign minister's office in the minister's home country. The defect in *Harrison* was a packet sent to the foreign state's embassy in Washington; here the packet went to the foreign minister in Kinshasa.

The signed delivery receipt was returned, confirming delivery in Kinshasa, and under § 1608(c)(2) service is deemed made as of the date of that receipt. (Pl.'s Notice of Filing Proof of Service, ECF No. 10 & ECF No. 10-1; Clerk's Certificate of Service, ECF No. 9.) That the receipt was signed by an individual other than Minister Wagner is immaterial. *Harrison* expressly contemplated that a foreign minister's mail will generally be signed for by a subordinate at the home-country ministry, who presumably has authority to receive it; the contrast the Court drew was between such a subordinate and an embassy mailroom employee. 139 S. Ct. at 1057. A

8

subordinate's signature at the home-country ministry is the anticipated mode of completing service, not a defect.

To the extent the State Defendants suggest that service failed for a naming irregularity, the suggestion is both factually wrong and legally unsupported. The dispatched packet named Minister Wagner and bore the Ministry's customary address in Kinshasa. See Dettman Decl. ¶ 6.[2] And even if there were any imperfection, *Harrison* reserved the question whether the correct minister had been named, resolving the case solely on the embassy-versus-home-country ground, id. at 1054 n.1; the home-country mailing here satisfied the statute's operative requirements.

The State Defendants' reliance on *Kexuan Yao v. Crisnic Fund, S.A.*, 2011 WL 3818406 (C.D. Cal. 2011), is misplaced. *Kexuan* was not an FSIA case and did not involve service on a foreign state. The defendants there were a Costa Rican corporation and an individual residing in Costa Rica, and the court analyzed service exclusively under Federal Rules of Civil Procedure 4(f) and 4(h) — the provisions governing service on private parties abroad — applying Rule 4(l)(2)'s requirement of a receipt signed by the addressee. Service on a foreign state is not governed by those rules; the Federal Rules themselves direct that a foreign state be served in accordance with 28 U.S.C. § 1608, and § 1608(a) supplies the exclusive framework. The distinction is not merely formal. The proof concern animating *Kexuan* — that a receipt signed by an unknown person gives no assurance the papers ever reached the intended defendant — arises only because, in private-party service, the addressee's identity and location are themselves facts the plaintiff must establish, so a stranger's signature leaves a genuine gap between delivery and the defendant. Section 1608(a)(3) is built differently. It does not ask a plaintiff to locate a defendant and prove receipt by

---

[2] The Motion describes only the clerk's transmittal instructions, see ECF 6, not the packet actually received in Kinshasa — which the State Defendants possess but chose not to file as part of its motion. The packet sent to the DRC is before the Court as Exhibit B. That packet includes the English- and French-language summons and complaint and names the Minister of Foreign Affairs, Thérèse Kayikwamba Wagner.

a particular individual; it directs the clerk of the court to dispatch the packet to a single, statutorily designated, publicly known institutional recipient — the head of the ministry of foreign affairs — at the ministry itself. Once the clerk so addresses the packet and it is received at that ministry, the statute is satisfied; that a subordinate at the ministry signed for it is the ordinary incident of service by this method, not a gap in proof. The Rule 4(l) standard the State borrows from Kexuan therefore measures the DRC's service against the wrong yardstick — and against a risk that the § 1608(a)(3) mechanism forecloses by fixing both the sender and the recipient in advance.

**B. The Ministry Was Served Under § 1608(b), Which the Motion Does Not Address**

Service on an agency or instrumentality is governed by § 1608(b), not § 1608(a) — a distinction the motion overlooks by measuring service on the Ministry against § 1608(a)(3). Section 1608(b) sets out its own hierarchy, placing first any special arrangement for service between the plaintiff and the agency or instrumentality. § 1608(b)(1). The Subscription Agreement — the very contract on which PayServices sues the Ministry — specifies how communications are to be delivered: Section 17 provides that notices are duly given if sent by registered or certified mail, return receipt requested, to the address on the Agreement's first page, which is the Ministry at 707, Avenue Wagenia, Kinshasa/Gombe. PayServices served the Ministry exactly that way. That is service under a special arrangement, at the top of the § 1608(b) hierarchy.

Section 17 is a special arrangement for service that controls under § 1608(b)(1) — or, to the extent the Court treats the Ministry as an organ of the State, under § 1608(a)(1), which likewise places a special arrangement first in the hierarchy. Either way, PayServices served the Ministry exactly as Section 17 prescribes. And even apart from the special arrangement, service independently satisfied § 1608(b)(3)(B): the summons and Complaint, with French translations, were dispatched by mail requiring a signed receipt to the Ministry's own offices in Kinshasa — a method reasonably calculated to give actual notice that in fact gave actual notice, as the Ministry

10

has appeared and is litigating this motion. *Harrison* does not govern the Ministry: it construed §
1608(a)(3) and expressly contrasted that provision with § 1608(b)(3)(B)'s "reasonably calculated
to give actual notice" standard, which § 1608(a)(3) lacks. 139 S. Ct. at 1057–58.

### C. Even If Any Element Were Wanting, the Remedy Is to Quash and Permit Re-Service, Not Dismissal

A defect in FSIA service is cured by quashing and permitting the plaintiff to serve again;
it does not warrant dismissal. *Harrison* makes the point: holding service insufficient is not the end
of the road, because the plaintiff may attempt service again under § 1608(a)(3) and, failing that,
under § 1608(a)(4) — a guaranteed backstop through the Secretary of State. 139 S. Ct. at 1062.
Where both State Defendants have actual notice and have appeared, dismissal would serve no
statutory purpose. If the Court finds any element of service incomplete, the appropriate course is
to quash and allow a short period to perfect service.

### III. Venue Is Proper in This District

The State Defendants contend that venue is improper because material events occurred in
the DRC and because PayServices has an office in Florida. The argument misreads the venue
statute, ignores most of the options it provides, and conflates the Rule 12(b)(3) question — whether
venue is statutorily proper — with a forum non conveniens inquiry the State Defendants concede
they have not yet presented.

### A. Section 1391(f) Supplies Multiple Independent Bases for Venue

Venue in an action against a foreign state is governed by 28 U.S.C. § 1391(f), which lists
disjunctive bases: among them, any district in which a substantial part of the events or omissions
occurred or a substantial part of the property is situated, § 1391(f)(1), and any district in which an
agency or instrumentality is licensed to do or is doing business, § 1391(f)(3). Venue is proper if
any one applies, and more than one does here. The gravamen of the action is the State Defendants'

failure to pay PayServices the $20 million the Subscription Agreement required. PayServices is an Idaho corporation; the contract is governed by Idaho law and was executed with an Idaho counterparty; and the injury from nonpayment was sustained in Idaho. The Ninth Circuit treats the locus of injury as part of the "substantial part" inquiry. *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1075–76 (9th Cir. 2001). The State Defendants' insistence that performance was to occur in the DRC merely identifies another district where some events occurred; § 1391(f)(1) does not make venue exclusive to the place of performance. As to the Ministry, § 1391(f)(3) independently makes venue proper wherever it is doing business, and whether contracting with an Idaho corporation under an Idaho-governed agreement constitutes doing business in Idaho cannot be resolved against PayServices on this motion.

### B. The Subscription Agreement's Exclusive Idaho Forum-Selection Clause Confirms Venue

Section 13 of the Subscription Agreement is an exclusive forum-selection clause by which the Ministry agreed to litigate in Idaho. PayServices sued in Idaho. The State Defendants dispose of the clause in a single footnote cross-referencing a discussion that does not appear in their motion. The clause is valid and enforceable, and Idaho's own public policy confirms as much: a forum-selection clause is presumptively valid absent a strong showing of fraud, overreaching, or grave inconvenience, *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972); *Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1088 (9th Cir. 2018), and Idaho Code § 29-110(1) declares it against Idaho public policy to restrict a party from enforcing its contract rights in Idaho tribunals — a policy the Ninth Circuit has held strong enough to void a contrary clause, *Gemini Techs., Inc. v. Smith & Wesson Corp.*, 931 F.3d 911, 914–16 (9th Cir. 2019). The policy that voids clauses forcing Idaho disputes out of Idaho necessarily supports a clause keeping this Idaho dispute in Idaho. In all events, under *Atlantic Marine Constr. Co. v. U.S. Dist. Court*, 571

12

U.S. 49, 55–56 (2013), whether venue is "proper" is governed by § 1391, not by a forum-selection clause; a case filed in a proper district may not be dismissed under Rule 12(b)(3). The clause here points into this District, so it supplies no basis for dismissal or transfer — it confirms the agreed forum.

## IV. The Complaint States a Claim Upon Which Relief Can Be Granted

### A. The DRC's Status as a Non-Signatory of the Subscription Agreement Does Not Defeat Claim for Relief I

The State Defendants argue that Claim for Relief I fails as to the DRC because the Subscription Agreement was signed by the Ministry, not the DRC. The argument fails twice over. It does nothing to Claim for Relief I against the Ministry, the signatory — which alone defeats dismissal of the Claim. And it fails as to the DRC, because whether an agent had authority to bind its principal, and whether the principal ratified the agent's act, are questions of fact, not defects on the face of a complaint.

For the proposition that non-parties are not liable on a contract, the State Defendants rely on *Ella & Ramin LLC v. Travelers Ins. Co.*, 2026 U.S. Dist. LEXIS 69445 (N.D. Ill. Mar. 31, 2026), which quotes *La. Firefighters' Ret. Sys. v. N. Trust Invs., N.A.*, 2012 U.S. Dist. LEXIS 22693 (N.D. Ill. Feb. 23, 2012). Run to its source, the axiom defeats a claim against a genuine stranger to the instrument; it says nothing about a named principal whose authorized agent executed the agreement. The DRC is not a stranger: it is the named party to the MOU, executed in its own name as the "Congolese State," in which it represented its authority to perform its obligations, and the same Ministry that bound the DRC there executed the Subscription Agreement as the financial keystone of the same venture.

Under Idaho law, an agent may bind its principal through actual authority, and a principal is equally bound where it ratifies the agent's act by accepting and retaining the benefits or failing

13

to disaffirm. *Caballero v. Wikse*, 140 Idaho 329, 332, 92 P.3d 1076, 1079 (2004) (citing *Bailey v. Ness*, 109 Idaho 495, 708 P.2d 900 (1985)); *Carpenter v. Payette Valley Co-op., Inc.*, 99 Idaho 143, 578 P.2d 1074, 1078 (1978). Whether such authority or ratification exists is a question of fact. *Caballero*, 92 P.3d at 1079; *Pioneer Hotel Grp., Inc. v. Choice Hotels Int'l, Inc.*, 2026 U.S. Dist. LEXIS 63248, at *22 (D. Idaho Mar. 23, 2026) (citing *Jones v. HealthSouth Treasure Valley Hosp.*, 147 Idaho 109, 206 P.3d 473, 479–80 (2009)). If those questions could not be resolved even on summary judgment in *Pioneer*, they cannot be resolved against PayServices on the pleadings here, where the Complaint alleges that the venture was undertaken with full presidential authorization and that the DRC accepted the benefits of PayServices' performance and later reaffirmed the commitment. The State Defendants' own authority, *Arbon Valley Solar LLC v. Thomas & Betts Corp.*, 2017 U.S. Dist. LEXIS 193792, at *17–18 (D. Idaho Nov. 21, 2017), proves the point: it declined to find a principal bound where the plaintiff had pleaded no manifestations of the principal — the precise allegations the Complaint here supplies.

## B. Section 2.4's Effect Presents a Congolese-Law Question Not Resolvable on the Pleadings, and Claim for Relief I Stands on the Subscription Agreement Regardless

Whether the Memoranda are binding under Congolese law is a contested question that cannot be resolved on a Rule 12 motion. Section 2.4 of the MOU disclaims procurement-award effect and obligations "that would give rise to [the parties'] liability," and provides that its terms prevail over conflicting clauses; but the same instruments contain an express undertaking to negotiate implementation in good faith (§ 2.5) and operative exclusivity and confidentiality covenants (§§ 6.1, 6.3–6.5). Whether § 2.4 negates those covenants — and whether the prevail-over sentence reaches affirmative covenants at all — is itself a question of Congolese contract law that must be determined on a developed record. Fed. R. Civ. P. 44.1; *Animal Science Prods., Inc.*

14

*v. Hebei Welcome Pharm. Co.*, 585 U.S. 33 (2018). PayServices' position is that the instruments are binding; at a minimum, their status cannot be adjudicated against PayServices on the pleadings.

In all events, the breach claim does not depend on the Memoranda. The Subscription Agreement is a separate, fully executed instrument with its own binding-effect, irrevocability, Idaho governing-law, and exclusive-forum provisions (§§ 8, 13, 14, 18). Section 2.4 is internal to the MOU and cannot reach the Subscription Agreement. Claim for Relief I stands on the Subscription Agreement regardless of how the Memoranda are ultimately construed. And because resolving the State Defendants' § 2.4 theory would require the Court to determine contested Congolese law on the strength of the movants' own litigation-prepared declaration, the question cannot be reached on a Rule 12(b)(6) motion without conversion under Rule 12(d) — which would be premature before any discovery.

### C. The Motion Rests on an Altered Version of the Parties' Agreement

There is a more basic problem with the motion's reliance on the MOU: the version the State Defendants filed is not the parties' executed agreement. Exhibit DRC/MX1 omits the second sentence of Article 5.2 that appears in the executed original PayServices holds. The executed Article 5.2 provides, after the initial twelve-month term: "Tout retard de Paiement au titre du contrat de souscrition de parts signé concomitamment entraîne automatiquement la prorogation de la période initiale par une ou plusieurs tranches successives de douze (12) mois, lesquelles prennent effet à compter de la date effective du paiement." That sentence provides that any delay in the concomitantly-signed Subscription Agreement payment automatically extends the initial term in successive twelve-month tranches running from the actual date of payment. Read with Article 6.1 — under which the Exclusivity Period runs through the MOU's expiry "ou de sa prorogation" (or its extension) — the sentence keeps the term, and the State's exclusivity obligation, alive for as long as the $20 million remains unpaid.

The sentence is missing from the document the State Defendants filed. In the filed French original, Article 5.2 ends at "durée convenue par les Parties," followed by a conspicuous blank space before Article 6 — the space where the removed sentence sat; the certified English translation the State Defendants commissioned omits the sentence as well, rendering the altered French it was given. The surrounding provisions (Articles 6.1 through 7.1) are identical and identically positioned on the page of both versions, which confirms that the sentence was removed from the fixed, executed version that had it, rather than added to one that did not. PayServices' executed counterpart, signed in two originals, is authenticated by the accompanying declaration of Lionel Danenberg. (Danenberg Decl. ¶ 14.)

Compare what the State Defendants' filed:



With the version in the attached declaration:



The alteration is fatal to the motion's use of the exhibit on a Rule 12(b)(6) motion. A court may consider a document not attached to the complaint only where, among other requirements, no party questions the authenticity of the copy attached to the motion. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006); *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001). Because PayServices contests the authenticity of the filed copy, that requirement is not met, and the exhibit falls outside the incorporation-by-reference doctrine. The doctrine is not a tool for defendants to short-circuit the resolution of a well-pleaded claim; a defendant may not insert its own version of a document to manufacture a defense and defeat otherwise cognizable claims, and a court should not assume the truth of an incorporated document where doing so would only dispute facts in a well-pleaded complaint. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002–03 (9th Cir. 2018).

The consequences for the motion are direct. The complete, executed instrument defeats any contention that the MOU's twelve-month term expired or that exclusivity lapsed before the conduct at issue; the French text controls under Article 9.1, and its construction is a Rule 44.1 question informed by, but not bound to, the State Defendants' characterization. *Animal Science*, 585 U.S. at 42–43. A precise, self-executing, payment-contingent term is not the language of a mere agreement to negotiate, which undercuts the § 2.4 "non-binding" theme. And a movant's reliance on a document it has altered is reason to view the remainder of its submission — including the Kalonji declaration and the § 2.4 argument — with corresponding caution.

### D. The Kalonji Declaration Cannot Establish Congolese-Law Unenforceability on a Motion to Dismiss

The State Defendants' third theory — that the agreements are unenforceable because Congolese public-finance law required Finance-Ministry and parliamentary approval that never occurred — rests entirely on a seven-paragraph declaration prepared for this motion by Senior

Legal Advisor Trésor-Gauthier Mitongo Kalonji (Ex. DRC/MX7).[3] A contested question of foreign law cannot be resolved against the non-moving party on a Rule 12(b)(6) motion, least of all on the strength of the movants' own litigation-prepared declaration. The determination of foreign law under Rule 44.1 is for the Court on a developed record and is entitled to respectful consideration, not conclusive effect; a court is neither bound by a foreign government's characterization nor required to ignore other materials, and a litigation-generated account warrants particular caution. *Animal Science*, 585 U.S. at 42–44.

The declaration's own terms confirm that it does not establish unenforceability as a matter of law. It states that the agreements "did not, standing alone, create a final or enforceable sovereign obligation" — a hedged formulation that concedes the agreements may be enforceable in light of surrounding facts — and it asserts only that, "to my knowledge," no ratification occurred. The Complaint, by contrast, alleges authorization and reaffirmation at the highest level of the Congolese State, which the declaration nowhere addresses. At most, the declaration joins issue on a contested question for a developed record. And a foreign state that enters the commercial marketplace cannot escape its bargain by invoking its own internal prerogatives: when a government becomes a participant in trade it takes on private-law character as to those transactions. *Alfred Dunhill of London, Inc. v. Republic of Cuba*, 425 U.S. 682, 695, 705 (1976) (quoting *Bank of the United States v. Planters' Bank of Georgia*, 22 U.S. (9 Wheat.) 904, 907 (1824)); accord *Weltover*, 504 U.S. at 614.

### E. The Subscription Agreement Is Not Facially Unenforceable

The State Defendants' final theory on Claim for Relief I is that the Subscription Agreement is unenforceable on its face because a closing notice under Section 3 was never given, the Section

---

[3] Since the declaration appears to rely on the altered MOU, this, alone, should be sufficient basis to disregard it.

5 representations were not satisfied, and PayServices' posture before the Federal Reserve renders the venture impossible. None of these arguments support unenforceability or dismissal. Whether the closing provisions are conditions precedent depends on the parties' intent and, where the language is not plain, is a question of fact. *Dengler v. Hazel Blessinger Family Trust*, 141 Idaho 123, 106 P.3d 449, 454 (2005); *Weisel v. Beaver Springs Owners Ass'n*, 152 Idaho 519, 272 P.3d 491, 500 (2012). The Federal Rules require only that a plaintiff allege generally that conditions precedent have occurred, Fed. R. Civ. P. 9(c), and the Complaint does so. Most fundamentally, a party may not predicate dismissal on the non-occurrence of a condition its own conduct caused: where a party prevents a condition, it cannot take advantage of the failure. *Dengler*, 106 P.3d at 454 (citing *Fish v. Fleishman*, 87 Idaho 126, 391 P.2d 344 (1964), and *Schlueter v. Nelson*, 74 Idaho 396, 263 P.2d 386 (1953)); *LTRAC LLC v. Wayne*, 2025 U.S. Dist. LEXIS 75776, at *20–21 (D. Idaho Apr. 21, 2025). The Complaint alleges that the State blocked the payment and refused to perform — the very conduct that prevented any closing. The Federal Reserve materials, finally, are outside the pleadings, postdate the agreements, and bear on a different question; they cannot render the subscription obligation unenforceable as a matter of law.[4]

## F. Claim for Relief II and III Provide No Basis for Dismissal With Prejudice

The State Defendants argue that the implied-covenant claim (Claim for Relief II) is duplicative and that consequential damages (Claim for Relief III) is not an independent cause of action. Even accepted on their own terms, neither supports dismissal with prejudice. Idaho implies a covenant of good faith and fair dealing in every contract, breached when a party significantly

---

[4] Even if relevant, the point would favor PayServices. The State Defendants assert that PayServices' inability to obtain a Federal Reserve master account existed "as of 2023." That is mistaken: no such regulatory obstacle existed when the parties signed in March 2024 or when payment came due, and none arose until after the State Defendants' breach — the Federal Reserve's denial rested on the very Idaho regulatory action that their own non-payment precipitated. The only "regulatory" obstacle they identify is thus of their own making and postdates the agreements. See Mem. in Supp. at 16; Danenberg Decl. ¶¶ 32–36.

19

impairs a benefit or right under the contract. *Knudsen v. J.R. Simplot Co.*, 168 Idaho 256, 483 P.3d 313, 327 (2021); *Nix v. Elmore County*, 158 Idaho 310, 346 P.3d 1045, 1054–55 (2015). A plaintiff may plead alternative and even inconsistent theories, Fed. R. Civ. P. 8(d), and the orderly course for an implied-covenant theory arising from the same conduct is to treat it as merging into or alternative to the contract claim — not to extinguish it. The covenant does work here that bare nonpayment does not capture: the Complaint alleges that an official actively blocked a payment otherwise due and conditioned its release on a bribe. As for Claim for Relief III, consequential damages are a category of recovery belonging to Claim for Relief I; the only defect the State Defendants identify is organizational, curable by amendment under Rule 15, and no basis to strike the underlying damages theory.

### G. Claim for Relief VI States a Claim for Unjust Enrichment in the Alternative

Claim for Relief VI pleads unjust enrichment, expressly in the alternative as Rule 8(d) permits. Idaho recognizes the claim where a benefit is conferred on the defendant, the defendant appreciates it, and retention without payment would be inequitable. *Stevenson v. Windermere Real Estate/Capital Grp., Inc.*, 152 Idaho 824, 828, 275 P.3d 839, 843 (2012) (quoting *Vanderford Co. v. Knudson*, 144 Idaho 547, 558, 165 P.3d 261, 272 (2007)); *Aberdeen-Springfield Canal Co. v. Peiper*, 133 Idaho 82, 88, 982 P.2d 917, 923 (1999). The Complaint pleads all three elements, alleging that PayServices conferred a $72 million banking-platform benefit on the DRC and the Ministry, which they accepted and retained. The State Defendants' contrary reading fixes on the phrase "through CADECO" to recast the benefit as running to CADECO alone, but the conferral allegation names the DRC and the Ministry directly; CADECO describes the channel of receipt, not a stranger's. This is not the downstream "pass-through" theory *Stevenson* rejected. At most, who retained the benefit is a factual dispute for a developed record, and any concern about the

20

CADECO allegations is curable by amendment under Rule 15, not a ground for dismissal with prejudice.

## V. The Complaint Should Not Be Dismissed for Failure to Join CADECO or the Non-Party Ministries

The State Defendants contend the Complaint must be dismissed under Rule 12(b)(7) for failure to join CADECO and the Ministries of Digitalization, Health, Handicap, and the Post. The argument skips the analysis Rule 19 requires and seeks the remedy Rule 19 treats as a last resort. Rule 19 proceeds in sequence: whether an absentee is a required party under Rule 19(a); only then whether joinder is feasible; and only then whether, in equity and good conscience, the action should proceed or be dismissed under Rule 19(b). The movant bears the burden at each step. The State Defendants recite the Rule 19(a) factors but never apply them — identifying no specific interest of any absentee that this litigation would impair and no risk of inconsistent obligations. Their reliance on *Takeda v. Nw. Nat'l Life Ins. Co.*, 765 F.2d 815, 821 (9th Cir. 1985), is misplaced: *Takeda* found a party required only after identifying a concrete interest, which the State Defendants have not done. In any event, the entities they name are at most co-participants or co-obligors, who need not all be sued together. *Temple v. Synthes Corp.*, 498 U.S. 5, 7 (1990); *Ward v. Apple Inc.*, 791 F.3d 1041, 1048–51 (9th Cir. 2015). And even if some absentee were a required party, the remedy would be joinder, not dismissal of claims against directly liable defendants.

## VI. The Jury Demand Does Not Warrant Dismissal and Is Properly Limited to the Individual Defendants

The State Defendants ask the Court to strike PayServices' jury demand. As to the State Defendants themselves, PayServices does not dispute that the FSIA requires a nonjury trial: an action against a foreign state shall be tried by the court without a jury. 28 U.S.C. §§ 1330(a), 1441(d); see id. § 1603(a). PayServices' claims against the DRC and the Ministry will be tried to

21

the Court. That concession resolves the only issue the State Defendants raise and requires no dismissal: the mode of trial is a procedural consequence of the FSIA, not a narrowing of any claim. The demand is not improper as to the case as a whole, however, because the Fourth and Fifth Claims are asserted against the individual defendants in their individual capacities, and the FSIA's nonjury rule does not reach PayServices' Seventh Amendment right to a jury on its common-law tort claims against them. The appropriate course is to confirm that the claims against the State Defendants will be tried to the Court while preserving the jury demand as to the individual defendants.

<strong>CONCLUSION</strong>

For the foregoing reasons, the motion of the DRC and the Ministry to dismiss should be denied. To the extent the Court identifies any deficiency in service on either State Defendant, the remedy is to quash and permit re-service, not to dismiss. And to the extent the Court concludes that any Claim for Relief is insufficiently pleaded, dismissal should be without prejudice and with leave to amend.

22