Jennifer Reinhardt-Tessmer (ISB 7432)
Jacob N. Matt (ISB 12482)
**KIRTON MCCONKIE**
1100 W. Idaho St., Ste. 930
Boise, ID 83702
(208) 370-3325
jtessmer@kmclaw.com
jmatt@kmclaw.com

Philip M. Musolino
D.C. Bar No. 294652
**MUSOLINO & DESSEL, PLLC**
1615 L Street, NW, Ste. 440
Washington, DC 20036
(202) 466-3883
pmusolino@musolinodessel.com

*Attorneys for The Democratic Republic of the Congo and
Ministry of State in Charge of the Portfolio of the
Democratic Republic of the Congo*

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| PAYSERVICES BANK, an Idaho corporation,<br><br>Plaintiff,<br><br>v.<br><br>THE DEMOCRATIC REPUBLIC OF THE CONGO, *et al.*,<br><br>Defendants. | Case No. 1:26-cv-00009-REP<br><br>**MEMORANDUM IN REPLY TO PLAINITIFF'S OPPOSITION TO THE MOTION OF THE DEMOCRATIC REPUBLIC OF THE CONGO AND MINISTRY OF STATE IN CHARGE OF THE PORTFOLIO OF THE DEMOCRATIC REPUBLIC OF THE CONGO TO DISMISS THE COMPLAINT** |

i

**TABLE OF CONTENTS**

A.  This Court Lacks Subject Matter Jurisdiction                                              1

B.  Service of Process Was Insufficient and This Court Lacks Personal Jurisdiction           2

C.  Venue in this District is Improper                                                       3

D.  The Complaint Fails to State a Claim                                                     4

1.  Count I Fails to State a Claim and Must Be Dismissed                                     4

2.  Count II Fails to State a Claim and Must Be Dismissed                                    7

3.  Count  III Is Not an Independent Cause of Action                                         9

4.  Count VI Fails to State a Claim and Must be Dismissed                                    10

E.  Plaintiff Failed to Join a Required Party                                                11

F.  Plaintiff Has No Right to a Jury Trial for Claims Under the FSIA                         12

G.  Plaintiff Has Waived and Abandoned Any Right to Amendment and Any                        12
     Such Amendment Would Be Futile

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Betzer v. Frontier Credit Union,*
  2026 WL 892472 (D. Idaho 2026) ...............................................................................................7

*de Fontbrune v. Wofsy,*
  838 F.3d 992 (9th Cir. 2016)........................................................................................................6

*Dengler v. Hazel Blessinger Family Tr.,*
  141 Idaho 123, 106 P.3d 449 (2005) ...........................................................................................7

*Deonarine v. Aguilar,*
  2025 WL 3187350 (9th Cir. 2025) .............................................................................................12

*Disabled Rights Action Comm. v. Las Vegas Events, Inc.,*
  375 F.3d 861 (9th Cir. 2004)........................................................................................................7

*DP Aviation v. Smiths Indus. Aerospace & Def. Sys. Ltd.,*
  268 F.3d 829 (9th Cir. 2001)........................................................................................................6

*Green Tech. Lighting Corp. v. Liberty Surplus Ins. Corp.,*
  2018 WL 1053529 (D. Idaho, 2018)...........................................................................................12

*Harman Becker Auto. Sys., Inc. v. Avnet, Inc.,*
  237 A.D.3d 539, 232 N.Y.S.3d 483 (2025) .................................................................................4

*Imageline, Inc. v. CafePress.com, Inc.,*
  2011 WL 1322525 (C.D.Cal. Apr. 6, 2011).................................................................................4

*In re Fresh & Process Potatoes Antitrust Litig.,*
  834 F. Supp. 2d 1141 (D. Idaho 2011) ........................................................................................4

*Knievel v. ESPN,*
  393 F.3d 1068 (9th Cir. 2005)......................................................................................................7

*Millar v. Pitman Bd. of Educ.,*
  2011 WL 2417141 (D.N.J. June 13, 2011) ..................................................................................4

*Myers v. Bennett Law Offices,*
  238 F.3d 1068 (9th Cir. 2001)......................................................................................................3

*Navo v. Bingham Mem'l Hosp.,*
  160 Idaho 363, 373 P.3d 681 (2016) ...........................................................................................4

*Owens v. Republic of Sudan,*
  2015 WL 13670161 ......................................................................................................................2

*PayServices Bank v Federal Reserve Bank of San Francisco*
  Case Number 24-2355 (United States Court of Appeals for the Ninth Circuit)........................8, 9

*Schertzer v. Bank of Am., NA*,
  109 F.4th 1200 (9th Cir. 2024)..................................................................................10

*Selkey Buhl, LLC v. Seneca Foods Corp.*,
  2020 WL 8225444 (D. Idaho 2020) ..........................................................................12

*Temple v. Synthes Corp., Ltd.*,
  498 U.S. ....................................................................................................................11

*Underwood v. Bank of Am.Corp.*,
  2026 WL 626428 (S.D.N.Y2026*)* ...........................................................................10

*Ward v. Apple Inc.*,
  791 F.3d 1041 (9th Cir. 2015) *abrogated on other grounds, Sperring v. LLR, Inc.*, 995 F.3d 680 (9th
  Cir. 2021) ..................................................................................................................12

*Williams v. Miami-Dade Cnty.*,
  *supra*, 2025 WL 2735419 ..........................................................................................11

**Statutes**

15 U.S.C. § 77q ............................................................................................................9

*Congo's Public Finance Law* ........................................................................................5

**Other Authorities**

Fed.R.Civ.P 12(b)(5)......................................................................................................3

Fed.R.Civ.P.15(a)(1)(B).................................................................................... 4, 7, 11, 12

Fed. R. Civ. P. 44.1........................................................................................................6

Local Rule Civ 15.1(a)..................................................................................................12

Restatement (Second) of Contracts................................................................................9

Restatement (Third) Agency § 2.01 (2006).....................................................................4

Rule 12(b)(6) .................................................................................................................6

Rule 19.........................................................................................................................11

# I. ARGUMENT

## A. This Court Lacks Subject Matter Jurisdiction

1. <u>The Complaint Is Not Based on a Commercial Activity, Nor Was There Any Direct Effect in the United States.</u>

Plaintiff does not address at all the description by the DRC and the Ministry of the sovereign nature of the transaction on which the complaint is based. *See* Mtn. ECF No. 43 at 10-12. Thus, there is no dispute that the transaction was a sovereign national initiative designed to "digitize and modernize the entire national economy of the DRC," and to provide the DRC with a "strategic geopolitical advantage," involving bilateral sovereign relations cooperation with U.S. political officials. *Id.*

Although Plaintiff now claims that its claims "rest on the operative equity-purchase contract, not on the MOU framework instrument," Opp., ECF 48 at 10, both its Complaint and its communications irrefutably show otherwise. Plaintiff cannot now ignore its own pleading and its own statements in order to avoid the consequences of sovereign immunity.

Nor has Plaintiff established any direct effect in the United States with respect to the subscription payment, which Payservices itself described as being a "relatively modest amount," ECF No. 43-4 at 6. Abandoning its contention that a direct effect resulted from "obstructing and blocking the remittance," (because Plaintiff cannot allege that either DRC or the Ministry engaged in such alleged conduct), Plaintiff is left with nothing more than "the execution of the Idaho-governed Subscription Agreement," which took place in the DRC. Further, Plaintiff does not and cannot dispute that the modest payment was to be used in DRC. Nor does Plaintiff meaningfully quarrel with the absence of a mandatory requirement in the subscription agreement for payment in the United States. Mtn. ECF No. 43 at 12. Any doubt about the locus of the effect of the Subscription Agreement is resolved against Plaintiff through its own project brochure. *See* ECF No. 46-4.

Plaintiff has therefore failed to meet its heavy burden on sovereign immunity[1] and this court must dismiss the action against both the DRC and the Ministry.

## B.  Service of Process Was Insufficient and This Court Lacks Personal Jurisdiction

Plaintiff's Opposition must be construed as a concession that Plaintiff simply did not serve the DRC in accordance with the express mandate of the Supreme Court in *Republic of Sudan v. Harrison,* 587 U.S. 1, 4-5, (2019). The DRC quoted *Harrison*'s mandate that

> A *key term* in § 1608(a)(3) is the past participle "addressed." A letter or package is "addressed" to an intended recipient when his or her name and "address" is placed on *the outside of the item to be sent . . .* [T]he most natural reading of § 1608(a)(3) is that the service packet must bear the foreign minister's name.   *Id.* (emphasis added, internal citations omitted). Mtn,. ECF No. 43, at 13.

Resorting to three pages of diversion and obfuscation, the only conclusions to be drawn from Plaintiff's Opposition is (1) that its instructions as to the addressee did not include the name of the foreign minister as the envelope addressee[2], (2) that the clerk incorporated those instructions, and (3) that the outside of the envelope as delivered did not include the name of the foreign minister. Opp., ECF No. 48, at 12-14. The Declaration of Tammy Dettman puts an end to any doubt. Opp., ECF No. 48-6. Although Ms. Dettman references the "pre-addressed, prepaid DHL envelope" twice, the "pre-addressed DHL envelope," and the "DHL records (at ECF 10-1)," and attests that "true and correct copies are attached as Exhibit A," no copy of the exterior of the service package was included in Exhibit A or provided elsewhere. Id. ¶¶ 4–5, 7; Opp., ECF No. 48-6.[3]

Defendant's reliance on the summonses on the inside of the package pertains only to Fed. R. Civ. P 12(b)(4) (insufficient process), but is entirely irrelevant to Fed.R.Civ.P 12(b)(5) (insufficient service

---

[1] Both the DRC and the Ministry dispute the applicability of the Subscription Agreement, and thus any immunity waiver contained therein.

[2] The instruction was as follows: "*Addressee*: *Head of the Ministry of Foreign Affairs."*

[3] Plaintiff's attempt to shift its burden of proof to the DRC lacks both a factual foundation and a legal justification. Opp., ECF 4 at 13 of 26, n.2., and see Owens v. Republic of Sudan, 2015 WL 13670161, at *2 (D.D.C. 2015) ("The burden of proof to establish proper service [under the FSIA] is on the party on whose behalf service is made.")

of process) and to the inviolable obligations of Harrison. Plaintiff's demand that this Court ignore the clear "outside" language of *Harrison* and instead apply its own test (an addressee who is merely "a single, statutorily designated, publicly known institutional recipient — the head of the ministry of foreign affairs," Opp., ECF 48 at 14 of 26), is so far outside the authority of any district court that it must be rejected out of hand.

As to the Ministry, Plaintiff errs when it contends that the Ministry overlooked the distinction between section 16(08)(a) and 16(08)(b). Opp., ECF No. 48 at 14. Indeed, the Ministry argued that Plaintiff failed to effectively serve the Ministry. ECF No. 43 at 15.

Plaintiff does not address that contention, instead it relies on section 17 of the MOU. Opp. ECF 48 at 14 and 15 of 26. But, section 7 of the MOU mandates that PayServices deliver notifications as follows: *"707, Av. Wagenia, Kinshasa/Gombe, Democratic Republic of the Congo, Contact person: [Insert name], Director of Cabinet, E-mail:* [minetatpf2021@gmail.com](mailto:minetatpf2021@gmail.com)*"* Opp., ECF No. 48-2 at 15 of 17. Plaintiff's own proof of service establishes that Plaintiff failed to comply with the requirements of section 7 of the MOU, which is fatal to its arguments.

## C. Venue in this District is Improper

Plaintiff does not address the facts asserted by the DRC and the Ministry for the proposition that "every material event and omission giving rise to the claim occurred in the DRC." Mtn. ECF No. 43-1 at 16. Instead, Plaintiff relies on *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1076 (9th Cir. 2001), in which the Ninth Circuit merely confirms that venue exists in tort actions, where a substantial part of the events that occurred. Nothing in *Myers* suggests that venue is proper merely because the Plaintiff is a resident of the district in which the case was brought.

Nor does the forum selection clause in the Subscription Agreement provide venue. First, as is set out elsewhere, that agreement is non-binding and unenforceable. Secondly, as to the DRC, Plaintiff has

3

failed to address the "common sense totality of the circumstances" test to determine whether the DRC was so "closely related" to the Subscription Agreement that the DRC can be subject to that agreement's forum selection clause. *See Oregon-Idaho Utilities, Inc. v. Skitter Cable TV, Inc.*, WL 3446290, at *9 (D. Idaho, 2017). For these reasons, venue is improper in this district.

**D.  The Complaint Fails to State a Claim Against Defendant DRC and the Ministry**

  1.  Count I Fails to State a Claim and Must Be Dismissed

    a.  *The DRC is not a Signatory or a Party to the Subscription Agreement*

   Plaintiff acknowledges that the DRC is not a signatory to the Subscription Agreement, but contends that it may be liable as the principal for an agent. Opp., ECF No. 48 at 17, 18. That contention fails as a matter of law. First, the language utilized in the Ministry MOU[4] was not repeated in the Subscription Agreement. "This omission in an agreement between sophisticated entities must be assumed to have been intentional" *Harman Becker Auto. Sys., Inc. v. Avnet, Inc.,* 237 A.D.3d 539, 540, 232 N.Y.S.3d 483, 485 (2025). Second, as a matter of law, the Ministry lacked the authority to bind the DRC. *See* section D.1.c below. Third, Plaintiff does not and cannot plausibly allege the elements of apparent authority or actual authority. *Navo v. Bingham Mem'l Hosp.*, 160 Idaho 363, 375, 373 P.3d 681, 693 (2016); Restatement (Third) Agency § 2.01 (2006).

   "As with other allegations in the complaint, plaintiffs are not permitted to rest on conclusory allegations to properly plead an agency relationship." *In re Fresh & Process Potatoes Antitrust Litig.*, 834 F. Supp. 2d 1141, 1167 (D. Idaho 2011) (citing *Acosta Orellana,* 711 F.Supp.2d at 112 (formulaic recitations of the essential elements of agency will not suffice; *Millar v. Pitman Bd. of Educ.,* 2011 WL 2417141 (D.N.J. June 13, 2011); *Imageline, Inc. v. CafePress.com, Inc.,* 2011 WL 1322525, at *4 (C.D.Cal. Apr. 6, 2011) ("To sufficiently plead an agency relationship, a plaintiff must allege facts demonstrating the principal's control over its agent.")). Plaintiff did not meet its pleadings burden, and

---

[4] "The Democratic Republic of the Congo, acting for the purposes hereof through Her Excellency Madame Adele KAYINDA MAHINA, Minister of State in charge of the Portfolio," ECF No. 48-2 at 11 of 17.

failed to avail itself under Fed.R.Civ.P.15(a)(1)(B).

b.  *The Subscription Agreement Was Non-Binding*

Plaintiff does not dispute the DRC and the Ministry's contention that both the MOU and the Subscription Agreement were signed contemporaneously by the same two parties should be construed together. Mtn., ECF No. 43 at 18. Indeed, Plaintiff makes no attempt to grapple with the plethora of case law cited by DRC and the Ministry. Instead, Plaintiff seeks to avoid the effect of its own MOU—which it now concedes it signed—by insisting that an alleged discrepancy in an unrelated section precludes this Court from considering the MOU provisions. This argument is groundless. According to Plaintiff, it has a version of the Ministry MOU which contains a sentence in the French version of Section 5.2 which is not in the MOU produced by DRC and the Ministry. Opp., ECF No. 48, at 19-21 of 26.

However, Plaintiff's arguments fall flat. The DRC and the Ministry make no assertions at all with respect to the "twelve-month term" or the lapse of exclusivity. Indeed, any claimed disparity in Section 5.2 has no impact on any "cognizable claims," and notably, Plaintiff points to none.

It is now undisputed is that Plaintiff signed an MOU on the same day "concurrently" with the Subscription Agreement, and that the signed MOU – in either version – provided that the agreement was non-final, and non-binding, and "does not contain any binding obligation," and that the parties contemplated discussing an agreement in the future, and that DRC law would apply. Opp., ECF No. 48-2 at 12, 13, 14 and 16 of 17, and *see* sections 2.3, 2.4, 2.5, 3.2, and 11.1.[5]

---

[5] PayServices now discloses that on March 8, 2024, PayServices entered into an MOU with Societe Congolaise des Postes et Telecommunications, which contained language identical to the non-binding non-final language in sections 2.3, 2.4, 2.5, and 3.2 of the Ministry's MOU. Opp., ECF No. 48-4 at 12, 13. The Poste's MOU also contains a DRC choice of law provision identical to the choice of law provision in section 11.1 of the Ministry's MOU. Opp., ECF No. 48-4 at 16.

Plaintiff now admits that in July 2024 – five months after the execution of the agreements by the Ministry – the DRC cabinet commenced its due diligence investigation of "the financial and technical capacity of the PayServices company." Opp., ECF No. 48-5. That investigation is routinely undertaken prior to a final contractual commitment. *See, e.g. Farmers' Ethanol LLC v. Bounty Minerals, LLC,* WL 8606499, at *3 (S.D. Ohio, 2016), aff'd, 666 Fed. Appx. 421 (6th Cir. 2016).

*c.  The Subscription Agreement was not enforceable under Congo's Public Finance Law*

As the DRC and the Ministry argue, Congolese law imposed multiple levels of review on the sort of contract on which Plaintiff's claims are based and relied on the declaration of the extraordinarily qualified Finance Ministry Senior Legal Advisor Tresor-Gauthier Mitongo Kalonji. Mtn. ECF 48-1 at 19, 20.

"In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination must be treated as a ruling on a question of law." Fed. R. Civ. P. 44.1 "We have previously said that Rule 44.1 allows the court to consider issues of foreign law at any time." *DP Aviation v. Smiths Indus. Aerospace & Def. Sys. Ltd.,* 268 F.3d 829, 847 (9th Cir. 2001). That determination can be made as part of a disposition under Rule 12(b)(6). This Court can and should address DRC law now because "it would be antithetical to the language and purpose of Rule 44.1 to prohibit courts from considering relevant materials beyond the pleadings in ruling on a Rule 12(b)(6) motion when the claim depends on a determination of foreign law." *de Fontbrune v. Wofsy*, 838 F.3d 992, 998 (9th Cir. 2016), as *amended on denial of reh'g and reh'g en banc* (2016).

Somehow, after years of preparation and six months of litigation, PayServices simply fails to secure any Rule 44.1 evidence to counter the clear and unambiguous testimony of Senior the Legal Advisor Trésor-Gauthier Mitongo Kalonji on straightforward matters of DRC law. PayServices broadly points to the need for a "developed record," yet it concedes that a delay to develop the record is triggered by a "contested question of foreign law," which is not the case here.  Opp., ECF No. 48 at 22. Despite months and years to assess the DRC law applicable to the long-sought but never obtained approval of its proposed agreement, PayServices cannot point to a single fact that it needs to "develop" in order to counter DRC's expert.

Plaintiff does not seek a more developed record.  It seeks delay. In the absence of even a scintilla of material contrary to the opinion of the Senior Legal Advisor, Plaintiff's dilatory tactic must be

rejected.

    d.  T*he Subscription Agreement is unenforceable on its face*

      1.  <u>Plaintiff's Failure to Provide the Required Notice for Closing Mandates Dismissal</u>

In order to avoid the impact of the Subscription Agreement's closing requirement, *see* Mtn., ECF No. 43 at 21. Plaintiff must allege either that the clause is (1) ambiguous – which Plaintiff does not and cannot do – or (2) that it, in fact, satisfied the clause and actually called for closing, which Plaintiff also does not and cannot do.[6] *See* Opp., ECF No. 48 at 23 (citing *Dengler v. Hazel Blessinger Family Tr.*, 141 Idaho 123, 128, 106 P.3d 449, 454 (2005)). Plaintiff's insistence that its failure to comply with sections 7 and 17 of the Subscription Agreement was caused by the DRC or the Ministry is just nonsensical. Nothing prevented Plaintiff from undertaking the simple task of calling for closing, before which no obligation of any kind was due.

2.  <u>Plaintiff's Disastrous Regulatory and Litigation Failures Precluded Its Right to Demand Payment</u>

Plaintiff urges this Court to ignore Plaintiff's own complaint, the incorporated rejection letter of the Federal Reserve, the decisions of the Idaho Department of Finance and this court's own decision, in *PayServices Bank v. Federal Reserve Bank of San Francisco* 1:23-cv-00305-REP ("the Federal Reserve District Court Case"), Opp., ECF No. 48 at 23. However, "the Court may take judicial notice of the records of state agencies and other undisputed matters of public record without transforming motions to dismiss into motions for summary judgment." *Betzer v. Frontier Credit Union*, 2026 WL 892472, at *1 (D. Idaho 2026), citing *Disabled Rights Action Comm. v. Las Vegas Events, Inc.,* 375 F.3d 861, 866, n.1 (9th Cir. 2004) and *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). Additionally,  the Court "may also examine documents referred to in the complaint, although not attached to it, without transforming the motion to dismiss into a motion for summary judgment. *Id.*

---

[6] Plaintiff's claim that it sufficiently pled the satisfaction of conditions, Opp., ECF No. 48 at 23 of 26, contains no actual reference to any allegation in the complaint, because there is none. Nor did Plaintiff avail itself of the opportunity to make that allegation in an amended complaint under Fed.R.Civ.P.15(a)(1)(B).

Plaintiff's goal in asking the Court to ignore these materials is obvious: the materials demolish the unsupportable claims proffered by PayServices – in particular its chronology and its blame-shifting. Opp., ECF No. 48 at 18, 19. As PayServices alleged in its Complaint in the Federal Reserve District Court Case:

> Without a master account, PayServices Bank is relegated to depending on an intermediary bank, which prevents it from managing the settlement of transactions and services related to foreign trade that it has uniquely positioned itself to handle.

The Federal Reserve District Court Case, ECF No. 1 at 1-2 of 26. As PayServices further alleged in that Complaint,

> On May 31, 2023, Wallace Young issued a one-page letter to PayServices to notify them that due to its line of business which focuses almost exclusively on facilitating the trade of commodities through import and export of products from and to the United States, that it was unable to grant PayServices' request because this line of business is a "novel business model" that is "unproven" and thus presents an "undue risk" to the Reserve Bank. *Id.* at ECF No. 1 at 10 of 26.

As the Federal Reserve explained in *PayServices Bank v Federal Reserve Bank of San Francisco* Case Number 24-2355 (United States Court of Appeals for the Ninth Circuit) ("the Federal Reserve Ninth Circuit Case"), after it informed the Court at oral argument of the Idaho Finance Department order, Dkt. 46:

> On August 4, 2023, the Idaho Department found that PayServices' preliminary approval expired because it "had not met the conditions to receive a bank charter," and required PayServices to submit an "updated application." (FER-04, ¶ 5). On October 16, 2023, the Idaho Department granted PayServices a "one-time extension" to meet the conditions set by the Idaho Department in August 2022. (Id. ¶ 7). On October 16, 2024, when PayServices failed to meet those conditions, PayServices' preliminary approval "expired and was [] terminated." (Id. ¶ 9). That day, the Idaho Department rescinded PayServices' Name Waiver. (Id. ¶ 10). Dkt. 47.1.

Notably, Mr. Danenberg attests under oath as follows: "In or about October 16, 2024, the Idaho Department of Finance issued a cease-and-desist order that, among other things, restricted PayServices' use of the term 'bank'. PayServices appealed and *successfully challenged that action* before an administrative law judge." Declaration of Lionel Danenberg, ECF No. 48-1 at ¶35. (emphasis added).

But, on June 22, 2026, the Federal Reserve filed a joint status report in the Federal Reserve Ninth Circuit Case, which reported, *inter alia,* as follows:

> 2. On May 25, 2026, *PayServices submitted an appeal* of the decision on remand and a petition for a contested case hearing.
>
> 3. The Idaho Department of Finance referred the appeal to the Idaho Office of Administrative Hearings ("OAH") on May 29, 2026. The OAH has assigned an administrative law judge to preside over the matter.
>
> 4. On June 9, 2026, the parties attended a status conference with the ALJ to set a schedule for resolving a pending motion to supplement the record and scheduling briefing and a hearing in this matter.

*PayServices Bank v Federal Reserve Bank of San Francisco* Case Number 24-2355 (United States Court of Appeals for the Ninth Circuit) ("the Federal Reserve Ninth Circuit Case") DKT.89 (emphasis added)[7].

 PayServices repeatedly marketed itself to the Ministry as "a U.S. bank," ECF 46.4 at 89 of 114, with a "U.S. license," *Id.* at 91, 105 and as a "U.S. banking company," *Id.* at 96, and as a "U.S. financial institution," *Id.* at 95-96. As its losses before the Federal Reserve, and this court, and the Idaho Department of Finance establish, PayServices was and could have been no such thing.

Under the Subscription Agreements own terms, *see* Section 7, and because Plaintiff was unable to perform under Section 5, and because Plaintiff knew but fraudulently did not disclose its disqualifying inadequacies with both the Federal Reserve and with the State of Idaho, the Subscription Agreement was and still is unenforceable. *See, e.g.,* Restatement (Second) of Contracts §§ 161-163 (1981); 15 U.S.C. § 77q.

2.  <u>Count II Fails to State a Claim and Must be Dismissed</u>

Plaintiff does not dispute that "(a) violation of the implied covenant … does not result in a cause

---

[7] The decision adverse to PayServices was issued on April 27, 2026, *Id.* at DKT.87. It bears noting that while the Federal Reserve and the public, including Defendants in this case, and including the Ninth Circuit in the Federal Reserve Ninth Circuit Case, do not have access to the filings and rulings in the Idaho administrative action, PayServices has complete access to those materials. *Id*. at DKT. 89 at ¶1.

of action separate from the breach of contract claims, nor does it result in separate contract damages." Mtn. ECF 43 at 21 of 25. *See Schertzer v. Bank of Am., NA,* 109 F.4th 1200 (9th Cir. 2024) ("[I]f the plaintiff's allegations of breach of the covenant of good faith do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated.")

In response, Plaintiff asserts only that "the covenant does work here that bare nonpayment does not capture: the Complaint alleges that an official actively blocked a payment otherwise due and conditioned its release on a bribe." Opp., ECF 48 at 24 of 26. But, the bribery claims on which Plaintiff relies are not applicable to the DRC or Ministry and Count II is not applicable to the bribe claim.

Accordingly, Count II must be dismissed.

3. Count III is Not an Independent Claim and Must Be Dismissed

As DRC and the Ministry asserted:

A count which merely alleges a remedy does not state an independent cause of action and must be dismissed. *Underwood v. Bank of Am.Corp.,* 2026 WL 626428, at *10 (S.D.N.Y2026*), report and recommendation adopted*, 2026 WL 624392 (S.D.N.Y. Mar. 5, 2026) (dismissing constructive trust claim); *accord*, *Jiang v. RoundPoint Mortg. Servicing LLC*, 2026 WL 817477, at *2 (E.D. Va. 2026).

Motion ECF No. 43 at 22.

Plaintiff concedes as much, arguing as only as follows: "As for Claim for Relief III, consequential damages are a category of recovery belonging to Claim for Relief I; the only defect the State Defendants identify is organizational, curable by amendment under Rule 15, and no basis to strike the underlying damages theory." Opp. ECF No. 48 at 24. Though there are many reasons to reject Plaintiff's groundless damages claims, the mere dismissal of the Third Claim for Relief will have no effect on that "damages theory". Count III must be dismissed.

4. Count VI Fails to State a Claim and Must be Dismissed

The DRC and the Ministry argue with respect to the Sixth Claim for Relief that Plaintiff's legal

and conclusory claims are inadequate. Motion ECF No. 43 at 22 of 25.

In ostensible response, Plaintiff states:

> The Complaint pleads all three elements, alleging that PayServices conferred a $72 million banking-platform benefit on the DRC and the Ministry, which they accepted and retained. The State Defendants' contrary reading fixes on the phrase "through CADECO" to recast the benefit as running to CADECO alone, but the conferral allegation names the DRC and the Ministry directly… Opp. ECF No. 48 at 24 of 26.

But even if Plaintiff's interpretation of ¶¶78, 79 could be stretched to plausibility – and it cannot – Plaintiff made clear elsewhere in the Complaint that "PayServices began performance, investing its own capital to *deploy its core banking system for CADECO* (emphasis added)," Complaint ECF No. 1 at ¶36. This is no mere pleading oversight. It is entirely consistent with Plaintiff's allegation of the "MOU with CADECO" (quotation marks in Complaint), Complaint ECF No. 1 at ¶30, and of the "CADECO Letter to Central Bank" (quotation marks in Complaint), Complaint ECF No. 1 at ¶79. "Courts … need not accept factual claims that are internally inconsistent, facts which run counter to facts of which the court can take judicial notice, conclusory allegations, unwarranted deductions, or mere legal conclusions asserted by a party…." *Williams v. Miami-Dade Cnty., supra*, 2025 WL 2735419, at *6.

Finally, Plaintiff claims that this deficiency is "curable by amendment", Opp. ECF No. 48 at 25 of 26, ignores Plaintiff's failure to file an amended complaint as of right under Fed.R.Civ.P.15(a)(1)(B), *see* section G below.

### E.  Plaintiff Failed to Join a Required Party Under Rule 19

In their motion, DRC and the Ministry underscore the Complaint's emphasis on CADECO, its principles, its MOU, and its letter. Mtn., ECF No. 43 at 22, 23.

Plaintiff insistence that DRC and Ministry identified "no specific interest of any absentee that this litigation would impair and no risk of inconsistent obligations," Opp. ECF No. 48 at 25, simply ignores those assertions. Further, Plaintiff's reliance on *Temple v. Synthes Corp., Ltd.,* 498 U.S. 5, 7, 111 S. Ct. 315, 316, 2d 263 (1990) for that contention is misplaced. The *Temple* Court ruled only

that all joint tortfeasors do not have to be included in a single action. Here, however, no tort claims are brought against the DRC and the Ministry. Plaintiff fares no better with its reliance on *Ward v. Apple Inc.,* 791 F.3d 1041, 1049 (9th Cir. 2015) *abrogated on other grounds, Sperring v. LLR, Inc.*, 995 F.3d 680, 682 (9th Cir. 2021), which affirms the general rule that antitrust co-conspirators need not be joined.

As Plaintiff's own Third Claim for Relief shows, it cannot obtain the lost profits relief it seeks. In the absence of this Court's determination on the enforceability and the meaning of Plaintiff's alleged agreement with CADECO, and any alleged performance by Plaintiff for CADECO. Any such ruling will necessarily impair or impede CADECO's ability to protect its interest while leaving DRC, the Ministry, and CADECO, subject to inconsistent obligations. *See Green Tech. Lighting Corp. v. Liberty Surplus Ins. Corp.*, 2018 WL 1053529, at *7 (D. Idaho, 2018).

## F.  Plaintiff Has No Right to A Jury Trial  for Its Claims Under the FSIA

Plaintiff agrees that its claims against DRC and the Ministry cannot be presented to a jury. Opp. ECF No. 48 at 21-22.

## G.  Plaintiff Has Waived and Abandoned Any Right to Amendment and Any Such Amendment Would Be Futile

Plaintiff improperly includes in its conclusion the bare request that "to the extent the Court concludes that any Claim for Relief is insufficiently pleaded, dismissal should be without prejudice and with leave to amend." Opp., ECF No. 48 at 22. That request must be rejected. First, Plaintiff abandoned any right to an amendment as a matter of course or otherwise, by virtue of its failure to file an amended complaint under Fed.R.Civ.P.15(a)(1)(B). Second, Plaintiff failed to attach the proposed amended pleading. *Selkey Buhl, LLC v. Seneca Foods Corp.*, 2020 WL 8225444, at *5 (D. Idaho 2020); *see* Idaho District Local Rule Civ 15.1(a). Finally, the defects in the complaint are material and incurable. Any amendment would be futile. *See Deonarine v. Aguilar*, 2025 WL 3187350, at *1 (9th Cir. 2025), cert. denied, 25-7105, 2026 WL 1203371 (U.S. May 4, 2026).

DATED this 2nd day of July, 2026.

                                        **KIRTON MCCONKIE**


                                        */s/ Jennifer Reinhardt-Tessmer*
                                        Jennifer Reinhardt-Tessmer


                                        **MUSOLINO & DESSEL, PLLC**

                                        */s/ Philip M. Musolino*
                                        Philip M. Musolino


                                        *Attorneys for The Democratic Republic of*
                                        *the Congo and Ministry of State in*
                                        *Charge of the Portfolio of the*
                                        *Democratic Republic of the Congo*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 2nd day of July, 2026, I electronically filed the foregoing document through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

- **C. Anderson Parker**
  andy@parkersanchez.com
- **Miguel Andrès Sànches-Ross**
  andres@parkersanchez.com
- **John F. Kurtz, Jr.**
  jfk@kurtzlawllc.com
- **Alyson Foster**
  alyson@dempseyfoster.com
- **J. Will Varin**
  willvarin@varinthomas.com
- **Jennifer Aiko**
  jmaiko@hollandhart.com
- **Kenneth Charles Shumard**
  kshumard@hawleytroxell.com
- **Sylvia J. Rolinski**
  sjr@rolinski.com
- **Tyler J. Anderson**
  tanderson@hawleytroxell.com

and all counsel of record via CM/ECF Notice.

                              */s/ Jennifer Reinhardt-Tessmer*
                              Jennifer Reinhardt-Tessmer