Jennifer Reinhardt-Tessmer (ISB #7432)
Jacob N. Matt (ISB #12482)
**KIRTON MCCONKIE**
1100 W. Idaho St., Ste. 930
Boise, ID 83702
(208) 370-3325
jtessmer@kmclaw.com
jmatt@kmclaw.com

Philip M. Musolino,  *Pro Hac Vice*
D.C. Bar No. 294652
**MUSOLINO & DESSEL, PLLC**
1615 L Street, NW, Ste. 440
Washington, DC 20036
(202) 466-3883
pmusolino@musolinodessel.com

*Attorneys for The Democratic Republic of
the Congo and Ministry of State in Charge of
the Portfolio of the Democratic Republic of*

Sylvia J. Rolinski, Esq., *Pro Hac Vice*
D.C. Federal Bar No. 430573
**ROLINSKI LAW GROUP, LLC**
14915 River Road
Potomac, MD 20854
(301) 987-0202 (Telephone)
(301) 263-7100 (Facsimile)
sjr@rolinski.com

J. Will Varin (ISB #6981)
**VARIN THOMAS LLC**
242 N. 8th Street, Suite 220
P.O. Box 1676
Boise, Idaho 83701
(208) 922-7060 (Telephone)
(866) 717-1758 (Facsimile)
willvarin@varinthomas.com

*Attorneys for Defendants Doudou Roussel
Fwamba Likunde and Anthony Nkinzo
Kamole*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| PAYSERVICES BANK, an Idaho corporation,<br><br>Plaintiff,<br><br>v.<br><br>THE DEMOCRATIC REPUBLIC OF THE CONGO, *et al.*,<br><br>Defendants. | Case No. 1:26-cv-00009-REP<br><br>MEMORANDUM IN SUPPORT OF MOTION OF THE DEMOCRATIC REPUBLIC OF THE CONGO AND MINISTRY OF STATE IN CHARGE OF THE PORTFOLIO OF THE DEMOCRATIC REPUBLIC OF THE CONGO AND DEFENDANTS DOUDOU ROUSSEL FWAMBA LIKUNDE AND ANTHONY NKINZO KAMOLE TO DISMISS THE COMPLAINT ON *FORUM NON CONVENIENS* GROUNDS |

ii

**TABLE OF CONTENTS**

**Table of Authorities**.................................................................................................. iv

I.      **Statement of Proceedings, Statement of the Case, and Standard of Review** ...............1

A.  Statement of Proceedings.................................................................................... 1

B.  Statement of the Case ........................................................................................2

C.  Standard of Review, Sequencing and Burden of Proof...........................................8

II.     **Argument** ........................................................................................................ 8

A.  The DRC is an Adequate Alternative Forum ........................................................8

B.  Private Factors Favor Dismissal ......................................................................12

C.  Public Factors Favor Dismissal .......................................................................15

D.  The Subscription Agreement's Forum-Selection Clause Does Not Bar Dismissal.....................17

E.  This Court Can Impose Suitable Conditions ........................................................ 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arthur Andersen LLP v. Carlisle,*
556 U.S. 624, 129 S.Ct. 1896, 173 L.Ed.2d 832 (2009)................................................................19

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas,*
571 U.S. 49, 134 S. Ct. 568, 187 L. Ed. 2d 487..................................................................17, 19

*Bundy v. Nirvana LLC,*
2023 WL 4311613 (9th Cir. July 3, 2023) .............................................................................9

*Carijano v. Occidental Petroleum Corp.,*
643 F.3d 1216.................................................................................................... 9, 12, 13, 15

*Dada v. NSO Grp. Techs. Ltd.,*
2025 WL 1879527 (9th Cir. 2025)..........................................................................................8

*Franlink Inc. v. BACE Servs., Inc.,*
50 F.4th 432 (5th Cir. 2022) ......................................................................................18, 19

*Gargoyle Granite & Marble, Inc. v. Opustone, LLC,*
2021 WL 5451497 (D. Idaho 2021)..............................................................................17, 19

*Huber v. Granby Realty Holdings, LLC,*
2019 WL 2299799 (D. Colo.2019) .......................................................................................2

*Indem. Co. of Arizona v. Great N. Ins. Co.,*
2007 WL 845857 (D. Idaho 2007).......................................................................................17

*Instituto Mexicano del Seguro Soc. v. Zimmer Biomet Holdings, Inc.,*
518 F. Supp. 3d 1258 (N.D. Ind. 2021), aff'd, 29 F.4th 351 (7th Cir. 2022).........................16

*Loya v. Starwood Hotels & Resorts Worldwide, Inc.,*
583 F.3d 656 (9th Cir. 2009) ......................................................................................9, 20

*Lueck v. Sundstrand Corp.,*
236 F.3d 1137 (9th Cir. 2001) ...................................................................................8, 12, 13

*In re McGraw-Hill Glob. Educ. Holdings LLC,*
909 F.3d 48 (3d Cir. 2018) .................................................................................................18

*Murray v. British Broad.Corp.,*
81 F.3d 287 (2d Cir. 1996) ..................................................................................................9

*Murty v. Aga Khan,*
92 F.R.D. 478 (E.D.N.Y. 1981)...........................................................................................14

*PayServices Bank v. Fed. Rsrv. Bank of San Francisco,*
2024 WL 1347094 (D. Idaho 2024).......................................................................................5

*PayServices Bank v. Federal Reserve Bank of San Francisco*,
    Ninth Circuit App. No. 24 - 2355, Dkt...............................................................................................2

*Piper Aircraft Co. v. Reyno*,
    454 U.S. 235 (1981)..................................................................................................................9, 12

*Ranza v. Nike, Inc.*,
    793 F.3d 1059 (9th Cir. 2015) ........................................................................................................9

*Ritz Inv. Ltd. v. Abacus Glob. Mgmt., Inc.*,
    2026 WL 1256563 (M.D. Fla. May 7, 2026)................................................................................18

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,
    549 U.S. 422 (2007)........................................................................................................................8

*Star Colbert v. Dougan*,
    724 F. Supp. 3d 304 (S.D.N.Y. 2024), *appeal withdrawn sub nom. Colbert v. Dougan*................13

*In re Steen*,
    509 F.2d 1398 (9th Cir. 1975) ......................................................................................................20

*Sutter Home Winery, Inc. v. Vintage Selections, Ltd.*,
    971 F.2d 401 (9th Cir. 1992) ........................................................................................................19

*TJGEM LLC v. Republic of Ghana*,
    *26 F. Supp.* 3d 1, 13 (D.D.C. 2013), aff'd, 2015 WL 3653187 (D.C. Cir. 2015) .........................15

*Tuazon v. R.J. Reynolds Tobacco Co.*,
    433 F.3d 1163 (9th Cir. 2006) ........................................................................................................9

*Vivendi SA v. T-Mobile USA Inc.*,
    586 F.3d 689 (9th Cir. 2009) ........................................................................................................13

*Yavuz v. 61 MM, Ltd.*,
    576 F.3d 1166 (10th Cir. 2009) ......................................................................................................2

**Statutes**

Bank Secrecy Act..................................................................................................................................4

Business Law in Africa Uniform Act...................................................................................................10

Civil Code Articles 258 and 259 .........................................................................................................11

Commercial Courts Act........................................................................................................................10

*Public-Private Partnership Act* or the *Public Procurement Act* ........................................................5

**Other Authorities**

14D Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3828 (4th ed. 2021) ................................2

Restatement (Second) of Conflict of Laws § 6 .....................................................................................17

iv

## I.    STATEMENT OF PROCEEDINGS, STATEMENT OF THE CASE, AND STANDARD OF REVIEW

### A.  Statement of Proceedings

This case commenced on January 8, 2026, with the filing by Plaintiff PayServices Bank ("PayServices" or "Plaintiff") of a 6-count Complaint ("Compl." ECF No. 1) against Democratic Republic of the Congo ("DRC") and the Ministry of State in Charge of the Portfolio of the Democratic Republic of the Congo ("the Ministry"), Doudou Roussel Fwamba Likunde ("Fwamba"), Anthony Nkinzo Kamole ("Nkinzo") (collectively with DRC, Ministry and Fwamba "Movants"); and eight other individual defendants (collectively with Fwamba and Nkinzo "Individual Defendants").

On January 23, 2026, Plaintiff filed a Motion for Order Directing Clerk to Effect Service of Process Abroad by Registered Mail (DHL) ECF No. 6.[1] On April 7, 2026, PayServices filed its proof of service (ECF No. 10). That proof of service reflected attempts only in the DRC on all twelve Defendants and asserted successful service in the DRC on 11 of the Defendants.

On May 26, 2026, the following motions were timely filed: Motion to Dismiss for Lack of Jurisdiction for Defendant Sandra Tshibonge Mbiye, ECF No. 41; Defendant Andre Wameso Nkualoloki's Motion to Dismiss, ECF No. 42; Motion of the Democratic Republic of the Congo and Ministry of State in Charge of the Portfolio of the Democratic Republic of the Congo to Dismiss the Complaint, ECF No. 43; Motion of Doudou Roussel Fwamba Likunde to Dismiss the Complaint, ECF No. 44; Motion of Anthony Nkinzo Kamole to Dismiss the Complaint, ECF No. 45; and Defendant Julie Shiku's Motion to Dismiss, ECF No. 46.

On June 16, 2026, Plaintiff filed memoranda in opposition to each of the six motions to dismiss. ECF No. 48, 49, 50, 51, 52 and 53. Replies were timely filed. ECF No. 60, 61, 62,

---

[1] Movants will use the ECF pagination for references to pages in documents included in any ECF filing in this case.

1

63, 64 and 65.

Movants now move to dismiss the Complaint on the ground of *forum non conveniens.*[2]

**B.    Statement of the Case**

The movants are the DRC (a foreign sovereign state), the Ministry (one of the DRC ministries), and two sitting senior officials of the DRC government — Defendant Fwamba, the current Minister of Finance, and Defendant Nkinzo, the current Chief of Staff to the President of the DRC. Defendant Fwamba, Defendant Nkinzo, and all eight other Individual Defendants reside in the DRC. No Defendant resides in the United States.

Plaintiff PayServices has a checkered financial services history with an Idaho phase that began with an April 8, 2022, PayServices application to the Idaho Department of Finance Department for a bank charter, registration with the Idaho Secretary of State on September 12, 2022, and which is now scheduled for an evidentiary hearing on September 9-10, 2026 on PayServices' appeal of a Cease-and-Desist Order issued by the Idaho Department of Finance.  *See* Idaho Department of Finance Cease-and-Desist Order at ¶1, https://www.finance.idaho.gov/wp-content/uploads/legal/administrative-actions/financial-institutions/documents/Cease-Desist-Order-Payservices.pdf, (last visited July 30, 2026); Movant's Exhibit ("MX") 1, BATES 75[3]; Joint Status Report, July 22, 2026, *PayServices Bank v. Federal Reserve Bank of San Francisco,* Ninth Circuit App. No. 24 - 2355, Dkt. 91.1.

Prior to and during its tenuous but still contentious connection to Idaho, PayServices embroiled itself for years in financial practices disputes with the Florida Office of Financial Regulation ("OFR"). PayServices had

---

[2] In general, there is no time limit within which a motion based on the doctrine of *forum non conveniens* must be made. *Yavuz v. 61 MM, Ltd.,* 576 F.3d 1166, 1173 (10th Cir. 2009) ("[A]n objection on forum non conveniens grounds is not waived by a defendant failing to raise the issue in its first responsive pleading."); accord, 14D Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3828 (4th ed. 2021); *Huber v. Granby Realty Holdings, LLC*, 2019 WL 2299799, at *7 (D. Colo.2019).
[3] For this exhibit, the BATES number is at the bottom of the center of each page of the identified document, below the pagination of the document itself.

registered at least five entities in Florida, the first of which appears to have been registered in 2015.

*See* ECF 43-1, at 17 of 25; ECF 43-5.

OFR's records reflect that Plaintiff's brief corporate life in Idaho followed  sanctions and a May

2026 expulsion of PayServices from the financial services community in Florida after years of regulatory

failure, lack of cooperation, lack of candor, and rule breaking.[4]

- In the December 08, 2021, Final Order it was determined that: On February 22, 2021, PayServices filed an application to organize a Florida bank, BATES 94; on October 6, 2021, PayServices filed a Petition for waiver of rule requiring FDIC insurance to organize a bank in Florida, BATES 94-95; and the PayServices petition was denied, BATES 99.

- In the October 17, 2023, Final Order it was determined that PayServices was licensed in Florida as a Part II funds transmitter money services business, at BATES 68; PayServices was advertising itself as a bank on its website, BATES 74, ¶43; PayServices engaged in improper commingling and was fined, BATES 79-82, ¶¶ 79-91; PayServices failed to renew its FINCEN registration and was fined, and Danenberg's explanation that the registration lapsed because his Mac computer had compatibility issues with Adobe Acrobat was given no material weight, BATES 82-83, ¶¶ 92-98; PayServices failed to disclose bank accounts, and was fined, BATES 82-86, ¶¶ 93-112;

- The October 17, 2023, Final Order also found that PayServices' Lionel Danenberg's testimony under oath was "not persuasive or credible;" and showed "a continuing lack of candor," BATES 76, 67, 78; and Lionel Danenberg "willfully and improperly refused to answer basic questions regarding the facts of the case;" BATES 77, ¶64, and  he "evasively declared that he had already answered them in his deposition and that he was not required to respond to the questions at the hearing;" BATES 78, ¶65, and he "persisted in providing evasive and nonresponsive answers, such as (1) he did not remember what he said in his deposition; (2) he was not prepared to answer any questions at the hearing; and (3) he did not have to disclose anything about PayServices Bank to Petitioner at the hearing." BATES 78, at ¶66; Danenberg's lack of cooperation with respect to discovery depositions is set out in the attachment to

---

[4] *See* Amended Administrative Complaint filed by OFR in Case No. 89320, and accompanying Recommended Order; MX1, at BATES1; Final Order dated December 23, 2019, from OFR in Case No. 19-2943, MX1 at BATES 30; Final Order dated December 8, 2021, from OFR in Case No. 10723-F3, MX1 at BATES 94; Final Order dated October 17, 2023, from OFR in Case No. 108042, MX1 at BATES 63; and, A Final Order dated May 27, 2026, from OFR in Case No. 12593, MX1 at BATES 90.

the December 2, 2019, Final Order, in which, among other things, it is reported that Danenberg avoided an in-person deposition by asserting that he is neither a US citizen nor a permanent resident of the United States, BATES 10;

- The October 17, 2023, Final Order also found that PayServices failed to disclose the positions of Lionel and Willy Danenberg in PayServices Bank in Idaho and was fined. BATES 86-87, ¶¶ 113-121.

- The May 27, 2026, Final Order revoked PayServices' money transmitter license, BATES 90.

Barely four months after its FDIC-based bank waiver denial in Florida, PayServices appeared in Idaho. "On April 8, 2022, PayServices applied to the Department for a bank charter." Idaho Department of Finance Cease-and-Desist Order, at ¶1. "On May 4, 2023, the Department notified PayServices that if it was unable to satisfy all conditional approval requirements from the preliminary approval letter by August 3, 2023, that the preliminary approval would expire." Cease-and-Desist Order, at ¶4.

On May 31, 2023, the Federal Reserve denied PayServices' application for a master account, explaining:

RBSF is unable to grant your request because the request does not meet the standards outlined in the Board of Governors' Guidelines for Evaluating Account and Service Requests (Guidelines). PayServices has obtained "preliminary approval" from the Idaho Department of Finance to establish an uninsured Idaho state-chartered bank and would not be subject to prudential supervision by a federal banking agency. PayServices intends to operate exclusively as an online bank and to focus its business model almost entirely on providing payment processing solutions to foreign import and export merchants and buyers, and foreign governments…. *The proposed, novel, monoline business model and focus on transactions that are largely foreign in nature or involve mostly foreign participants presents undue risk.*

PayServices Bank's unproven risk management framework is considered insufficient to address the heightened risks associated with its novel, monoline business model, including its ability to mitigate money laundering and terrorism financing risks. Most notably, the significant risks and concerns in the areas of [Bank Secrecy Act]/[Anti-Money Laundering] and [Office of Foreign Assets Control] risk management, credit and settlement process and controls, cyber and information security risk management, enterprise risk management, strategic planning, and *the limited banking and bank-specific risk management experience among management,* presents undue risk to the Reserve

4

Bank. The proposal also presents potential concerns with respect to PayServices' ability to be solved safely and effectively upon failure, *due to its uninsured status*. Should the institution allow the Master Account to fund or facilitate illicit activity, undue reputational risk may also be posed to the Reserve Bank, Payment and/or U.S. financial system (emphasis added).

*PayServices Bank v. Fed. Rsrv. Bank of San Francisco*, 2024 WL 1347094, at *4 (D. Idaho 2024).

"On August 4, 2023, The Department notified PayServices that it had not met the conditions to receive a bank charter." Cease-and-Desist Order at ¶5. "On October 16, 2023, the Department granted a one-time extension of the preliminary charter approval to October 15, 2024." Cease-and-Desist Order at ¶7. "PayServices failed to meet the conditions outlined in the August 3, 2022, letter." Cease-and-Desist Order at ¶8.

Despite these failures and patent banking and financial services inadequacies, PayServices advanced in the DRC the PayServices scheme to, among other grandiose claims, "digitize the entire DRC economy."

On March 13, 2024, the then-Minister of Defendant the Ministry signed in the DRC a French language Memorandum of Understanding ("MOU") with Plaintiff PayServices. ECF 43-2. The MOU contained, among other things, the following recitals:

(A) Whereas the Democratic Republic of Congo has committed to "making digital technology a lever for integration, *good governance, economic growth and social progress*". To this end, *the National Digital Plan (NDP)* was adopted in September 2019…

(B) As part of the implementation of the National Digital Plan (NDP), the Government adopted, at the 34th meeting of the Council of Ministers held on December 24, 2021, the *Ministry of Digital Affair's roadmap*, which includes a series of digital projects to be carried out in the sectors of education, finance, digital identity, health, and public administration; and

(F) … the Private Partner intends to *support the Congolese State in transforming its economy*…

The operative provisions of the MOU provided in part as follows:

2.3 The activities and the Project described in this Memorandum of Agreement shall be implemented in accordance with either the *Public-Private Partnership Act* or the *Public Procurement Act*, as well as *the laws and regulations in force in the Democratic Republic*

5

*of Congo* (emphasis added).

2.4 In the interpretation or performance of its provisions and commitments, *this Memorandum Agreement does not constitute a contract for the execution or award of a public contract, nor does it constitute a delegation of a public service, and it contains no binding obligations on the Parties that would give rise to their liability*. The provisions of this clause shall prevail over and supersede any clause in this Memorandum of Agreement that may be subject to a different interpretation.

2.5 The Parties hereby set forth, in this Memorandum of Agreement, *the fundamental principles upon which their collaboration will be based*; provided that any provision contrary to *the laws and regulations in force in the Democratic Republic of the Congo* shall be deemed null and void. The Parties undertake to negotiate, in good faith, the terms and conditions for implementing their collaboration within the framework of a *subsequent agreement*.

3.2 The Private Partner undertakes to propose and develop…. In addition, *if an agreement is reached,* he undertakes to: . . .

4.1 *The Private Partner undertakes to provide financing for the Project in  accordance with the laws and regulations in force in the Democratic Republic of the Congo.*

(Emphasis added).

Concurrently executed in the DRC on the same day as the non-binding MOU was a French-language "Subscription Agreement" between PayServices as "the Company" and the Ministry as "the Purchaser," with no direct or indirect reference in any way to Defendant DRC or any other Defendant. *See* ECF 43-3.

The Subscription Agreement – fraught with failures under DRC procurement and public-private partnership law, unperformed conditions in the DRC, inability to perform in the DRC, acknowledgements in companion documents signed in the DRC of unenforceability, and a raft of securities violations[5] – sought $20,000,000.00 for 3.67% of the total capital stock of  PayServices. Predictably, the responsible Ministries in the DRC declined to provide the requisite approvals for the PayServices scheme.

Two weeks after the signings, on March 30, 2024,  PayServices' claim against the Federal Reserve was dismissed. 1:23-cv-00305-REP, ECF No. 4.

---

[5] Deficiencies in the Subscription Agreement are discussed in detail in the DRC/Ministry's Motion to Dismiss.

"On October 16, 2024, the Department notified PayServices that the preliminary approval had expired and was now terminated." Cease-and-Desist at ¶9. "On October 16, 2024, the Department rescinded its September 12, 2022, waiver allowing PayServices to use the word "bank" in its name." Cease-and-Desist at ¶10. In other words, by 2024, state and federal banking regulatory schemes designed to ensure the safety of financial institutions had shut PayServices off from any banking activities in the United States. Notwithstanding that the Florida OFR, the United States Federal Reserve Bank, and the Idaho State Department of Finance repeatedly denied PayServices the regulatory *bona fides* which were critical to PayServices' contractual representations, warranties, and abilities to perform, PayServices embarked on a series of maneuvers in the DRC to revive the scheme. *See* ECF No. 64 at 11-13 of 18[6].

Silent on its disqualifying regulatory disasters, Plaintiff wrote to Ms. Olga Kadima, an aide to Defendant Fwamba, as follows on March 24, 2025: "In January, *we spent two weeks in Kinshasa*. During my stay, following what we had agreed in New York, I contacted the minister via WhatsApp to organize a meeting, *but I did not receive a response*." (Emphasis added). From January 16, 2025, to April 1, 2025, Plaintiff reached out in writing to Ms. Kadima at least 30 times, only to be ignored, or rebuffed by replies such as: "we can talk tomorrow;" "My network is not good;" "I am in a meeting;" "I will call you back;" and the like. ECF No. 44-1, at 9 of 28.

Ignored and avoided by Defendant Fwamba and Ms. Kadima, PayServices sought on March 28, 2025, in its own written words, to force someone to "finalize" the non-final memorandum by threatening to use American political influence to disrupt a "minerals agreement" and U.S. "security support." ECF No. 44-1 at 9.

---

[6] According to its Complaint, PayServices distributed a "project brochure" as "part of the signing package," presumably, therefore, also in DRC. Complaint, at ¶33. That brochure, a copy of which is attached at ECF No. 46-4, 89 of 114, describes the opportunity for DRC to secure a "minority stake in a US bank giving the DRC the distinction of being the only country in Central Africa with direct access to US financial markets;" boasts of access to US markets "thanks to PayServices US license;" describes itself "as a US banking company authorized to accept deposits;" refers to "…the US banking firm PayServices …; "and touts the opportunity to be "…the only country in Central Africa to hold a stake in an American bank…."). *Id.*, at 91, 96, 102.

Plaintiff complains that it was denied a meeting with the DRC President *in New York*, Compl. at ¶ 43, but admits that it was granted a meeting with the DRC President *in the DRC. Id.* at ¶ 38.  In the end, Plaintiff's efforts at intimidation and political pressure failed, and its demands that Congolese law be ignored or circumvented were rejected by responsible DRC officials following Congolese law.

### C.  Standard of Review, Sequencing, and Burden of Proof

"A *forum non conveniens* determination is committed to the sound discretion of the district court." *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1143 (9th Cir. 2001).  "[W]here subject-matter or personal jurisdiction is difficult to determine, and *forum non conveniens* considerations weigh heavily in favor of dismissal, the court properly takes the less burdensome course." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 436 (2007). In *Sinochem,* the Supreme Court made clear that courts have discretion as to the sequencing of their determinations of *non-merits* threshold issues, such as whether an action should be dismissed for lack of personal jurisdiction or under the doctrine of *forum non conveniens. Id.*

"To prevail on a motion to dismiss based upon *forum non conveniens*, a defendant bears the burden of demonstrating an adequate alternative forum, and that the balance of private and public interest factors favors dismissal." *Dada v. NSO Grp. Techs. Ltd.,* 2025 WL 1879527, at *2 (9th Cir. 2025).

### II.    ARGUMENT

### A.  The DRC is an Adequate Alternative Forum

An adequate alternative forum exists where litigating the dispute in that international forum would "best serve the convenience of the parties and the ends of justice." *Murray v. British Broad.Corp.*, 81 F.3d 287, 290 (2d Cir. 1996) (internal quotation marks omitted). "An alternative forum is deemed adequate if: (1) the defendant is amenable to process there; and (2) the other jurisdiction offers a satisfactory remedy." *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1225 (9th Cir.

2011);  *see also Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22 (1981)); *Bundy v. Nirvana LLC*, 2023 WL 4311613, at *1 (9th Cir. July 3, 2023) (dismissed on forum non conveniens grounds applying *Carijano.*)

"Typically, a forum will be inadequate only where the remedy provided is so clearly inadequate or unsatisfactory, that it is no remedy at all." *Carijano,* 643 F.3d at 1226 (quoting *Tuazon v. R.J. Reynolds Tobacco Co.,* 433 F.3d 1163, 1178 (9th Cir. 2006) (internal quotation marks omitted)). "[T]hat the law, or the remedy afforded, is less favorable in the foreign forum is not determinative." *Loya v. Starwood Hotels & Resorts Worldwide, Inc.,* 583 F.3d 656, 666 (9th Cir. 2009) (citing *Piper Aircraft,* 454 U.S. at 247). A foreign forum must merely provide "some" remedy. That the Congolese courts may apply civil-law procedures unfamiliar to a United States litigant does not render them inadequate. *See Ranza v. Nike, Inc.*, 793 F.3d 1059, 1077-1078 (9th Cir. 2015) (holding the Dutch Equal Treatment Commission to be "an adequate body" even though its "proceedings are less formal than court proceedings[.]").

As the United States Department of State has reported in its regular report on the legal system of the Democratic Republic of the Congo: "Contracts in the DRC are enforced through its civil law framework, which includes provisions for contract enforcement and dispute resolution . . . . Commercial courts, situated in major business hubs, handle disputes related to commercial activities and contracts . . . . The judicial system in the DRC functions independently of the executive branch." *2025 Investment Climate Statements: Democratic Republic of the Congo*, U.S. Dep't of State, Section 3, https://www.state.gov/reports/2025-investment-climate-statements/democratic-republic-of-the-congo, (last visited 5/19/2026).

In fact, the DRC has a sophisticated and comprehensive legal system[7] for the adjudication and disposition of commercial contract disputes:

> Over the past three years, the legal framework governing commercial contracts in the DRC has evolved primarily through institutional and procedural reforms rather than through landmark court decisions.
>
> A major development has been the adoption of the Organisation for the Harmonisation of

9

Business Law in Africa Uniform Act ("OHADA") on Simplified Recovery Procedures and Enforcement Measures, adopted on 17 October 2023 and effective from February 2024. This reform seeks to modernise and harmonise debt recovery and enforcement mechanisms across OHADA member states, including the DRC. It enhances creditor protection, simplifies enforcement proceedings, and strengthens the overall efficiency and predictability of commercial dispute resolution.

At the national level, Law No. 23/061 of 10 December 2023 amending the Commercial Courts Act introduced several important procedural and structural innovations. The reform notably:

- shortened procedural timeframes to expedite the resolution of commercial disputes;
- provided that consular judges – who represent the business community – are now remunerated by the Public Treasury, reinforcing their independence;
- extended the jurisdiction of commercial courts to include enforcement-related disputes;
- introduced simplified procedures for small claims to improve access to justice for smaller businesses; and
- initiated the digitalisation of judicial processes, paving the way for more transparent and efficient case management.

Together, these reforms reflect a broader trend towards the modernisation and professionalisation of commercial justice in the DRC, aiming to enhance the reliability of contract enforcement and to improve the business climate.

During the past 12 months, there have been no additional major legislative or judicial developments directly affecting commercial contract law. However, the ongoing implementation of these reforms demonstrates a sustained commitment to legal modernisation, procedural efficiency and stronger investor confidence in the Congolese commercial justice system.

Mopiti, Didier[8], Mbalanda, Paulin[9], and Elekeleme, Rodrick[10], *Law and Practice in DRC, Commercial Contracts 2025* (Updated 12/12/2025). For a more thorough description of the practice of commercial contract law in the DRC, *see Law and Practice, supra,* at ECF No. 43-1.

DRC extra-contractual law on liability for intentional wrongdoing is virtually indistinguishable from American law on intentional torts:

---

[7] The Éditions Larcier published <u>*Les Codes Larcier.*</u> These annotated Larcier codes, organized in seven tomes, cover all the major codes in the main areas of Congolese law. *Zongwe, D.P., Butedi, F., and Clément, P.M., Overview of the Legal System of the Democratic Republic of the Congo (DRC) and Research, NYU Law (Jan/Feb 2025) https://www.nyulawglobal.org/globalex/democratic_republic_congo1.html* (last visited June 04, 2026).

### 5.1 Liability

In the DRC, the principle of civil liability is anchored in Articles 258 and 259 of the Civil Code (Book III). Together, these provisions establish that any act by a person causing harm to another obliges the author to make reparation – not only for damage resulting from an intentional act but also for that caused through negligence or imprudence.

Accordingly, Congolese liability law is based on three essential elements:

- a fault (which may consist of an act, omission, negligence or imprudence);
- a damage suffered by another; and
- a causal link between the fault and the damage.

There are two principal forms of liability under Congolese law:

- Contractual liability, which arises from the breach of contractual obligations. Contracts validly formed have the force of law between the parties and must be performed in good faith. A party failing to perform its obligations, without lawful justification, may be required to compensate the loss sustained by the other party.
- Extra-contractual (tortious) liability, which applies outside contractual relations, when a person causes harm to another through fault, negligence or imprudence.

In both cases, the obligation to repair the damage arises regardless of whether the fault

---

[8] Didier Mopiti is a partner and co-ordinator of MBM CONSEIL, bringing nearly 20 years of experience in commercial law and regulatory compliance. A member of the Kinshasa/Gombe Bar since 2004, he advises on contract drafting, negotiation and execution for clients in the banking, mining, energy and telecommunications sectors. His work focuses on structuring partnership, distribution and service agreements under OHADA and national legislation. Didier also co-ordinates multidisciplinary teams to ensure legal consistency and operational efficiency across complex projects, combining practical insight with a solid understanding of local and regional commercial frameworks.

[9] Paulin Mbalanda is the managing partner and founding member of MBM CONSEIL, with 25+ years of experience in commercial and corporate law in the DRC. Admitted to the Kinshasa Bar in 1997, he focuses on the drafting, structuring and negotiation of commercial contracts, joint ventures and public–private partnerships. His expertise includes advising on complex transactions and contractual risk management across the mining, energy and infrastructure sectors. Paulin provides strategic guidance on compliance with OHADA regulations and Congolese business law, ensuring the firm's high-level advisory work remains legally robust and commercially sound.

[10] Rodrick Elekeleme is a senior associate and supervisor of the Advisory Department at MBM CONSEIL, specializing in commercial contracts, joint ventures and regulatory compliance. A member of the Kinshasa/Gombe Bar since 2018, he advises clients in the mining, telecoms, energy and retail sectors on drafting, negotiating and reviewing high-value agreements. Rodrick holds a Law degree from the University of Kinshasa, a Master's in Public Administration from Seoul National University, and is pursuing an LL.M. in Business Law at the University of Montreal. His international academic background enhances his analytical approach to complex commercial transactions.

11

was deliberate or resulted from carelessness, underscoring the Congolese system's broad conception of fault.

*DRC Law and Practice, supra.*

Because the defendants are amenable to process in the DRC and because the DRC courts offer a satisfactory remedy, the DRC is a more than adequate forum for the claims in this case. *Carijano,* 643 F.3d at 1225.

## B.  Private Factors Favor Dismissal

"The 'private interest factors' the Court considers in resolving a *forum non conveniens* motion include:

> "(1) the residence of the parties and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) all other practical problems that make trial of a case easy, expeditious and inexpensive."

*Carijano*, 643 F.3d at 1229 (quoting *Lueck*, 236 F.3d at 1145).

"[D]ismissal should not be automatically barred when a plaintiff has filed suit in his home forum. As always, if the balance of convenience suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court, dismissal is proper." *Piper Aircraft Co.*, 454 U.S. at 255 n.23; *see also Lueck*, 236 F.3d at 1147.

Factors  (1), (2), (3), (5), and (7)  overwhelmingly weigh in favor of dismissal. As to the DRC and the Ministry, their representatives are obligated to perform their governmental functions daily in the DRC. Movants Fwamba and Nkinzo, as well as other Individual Defendants,  are current members of the DRC government. *See Star Colbert v. Dougan,* 724 F. Supp. 3d 304, 331 (S.D.N.Y. 2024), *appeal withdrawn sub nom. Colbert v. Dougan*, WL 4615736 (2d Cir. 2024) ("And while ordinarily, those facts would render this factor neutral, the involvement of the Swiss government in this case pushes this factor in favor of Switzerland. Both sides will likely need to call multiple Swiss government officials as non-party witnesses. Rather than navigate the process of attempting to compel those officials to travel to the Southern District,

12

it is far more convenient for the case to instead proceed within the Swiss court system.").

Here, the contract claims – and thus the witnesses and documents – involve two Documents *signed in the DRC*, for *services to be provided by Plaintiff in the DRC*, with, according to Plaintiff, billions of dollars in profits to be grabbed off the backs of the Congolese people.

Plaintiff adds to those meritless claims allegations against 10 DRC citizens with either no, or the slightest of connections to the United States, and no connections at all to Idaho. *See, e.g., Lueck*, 236 F.3d at 1145–46 (private interest factors favored dismissal where key foreign witnesses lay beyond the court's reach and could not readily be brought to the United States); *see also Vivendi SA v. T-Mobile USA Inc.*, 586 F.3d 689, 696 (9th Cir. 2009) ("In this case, all of the conduct underlying Vivendi's claims occurred overseas, and all of the witnesses but three reside in Europe.")

Further, critical documents are in French, and the defendants and witnesses speak French as their native language. French is the official language of the DRC, and over two-thirds of the residents of Kinshasha read, write and speak French. *See* What Languages are Spoken in the Democratic Republic of the Congo, https://www.worldatlas.com/articles/what-languages-are-spoken-in-the-democratic-republic-of-the-congo.html (last visited July 21, 2026).

By contrast, the use in the DRC of English in "the main domains of socio-economic and political life remains infinitesimal." *English in the Democratic Republic of the Congo* (March 2012), available at https://www.researchgate.net/publication/263447643-English-in-the-Democratic-Republic-of-the-Congo. The primacy in this case of French documents and French speakers thus weighs in favor of dismissal. *See Murty v. Aga Khan*, 92 F.R.D. 478, 482 (E.D.N.Y. 1981) (granting motion to dismiss because "[f]inally, the relevant court decisions, as well as many other crucial documents, are in the French language.")

PayServices, on the other hand, has no legitimate ongoing financial services or banking operations in the United States or in the "US financial system." As is set out in detail in Section I.B,

13

above, PayServices' attempt to secure a banking license in Florida was rejected in 2021, and its last remaining money transferor license in Florida was revoked in 2026, following years of financial irregularities and misconduct, fines and penalties. Reprising its Florida scheme in Idaho, PayServices' temporary and contingent success vanished on scrutiny from the Idaho Department of Finance. *Id.* The Federal Reserve's blistering rejection of the PayServices' demand for a master account left PayServices in the United States with, if anything, a niche business facilitating parts of "transactions that are largely foreign in nature or involve mostly foreign participants presents." *Id.*[11]

The extraordinary costs and burdens of litigating these meritless claims thousands of miles from the homes of the defendants are indisputable. The private factors pertinent to these Congolese defendants and this DRC-based claims show that they do not belong in an American court and Plaintiff, with its US, Florida, and Idaho activities terminated by regulatory authorities, should be required to make its case in the DRC.

### C. Public Factors Favor Dismissal

The "public interest factors" the Court considers include:

> "(1) the local interest in the lawsuit, (2) the court's familiarity with the governing law, (3) the burden on local courts and juries, (4) congestion in the court, and (5) the costs of resolving a dispute unrelated to a particular forum."

*Carijano*, 643 F.3d at 1232 (citation omitted).

Factor (1) overwhelmingly weighs in favor of dismissal. "There is a comity interest in allowing a foreign state to use its own courts for a dispute if it has a right to do so…. In the instant matter, the sovereign defendants, Ghana and the AMA, have a legitimate interest in events of ... political significance for the Republic and its people." *TJGEM LLC v. Republic of Ghana, 26 F. Supp.* 3d 1, 13 (D.D.C. 2013), aff'd, 2015 WL 3653187 (D.C. Cir. 2015) (internal citations omitted).

---

[11] Indeed, PayServices' principal and sole representative so far in this litigation successfully used his foreign residence to avoid being deposed in Florida. Section I.B. *supra.* It is likely that Mr. Danenberg's overseas residence is closer to the DRC than to Idaho.

The Complaint itself characterizes the alleged transaction as a sovereign national initiative. Plaintiff alleges a project intended to "digitize and modernize the entire national economy of the DRC," Complaint ¶ 1, and designed to provide the DRC with a "strategic geopolitical advantage." Complaint ¶ 31. Plaintiff repeatedly alleges presidential directives and national-policy objectives. Complaint ¶¶ 7, 10, 23, 28.  Plaintiff's inescapable allusions to its efforts to seek and apply the political influence of the DRC president, Complaint ¶¶ 22, 24, and  Plaintiff's  yet unexplained failure to proceed through the appropriate Ministry and parliamentary channels, evokes DRC "political significance" to a tee. By Plaintiff's own assertion, the $20 million was the catalyst to "open a representative office in the DRC" which would "work directly on the local market in collaboration with CADECO." Complaint, at ¶ 33.

Further, even spurious claims of corruption by current members of the DRC government – such as those frivolous claims improperly levied against defendants Fwamba and Nkinzo – are matters of importance to the DRC and its courts. *See Pimentel,* 553 U.S. at 869 (finding claims based on alleged public corruption to implicate "important comity concerns" to which courts must "accord proper weight to the compelling claim of sovereign immunity."). As the district court in *Instituto Mexicano del Seguro Soc. v. Zimmer Biomet Holdings, Inc.*, 518 F. Supp. 3d 1258, 1269 (N.D. Ind. 2021), aff'd, 29 F.4th 351 (7th Cir. 2022) explained:

> Mexico has a much greater interest in this litigation. IMSS, a Mexican government agency, alleges violations of Mexican law from the sale of medical devices in Mexico that bribes of Mexican customs officials facilitated. The contract at issue was formed in Mexico. Mexican courts have an inherent interest in enforcing Mexican law, in hearing disputes regarding its own government, and in hearing disputes regarding corruption of Mexican officials. Indeed, it would be a rare case in which Mexico had any greater interest to hear and decide a case than this one . . . .

Idaho, by sharp contrast,  has no meaningful interest in this dispute. As noted above, Plaintiff's performance was limited to the DRC.  Plaintiff's tenuous connection to Idaho pales in comparison to the fundamental interests and concerns of a dozen DRC defendants and the "local interest" of the people of the DRC. *See* ECF 43-5 (Florida State Business Records); ECF 43-4 at 3; *see also*  March 2025

15

PayServices statement that its office was "25 minutes from" Mar-a-Lago in Florida.

Factor (2) turns on whether DRC law or US law applies. There are competing choice of law provisions in the MOU and the Subscription Agreement, neither of which was signed by any of the 10 Individual Defendants or the DRC. *See* discussion below. Generally, with respect to contract claims, Idaho courts will apply the following choice of law provisions: "a) the place of contracting, b) the place of negotiation of the contract, c) the place of performance, d) the location of the subject matter of the contract, and e) the domicile, residence, nationality, place of incorporation, and place of business of the parties." *Gen. Sec. Indem. Co. of Arizona v. Great N. Ins. Co.,* No. CV 06-0032-S-MHW, 2007 WL 845857 (D. Idaho Mar. 19, 2007). Each of those factors mandates application of DRC law.

For torts, the result is the same:

> Idaho applies the "most significant relationship test" to determine the choice of law for tort claims . . . . Under that test, a court considers (a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicile, residence, nationality, place of incorporation, and place of business of the parties; and (d) the place where the relationship, if any, between the parties is centered . . . . Of these, the most important is the place where the injury occurred. These contacts are evaluated under the policy concerns outlined in § 6 of the Restatement (Second) of Conflict of Laws.

*Gargoyle Granite & Marble, Inc. v. Opustone, LLC*, 2021 WL 5451497, at *16 (D. Idaho 2021) (citation modified). Under Restatement §§ 6 and 188, every relevant contact points to the DRC.

In all events, the critical issue of DRC procurement requirements is not a choice of law inquiry. *See* Declaration of Tresor-Gauthier Mitongo Kalonji ECF No. 43-8. Plaintiff's failure to follow or satisfy those requirements is at the heart of its claims, and there is no escaping the need for Congolese expertise on those laws and regulations.

Because the remaining factors are neutral, the public factors mandate *forum non conveniens* dismissal.

### D.  The Subscription Agreement's Forum-Selection Clause Does Not Bar Dismissal

PayServices asserts that venue lies under "the Subscription Agreement's exclusive forum

selection clause," which provides that "the undersigned irrevocably submits to the jurisdiction of the federal or state courts located in the State of Idaho." ECF No.1 at ¶¶ 19, 21. But PayServices is patently wrong.

At the outset, "our analysis presupposes a contractually valid forum-selection clause." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 62, 134 S. Ct. 568, 581, 187 L. Ed. 2d 487, n. 5 (2013). As set out in the concurrently pending motion to dismiss, the Subscription Agreement is therefore non-binding and unenforceable. *See* ECF 43-1 § III.D.1.b, c, d; *see also* ECF 43-1 § III.D.1.a; ECF 43-2 at 1 of 10.

Secondly, only one defendant out of twelve signed the alleged agreement. "Binding a non-party to a contractual clause is possible but requires foreseeability: that is, the non-party should be in a position to foresee that it may be bound by the clause . . . ." *Ritz Inv. Ltd. v. Abacus Glob. Mgmt., Inc.*, 2026 WL 1256563, at *5 (M.D. Fla. May 7, 2026). "A foreseeability finding in the context of forum selection clauses must have some evidentiary basis, other than pure speculation, that the party sought to be bound had an awareness of the clause, its contents, and that it might be defensively invoked." *In re McGraw-Hill Glob. Educ. Holdings LLC,* 909 F.3d 48, 65 (3d Cir. 2018). Plaintiff does not, and cannot, point to any evidentiary basis for the requisite assertion that any Individual Defendant, or the DRC, was aware of the alleged agreement itself, much less the forum selection clause.[13]

Synthesizing decisions in the Third and Seventh Circuits, as well as Delaware Chancery Court, the Fifth Circuit identified "fundamental factors" that it would consider "in determining whether these non-signatories [were] closely related":

> (1) common ownership between the signatory and the non-signatory, (2) direct benefits obtained from the contract at issue, (3) knowledge of the agreement generally and (4) awareness of the forum selection clause particularly.

*Franlink Inc. v. BACE Servs., Inc.*, 50 F.4th 432, 440–42 (5th Cir. 2022). These factors dovetail with the Supreme Court's description of the rationale for consideration of forum selection clauses in *forum non*

17

*conveniens* analysis:

> When *parties* have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt *the parties'* settled expectations. A forum-selection clause, after all, may have figured centrally in *the parties' negotiations* and may *have affected how they set monetary and other contractual terms; it may, in fact, have been a critical factor in their agreement to do business together in the first place.*

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. at 66 (emphasis added).

None of the Individual Defendants signed or is mentioned in the alleged agreement; is alleged to have known of the alleged agreement or any of its terms; or is alleged to have been aware of the forum selection clause. And, concomitantly, because PayServices does not allege that any such knowledge was unaccompanied by knowledge of the MOU, each of the four *Franlink* factors, as well as the principles underlying *Atl. Marine*, preclude subjecting 11 of the 12 defendants to a forum selection clause about which they had no knowledge or awareness, and which was negotiation which did not involve any of those defendants, in a contract out of which none of those benefits benefitted, between parties with whom those defendants shared no ownership interest. Unsurprisingly, Plaintiff lacks any other arguably recognized claim that some other contractual or tort principle subjects non-signatories to a clause to which they have no connection. *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631, 129 S.Ct. 1896, 173 L.Ed.2d 832 (2009) (discussing "assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver[,] and estoppel) (quotation omitted).

Third,

> "Claims arising in tort are not ordinarily controlled by a contractual choice of law provision. Rather, they are decided according to the [choice of law rules] of the forum state." *Sutter Home Winery, Inc. v. Vintage Selections, Ltd.*, 971 F.2d 401, 407 (9th Cir. 1992) (cleaned up); *cf. Pro-Formance Lube Ctr., Inc. v. BP Lubricants USA, Inc.*, No. CIV 08-00290-BLW, 2009 WL 10678745, at *3 (D. Idaho July 31, 2009) (applying Idaho choice of law rules to tort claims notwithstanding contractual choice-of-law provisions).

---

[13] "A foreseeability finding in the context of forum selection clauses must have some evidentiary basis, other than pure speculation, that the party sought to be bound had an awareness of the clause, its contents, and that it might be defensively invoked." *In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d at 65.

*Granite & Marble, Inc. v. Opustone, LLC,* 2021 WL 5451497, at \*16 (D. Idaho 2021). Because the only claims against the Individual Defendants sound in tort, the Individual Defendants cannot be subjected to the clause. Further, because the clause itself is unenforceable when read—as it must be—alongside the MOU. *See In re Steen*, 509 F.2d 1398, 1403 (9th Cir. 1975).

Whatever residual force the clause might retain—and, as set forth above, there is none—reaches no further than the non-binding contract claim against the Ministry under Count I. It cannot anchor in Idaho the tort and conspiracy claims, the claims against the DRC and the Individual Defendants, or the overwhelmingly Congolese controversy that the private and public-interest factors, addressed above, place squarely in the DRC.

This Court's analysis therefore turns on the private and public factors, which weigh heavily in favor of dismissal.

### E.  This Court Can Impose Suitable Conditions

To the extent that the Court entertains any residual doubt about the availability or adequacy of the Congolese forum — and, as shown above, there is none — that doubt is fully answered by the Court's power to enter a conditional dismissal. *See Loya v. Starwood Hotels & Resorts Worldwide, Inc.*, 583 F.3d 656, 664 (9th Cir. 2009).  Movants, of course, will be amenable to consideration of any conditions imposed by the district court.

### CONCLUSION

For the reasons set forth above, this action should be dismissed on forum non conveniens grounds. Such dismissal can be conditioned on such terms as this court determines in the exercise of its reasonable discretion to impose. All remaining motions to dismiss should be denied without prejudice as moot.

DATED this 6th day of August, 2026.

KIRTON MCCONKIE

 /s/ *Jennifer Reinhardt-Tessmer*
Jennifer Reinhardt-Tessmer


MUSOLINO & DESSEL, PLLC

 /s/ *Philip M. Musolino*
Philip M. Musolino


*Attorneys for The Democratic Republic of the*
*Congo and Ministry of State in Charge of the*
*Portfolio of the Democratic Republic of the Congo*


ROLINSKI LAW GROUP, LLC

 /s/ *Sylvia J. Rolinski*
Sylvia J. Rolinski


VARIN THOMAS LLC

 /s/ *J. Will Varin*
J. Will Varin


*Attorneys for Defendants Doudou Roussel*
*Fwamba Likunde and Anthony Nkinzo Kamole*

20

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 6th day of August, 2026, I electronically filed the foregoing document through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

- **C. Anderson Parker**
  andy@parkersanchez.com
- **Miguel Andrès Sànches-Ross**
  andres@parkersanchez.com
- **John F. Kurtz, Jr.**
  jfk@kurtzlawllc.com
- **Alyson Foster**
  alyson@dempseyfoster.com
- **J. Will Varin**
  willvarin@varinthomas.com
- **Jennifer Aiko**
  jmaiko@hollandhart.com
- **Kenneth Charles Shumard**
  kshumard@hawleytroxell.com
- **Sylvia J. Rolinski**
  sjr@rolinski.com
- **Tyler J. Anderson**
  tanderson@hawleytroxell.com

and all counsel of record via CM/ECF Notice.

 */s/ Jennifer Reinhardt-Tessmer*
Jennifer Reinhardt-Tessmer

21