C. Anderson Parker, Federal Bar No. 567726
andy@psd.law — Pro hac vice
Miguel Andrés Sánchez-Ross, Federal Bar No. 743446
andres@psd.law — Pro hac vice
PARKER SANCHEZ & DONNELLY PLLC
700 Louisiana St., Suite 4520
Houston, TX 77002
(713) 659-7200 (Telephone) | (713) 659-7203 (Facsimile)

John F. Kurtz, Jr., ISB No. 2396
jfk@kurtzlawllc.com
KURTZ LAW PLLC
910 W Main Street, Ste 364
Boise, ID 83702
(208) 287-8167 (Telephone) | (208) 287-8130 (Facsimile)

*Attorneys for Plaintiff PayServices Bank*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| PAYSERVICES BANK,<br><br>Plaintiff,<br><br>vs.<br><br>THE DEMOCRATIC REPUBLIC OF THE CONGO, et al.,<br><br>Defendants. | Case No. 1:26-cv-00009-REP<br><br>**PLAINTIFF'S SUR-REPLY IN OPPOSITION TO MOTION TO DISMISS ON FORUM NON CONVENIENS GROUNDS [Dkt. 66]** |

## INTRODUCTION

Movants' Motion asked the Court to send PayServices to the courts of the DRC without a declaration, a stipulation, or any evidence about those courts. Opp. (ECF 69) at 10–13. The Reply now offers evidence, and this Sur-Reply addresses it. The evidence does not help Movants. Their witness is the defendant Minister of Finance's own legal advisor. Their principal exhibit is a presidential decree, certified by co-defendant Nkinzo, creating a *criminal* court, not a court where

PayServices could seek relief. In this court, only the State's prosecutor can bring a case; the State is, by operation of law, the injured party; and sitting ministers—including Movant Fwamba—are constitutionally excluded from its jurisdiction. Movants were asked to show a forum in which PayServices could recover from the DRC. They have instead shown a forum in which the DRC prosecutes whom it chooses, and from which the Minister whose conduct is at issue is excluded. Pressed for evidence, Movants have produced proof that the alternative forum is no alternative at all.

## I. THE REPLY'S NEW EVIDENCE DESCRIBES A FORUM THAT POLICES ITSELF

**A. The declarant is the Minister's own legal advisor, and the decree is certified by a co-defendant.** The Reply's only evidence of adequacy is the Second Declaration of Trésor-Gauthier Mitongo Kalonji. Mr. Kalonji "currently serve[s] as Senior Legal Advisor to the Minister of Finance," ECF 71-1 ¶ 2—that is, to Movant Fwamba, whose own conduct the Complaint puts at issue. Compl. (ECF 1) ¶ 42. He offers no independent analysis of Congolese law or courts. He "agree[s] with" the commercial-practice guide Movants quoted in their opening brief, ECF 71-1 ¶ 6; he asserts that the President's decision to give Mr. Danenberg a security escort "in no way arose from any concern for Mr. Danenberg's safety," *id.* ¶ 15; and he describes the attached decree as a "Parliamentary law ratified by the President[]." *Id.* ¶ 7. It is not. The instrument is an ordinance-law issued by the President under a temporary delegation of legislative power, ECF 71-2 at 26 (reciting Law No. 25/056 "authorizing the Government to legislate by ordinance" and Constitution article 129), and an ordinance-law lapses unless Parliament ratifies it.[1] Movants' own brief calls it "President Tshisekedi's decree." Reply at 4–5.

[1]DRC Const. art. 129 (ordinance-laws "become lapsed if the Bill of the law of ratification is not deposited with the Parliament" by the enabling law's deadline and "cease[,] of right[,] to produce

The document Mr. Kalonji vouches for is, in turn, "[c]ertified true" by "Anthony NKINZO KAMOLE, Chief of Staff," ECF 71-2 at 25, 45—a Movant, and the defendant the Complaint alleges kept the President "in the dark regarding the bribery demands made by his co-conspirators." Compl. ¶¶ 9, 43. The evidence of the forum's independence comes entirely from the parties whose independence is in question.

**B. The court the decree creates is a criminal court that the State controls.** Taken at face value, the ordinance-law does not describe a forum in which PayServices can sue the DRC. It creates "a specialized court for the prosecution of serious offenses of an economic and financial nature." ECF 71-2 at 27 (art. 1). Its "exclusive jurisdiction" extends to eleven categories of "offenses," each defined by reference to the Penal Code, *id.* at 28–29 (art. 6), and those offenses are "investigated, established, prosecuted and tried in accordance with the ordinary rules of the Code of Criminal Procedure." *Id.* at 27 (art. 2). Mr. Kalonji confirms the point: the court hears "corruption and related practices . . . on the part of public officials." ECF 71-1 ¶ 8. Nothing in the decree confers jurisdiction over a civil claim for breach of contract against the State.

The State also controls the door. The court "is seized by the Attorney General attached to it," ECF 71-2 at 30 (art. 7), and "a summons shall be issued only at the request of an officer of the public prosecutor's office attached to the Economic and Financial Criminal Court." *Id.* at 43 (art. 64). A private party cannot bring a case; and when one is brought, "[t]he State becomes a civil party as of right" wherever the offense caused "harm to the public finances of the State." *Id.* (art. 65). The decree casts the State as prosecutor and victim, never as defendant.

---

their effects" if Parliament does not ratify them). The Constitution's official text is French; quotations are from the English translation at constituteproject.org, https://www.constituteproject.org/constitution/Democratic_Republic_of_the_Congo_2011. The English text of MX2 (ECF 71-2 at 26–45) bears no translator's certification.

**C. The sitting Minister of Finance is carved out of it.** The court's jurisdiction is "[w]ithout prejudice to the provisions of Articles 107, 153 paragraph 3, 163 and 164 of the Constitution." ECF 71-2 at 30 (art. 8). Those are the Constitution's privilege-of-jurisdiction provisions. Article 153 reserves to the Court of Cassation, "in the first and last resort," the trial of "the members of the Government other than the Prime Minister," and Article 166 requires that any decision "to prosecute as well as to bring charges against the members of the Government" be "voted by an absolute majority of the members composing the National Assembly." DRC Const. arts. 153 ¶ 3(2), 166 ¶ 2.[2] Movant Fwamba is the sitting Minister of Finance. On the face of the decree Movants filed, the new court could not hear a case against him at all, and no prosecution could be brought against him anywhere in the DRC without a vote of the National Assembly. Movants' own footnote confirms the regime: it was "[t]he Court of Cassation" that convicted a former Health Minister. Reply at 4 n.3.

**D. The court was to exist by June 14, 2026. Movants offer no evidence that it does.** The decree "enters into force on the date of its promulgation," March 14, 2026, and provides that the court "shall be effectively established within three months" of that date. ECF 71-2 at 44–45 (arts. 73–74). That deadline passed on June 14. Movants filed the decree on September 10 without a word—from Mr. Kalonji or anyone else—that a judge has been appointed, a courtroom opened, or a case docketed. Nor do Movants say whether the ordinance-law has been ratified or when the enabling law's ratification deadline falls; an unratified ordinance-law ceases "of right" to produce its effects. *Supra* n.1. A forum that exists on paper is not "presently available to the plaintiff." *Niv*

[2]Article 90 defines the Government to include "Ministers." DRC Const. art. 90 ¶ 1. Articles 163 and 164, also preserved by article 8 of the decree, make the Constitutional Court "the criminal jurisdiction for the Head of the State and for the Prime Minister." *Id.* arts. 163, 164.

*v. Hilton Hotels Corp.*, 710 F. Supp. 2d 328, 336 (S.D.N.Y. 2008) (quoting *Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 159 (2d Cir. 2005)).

**E. Movants' exhibits supply the evidence of control the Reply said was missing.** The Reply says PayServices "does not offer a scrap of evidence" that Movants "could dictate the outcome of this dispute through their control over [the sovereign's] courts." Reply at 2. Movants have now supplied it themselves: by decree, the executive has written the rules of the court it proposes, decided who may be brought before it and by whom, made itself the injured party, and kept its own ministers beyond its reach. That is the scenario *Daventree* found dispositive. "In contrast with general allegations of corruption, the possibility that the Sovereign defendants could dictate the outcome of this dispute through their control over [the] courts would effectively foreclose the plaintiffs' right to pursue their claims and render the [sovereign's] courts an inadequate forum." *Daventree Ltd. v. Republic of Azerbaijan*, 349 F. Supp. 2d 736, 756 (S.D.N.Y. 2004); *see also Agudas Chasidei Chabad of U.S. v. Russian Fed'n*, 528 F.3d 934, 949 (D.C. Cir. 2008) ("no apparent reason for systematically preferring the courts of the defendant state"). If ever there were a case for that caution, it is one in which the sovereign asks to return to its own turf after writing the rules and choosing who may be brought before the court, and how.

**F. MX3 and MX4 do not help Movants either.** MX3 consists of press articles offered for the truth of what they report, through a translation service that "make[s] no claims . . . about the authenticity or content of the original document." ECF 71-3 at 2. That is hearsay, Fed. R. Evid. 801(c), 802, and it is the only evidence Movants offer that Mr. Danenberg's sworn account is "almost entirely false." Reply at 7. Read on its own terms, it confirms his account. The lead article reports that the official's office was "so contaminated by a 'toxic plant substance' that emergency decontamination is required," and concludes that "[t]he poison, ultimately, is not in the office, but

in impunity." ECF 71-3 at 3. The second reports that her suspension was sought by letter to "the Minister of the State Portfolio"—a Movant. *Id.* at 9.

MX4 is described as the U.S. motion to dismiss and the summary-judgment ruling in *Trower v. Blinken*. Reply at 6 n.6. It is not. Nine of its twenty-four pages are this case's ECF 19—Movants Fwamba and Nkinzo's own motion to enlarge time. ECF 71-4 at 2–10. The passage the Reply attributes to the United States (Reply at 6) is therefore not in the exhibit.[3] And the *Trower* ruling that is attached granted the adoptive parents' motion, holding that the Congolese court's decree was rendered "in accordance with the laws of the foreign-sending country." ECF 71-4 at 17, 24. That was PayServices' point: a valid judgment the Government refused to honor. Opp. (ECF 69) at 16.

## CONCLUSION

The Reply's exhibits do not cure the Motion's defect; they document it. Plaintiff respectfully requests that the Motion be denied for all the reasons stated in its Opposition (ECF 69) and this Sur-Reply.

---

[3] The sentence does appear in the Trower record, at ECF No. 19 at 8 of 20 in that case—just not in MX4. The same page adds, in footnote 9, that "it is more likely that the DRC courts are exhibiting fraud and corruption and simply ignoring duly-enacted law." Either reading describes the forum PayServices described. Opp. (ECF 69) at 16.

DATED: September 18, 2026.

Respectfully submitted,

s/ C. Anderson Parker
C. Anderson Parker
Federal Bar No. 567726
andy@psd.law
Miguel Andrés Sánchez-Ross
Federal Bar No. 743446
andres@psd.law
**PARKER SANCHEZ & DONNELLY PLLC**
700 Louisiana St., Suite 4520
Houston, TX 77002
(713) 659-7200 (Telephone)
(713) 659-7203 (Facsimile)

John F. Kurtz, Jr., ISB No. 2396
jfk@kurtzlawllc.com
**KURTZ LAW PLLC**
910 W Main Street, Ste 364
Boise, ID 83702
(208) 287-8167 (Telephone)
(208) 287-8130 (Facsimile)

*Attorneys for PayServices Bank, an Idaho Corporation*