Jennifer Reinhardt-Tessmer (ISB #7432)
Jacob N. Matt (ISB #12482)
**KIRTON MCCONKIE**
1100 W. Idaho St., Ste. 930
Boise, ID 83702
(208) 370-3325
jtessmer@kmclaw.com
jmatt@kmclaw.com

Philip M. Musolino, *Pro Hac Vice*
D.C. Bar No. 294652
**MUSOLINO & DESSEL, PLLC**
1615 L Street, NW, Ste. 440
Washington, DC 20036
(202) 466-3883
pmusolino@musolinodessel.com

*Attorneys for The Democratic Republic of the Congo and Ministry of State in Charge of the Portfolio of the Democratic Republic of the Congo*

Sylvia J. Rolinski, Esq., *Pro Hac Vice*
D.C. Federal Bar No. 430573
**ROLINSKI LAW GROUP, LLC**
14915 River Road
Potomac, MD 20854
(301) 987-0202 (Telephone)
(301) 263-7100 (Facsimile)
sjr@rolinski.com

J. Will Varin (ISB #6981)
**VARIN THOMAS LLC**
242 N. 8th Street, Suite 220
P.O. Box 1676
Boise, Idaho 83701
Phone (208) 922-7060
Fax (866)717-1758
willvarin@varinthomas.com

*Attorneys for Defendants Doudou Roussel Fwamba Likunde and Anthony Nkinzo Kamole*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| PAYSERVICES BANK, an Idaho corporation,<br><br>Plaintiff,<br><br>v.<br><br>THE DEMOCRATIC REPUBLIC OF THE CONGO, *et al.*,<br><br>Defendants. | Case No. 1:26-cv-00009-REP<br><br>**MOVANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE SUR-REPLY OR, IN THE ALTERNATIVE, TO STRIKE REPLY EVIDENCE** |

## I. INTRODUCTION

Defendants the Democratic Republic of the Congo (the "DRC"), the Ministry of State in Charge of the Portfolio of the Democratic Republic of the Congo, Doudou Roussel Fwamba Likunde, and Anthony Nkinzo Kamole ("Moving Defendants") oppose Plaintiff PayServices

Bank's Motion for Leave to File Sur-Reply or, in the Alternative, to Strike Reply Evidence (ECF 72).

Sur-replies are "highly disfavored" because they are often used, as here, as a tactical device to secure the last word. Plaintiff's proposed Sur-reply in this case underscores that principle. Plaintiff's proposed Argument A belatedly quarrels with the origins of the anti-corruption court that Moving Defendants first discussed in their opening brief. Arguments B through E attack the availability of the new anti-corruption court for Plaintiff's claims, notwithstanding that Moving Defendants made no such claim. Argument F is devoted entirely to two extraneous, isolated events that Plaintiff raised for the first time in its Opposition, ECF No. 69, to the *forum non conveniens* motion, ECF No. 66. For that reason alone, the Court should decline to open another round of briefing on an issue Plaintiff has already had a full opportunity to address.

Leave should also be denied because the premise for its belated contentions is meritless. Plaintiff asserts that Moving Defendants waited until their Reply to present evidence concerning the availability and adequacy of the courts of the Democratic Republic of the Congo ("DRC"). They did not. Movants' opening memorandum devoted four pages to that issue. ECF No. 66-1 at 8–12. Plaintiff then substantially expanded the evidentiary record in its Opposition. ECF Nos. 69, 69-1, 69-2. Movants' Reply debunked those claims. The proposed Sur-Reply is simply an attempt to revive arguments Plaintiff already made and evidence it already submitted. The motion should be denied.

## II. ARGUMENT

### A. Movants Established the Adequacy of the DRC Forum in Their Opening Memorandum

The opening memorandum addressed the adequacy of the DRC as an alternative forum at

length. Section II.A, titled "The DRC is an Adequate Alternative Forum," begins at page 8. ECF No. 66-1 at 8. Movants cited controlling Ninth Circuit authority on the standard governing adequacy. ECF No. 66-1 at 8–9.

Relying on the U.S. Department of State's 2025 Investment Climate Statement, the memorandum explained that contracts in the DRC are enforced through its civil-law framework, that commercial courts in major business centers adjudicate commercial and contract disputes, and that the judicial system functions independently of the executive branch. ECF No. 66-1 at 9.

The memorandum addressed reforms under the Organisation pour l'Harmonisation en Afrique du Droit des Affaires ("OHADA") and the DRC Commercial Courts Act. ECF No. 66-1 at 9–10. Movants identified substantive remedies available under Articles 258 and 259 of the Congolese Civil Code for contractual and extra-contractual liability. ECF No. 66-1 at 11–12. And the memorandum cited scholarly legal analysis by attorneys Mopiti, Mbalanda, and Elekeleme in *Law and Practice in DRC, Commercial Contracts 2025*. ECF No. 66-1 at 12–16.

The opening memorandum therefore did exactly what Plaintiff now claims it failed to do: it identified an available forum and a satisfactory remedy and explained why the DRC courts are adequate under the governing *forum non conveniens* standard.

**B. The Reply Evidence Responded to Matters Plaintiff First Raised in Opposition**

1. <u>Plaintiff Substantially Expanded the Evidentiary Record in Opposition</u>

After Movants filed their opening memorandum, Plaintiff expanded the record with two new declarations and three new exhibits attacking the adequacy of the DRC forum.

First, Plaintiff submitted the Parker Declaration (ECF 69-1), attaching (1) the U.S. Department of State's 2025 Investment Climate Statement, (2) a Freedom House country report, and (3) a World Justice Project Rule of Law Index ranking. ECF No. 69 at 13–17; ECF No. 69-1. Plaintiff relied on those materials to argue that DRC judges are susceptible to corrupt influences,

that businesses report state-owned enterprises receive favorable treatment, and that the DRC ranks last in the world for absence of corruption. ECF No. 69 at 13–15.

Second, Plaintiff submitted the Second Declaration of Lionel Danenberg (ECF 69-2), asserting threats to personal safety, political interference, the alleged poisoning of a former CADECO official, and his inability to return to the DRC. ECF No. 69-2 ¶¶ 3–9.

None of this material appeared in the opening memorandum, and was newly introduced by Plaintiff.

2. Each Reply Exhibit Responds to Specific Opposition Material.

As explained below, each exhibit included in Reply directly responds to materials and arguments raised by Plaintiff:

- **MX1 (Kalonji Declaration, ECF 71-1).** The Kalonji Declaration responds to Plaintiff's contention that Movants offered "no evidence" about DRC courts (ECF 69 at 10–13) by confirming the adequacy of the Congolese judicial system from the perspective of a senior Congolese legal advisor. ECF No. 71-1 ¶¶ 6, 14. It responds to Danenberg's allegation that he cannot safely return to the DRC (ECF 69-2 ¶ 4) by explaining that the security escort was a conventional courtesy extended by the Office of the President. ECF No. 71-1 ¶ 15. And it responds to the implicit assertion that personal appearance is required by explaining that representation by counsel is permitted in civil and commercial matters. ECF No. 71-1 ¶ 11.
- **MX3 (Translated press articles, ECF 71-3).** These articles respond directly to Danenberg's assertion in his Second Declaration that a former CADECO official was "poisoned." ECF No. 69-2 ¶ 6. The press articles debunk entirely Danenberg's purported recollection of a purported video – which he now says is unavailable – in which a former official of the DRC National Museum supposedly made that claim. The Opposition

memorandum itself never mentions the poisoning claim, except as part of a reference to paragraphs 3 through 9 of the Second Danenberg Declaration. ECF No. 69 at 16 of 26. Plaintiff now proposes to argue the meaning of the articles themselves, ECF No. 72-1 at 5–6 of 7, but offers no explanation for why it failed to disclose, much less discuss, those articles when it first presented its unauthenticated, double-hearsay version of the story. That is precisely the sort of "last word" maneuver that should be rejected.

- **MX4 (Trower materials, ECF 71-4).** MX4 responds to Plaintiff's reliance on *Trower v. Blinken* as evidence that the DRC government defies its own courts' judgments. ECF No. 69 at 15–16; *see also* ECF No. 71 at 6. Plaintiff raised *Trower* for the first time in its Opposition, and the full public record of that case was available to Plaintiff when it filed. Plaintiff nonetheless now seeks to argue the meaning of that record in a sur-reply. Proposed Sur-Reply, ECF No. 72-1 at 7 of 7.
- **MX2 (Ordinance-Law No. 26/007, ECF 71-2).** MX2 was submitted in response to Plaintiff's broader contention that corruption, political influence, and governmental control render the DRC judiciary institutionally incapable of providing an adequate forum. ECF No. 69 at 13–17. As Moving Defendants explained in their Reply: "Plaintiff's Baseless Claims of Corruption Are Precisely the Type of Allegations Rejected by Courts Considering *Forum Non Conveniens* Dismissals." Reply, ECF No. 71, at 5 of 16. The decree establishes DRC reform efforts with respect to the very general allegations of corruption asserted by Plaintiff in its Opposition. Plaintiff is certainly free to give the President even more credit for the anti-corruption initiative than Moving Defendants ascribed, proposed Sur-Reply, Argument A, at 2-3 of 7, but that is not a response to a new argument. It is one more "last word" maneuver.

Having failed to dispute in its Opposition the jurisdiction and the availability of the DRC

commercial courts, Plaintiff devotes the bulk of its proposed Sur-Reply to the unremarkable contention that the anti-corruption court is not available for PayServices' claim. Proposed Sur-Reply, at 3-5, Arguments B through E.

But Moving Defendants did not contend—and do not contend—that the Economic and Financial Criminal Court is the commercial court in which Plaintiff must bring its contract claims. The commercial courts and civil remedies available in the DRC were identified in the opening memorandum. ECF No. 66-1 at 9–12. As Moving Defendants explained in their Reply: "PayServices has nothing at all to say about the scholarly professional writings of respected Congolese attorneys Didier Mopiti, Paulin Mbalanda and Rodrick Elekeleme …" ECF No. 71, at 5 of 16. That argument, in the Reply, in turn referred to the argument in the opening motion that commercial courts are routinely available to resolve claims of the sort asserted by Plaintiff in this case. Motion to Dismiss, ECF No. 66-1, at 13-15, including detailed discussion of the commercial courts and the 2023 Commercial Courts Act.[1]

---

[1] Notwithstanding that the Moving Defendants rely on the commercial courts in the DRC, it is worth noting that there are various pathways for prosecutors, with and without the participation of civil complainants, to bring proceedings arising out of public corruption. In the new anti-corruption court, for example, a victim can join proceedings as a "civil party" directly during the preliminary investigation conducted by the National Economic and Financial Prosecutor's Office (PNEF) or, at the latest, at the hearing before the conclusion of the proceedings. The victim thus joins the criminal action already initiated by the public prosecutor. In addition, the victim of a financial crime may directly summon the defendant before the criminal court, provided that the victim has gathered the necessary evidence. This court was established by presidential decree authorized with ratification by parliament, and demonstrates the accuracy of Moving Defendants' declarations, as opposed to Plaintiff's articulations. Furthermore, even outside the Economic Crimes Court, acts of corruption committed by officials are effectively prosecuted before the Court of Cassation and the public prosecutor's office attached to it. For example, former Minister of Justice and Keeper of the Seals Constant Mutamba is currently in prison, having been sentenced to a prison term for corruption and embezzlement of public funds: https://www.facebook.com/Reuters/videos/congo-court-sentences-ex-minister-to-forced-labor-news/1087852050162750/, https://www.youtube.com/watch?v=EECR42DDT8w, https://www.africanews.com/2025/09/03/congo-ex-justice-minister-sentenced-to-forced-labor-for-corruption/, https://www.facebook.com/firstpostin/videos/firstpostafrica-drc-ex-justice-minister-jailed-for-corruptionconstant-mutamba-wh/638840265575675/. Similarly, Augustin

Illustrative of the misuse of the sur-reply vehicle, Plaintiff attempts to re-argue *Daventree Ltd. v. Republic of Azerbaijan*, 349 F. Supp. 2d 736 (S.D.N.Y. 2004), ECF No. 72-1 at 5 of 7, notwithstanding that *Daventree* was argued in both Plaintiff's Opposition, ECF No. 69 at 13–14 of 26, and Movants' Reply, ECF No. 71 at 6, 7, and 9 of 16. Plaintiff's assertion that the Sur-Reply addresses only truly new issues is therefore without merit.

3. <u>The Legal Standard Distinguishes Rebuttal from Gap-Filling.</u>

"Surreplies are highly disfavored, as they usually are a strategic effort by the nonmoving party to have the last word on a matter." *Chenco Eng'g & Consulting GmbH v. Do-Fluoride New Materials Co.,* 2025 WL 2430556, at *6 (D. Idaho Aug. 22, 2025) (internal quotation marks omitted); *see also* J.*R. Simplot Co. v. McCain Foods USA, Inc.*, 2021 WL 4899465, at *2 (D. Idaho Oct. 20, 2021). Leave to file a sur-reply is typically denied because a sur-reply is often a "roadblock to this Court securing the just, speedy, and inexpensive determination of every action and proceeding." *Green Tech. Lighting Corp. v. Insure Idaho, LLC*, 2023 WL 2744121, at *15 (D. Idaho 2023) (internal citations omitted), *aff'd sub nom. Green Tech. Lighting Corp. v. Crouse & Assocs. Ins. Servs. of N. California, Inc.,* 2024 WL 4249727 (9th Cir. 2024).

> In exercising its discretion, the court should consider whether the movant's reply in fact raises arguments or issues for the first time, whether the nonmovant's proposed surreply would be helpful to the resolution of the pending motion, and whether the movant would be unduly prejudiced were leave to be granted.

*Banner Health v. Sebelius*, 905 F. Supp. 2d 174, 187 (D.D.C. 2012).[2] By contrast, reply evidence that responds to matters raised in opposition is proper—a distinction that is well established.

---

Matata Ponyo, a former prime minister, was sentenced by the Constitutional Court to 10 years of hard labor (equivalent to imprisonment) for embezzling more than $245 million intended for the Bukanga-Lonzo agro-industrial park project. The sentence is accompanied by a five-year ban on holding public office and on the right to vote. Each of these prosecutorial avenues is, of course, fully separate and apart from the commercial courts which routinely handle civil claims of the sort advanced by PayServices.

[2] For a surreply to be appropriate, the opposing party's reply must have raised 'truly new'

In *Skidmore v. J.R. Simplot Co.*, No. 1:23-cv-00477-BLW, 2025 U.S. Dist. LEXIS 268015, at *19–20 (D. Idaho Dec. 29, 2025), this Court struck reply materials where the movant used its reply "to retroactively cure deficiencies in [its] initial filings." That is materially different from evidence submitted to rebut matters first introduced in opposition. Here, Plaintiff's initial filing presented the adequacy case; the reply exhibits answered Plaintiff's attack on it.

*Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996), on which Plaintiff relies, arose in the summary-judgment context. It holds that a court should not rely on genuinely new reply evidence without affording the non-movant a fair opportunity to respond. *Provenz* does not categorically bar rebuttal evidence on reply. *See id.* And its concern for fairness to the nonmovant is satisfied here: Plaintiff has reviewed each reply exhibit and responded to each one in its proposed Sur-Reply. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) (court "need not consider arguments raised for the first time in a reply brief"); *Fort Hall Landowners All. v. BIA*, No. CV-99-52-E-BLW, 2007 U.S. Dist. LEXIS 50638, at *4–5 (D. Idaho July 9, 2007) (purpose of the rule against new reply arguments "is obviously to prevent a party from 'sandbagging' opponents"). Movants did not sandbag Plaintiff; they responded to the evidence Plaintiff put before the Court.

**C. The Proposed Sur-Reply Is Not a Limited Response to New Evidence.**

Although Plaintiff describes its proposed filing as narrow, the proposed Sur-Reply (Exhibit A to ECF 72) advances substantive arguments on Congolese constitutional law, whether an ordinance-law has been ratified by Parliament, prosecutorial jurisdiction, constitutional protections for sitting ministers, whether the newly created court is operational, the credibility and independence of Movants' declarant, the admissibility of translated press materials, and the

arguments." *Trotman v. Transunion, LLC,* 2026 WL 2516819, at *2 (D.D.C. Aug. 26, 2026).

meaning of the *Trower* record. None of that addresses unfair surprise. It is another round of merits briefing on the adequacy of the DRC as an alternative forum.

Under D. Idaho Local Civil Rule 7.1(d)(1) (effective August 17, 2026), a party seeking to file a sur-reply or otherwise supplement briefing "must first file a motion requesting leave of court Motions made under this rule will be granted only in the discretion of the court." That discretion should not be exercised to permit a continuing cycle in which Plaintiff introduces new evidence in opposition, Movants answer it on reply, and Plaintiff then receives another brief to answer the rebuttal.

**D. Plaintiff Has Not Shown Prejudice Warranting the Requested Relief.**

Plaintiff's proposed Sur-Reply demonstrates that it has reviewed each of the challenged exhibits, identified the propositions for which Movants cited them, analyzed the underlying materials, and formulated substantive responses. Plaintiff was not deprived of a meaningful ability to understand or address Movants' evidence.

There is no prejudice warranting the requested relief because the challenged material is rebuttal, and the Court can disregard any discrete matter it determines exceeds the proper scope of reply. *See Dutta v. State Farm Mut. Auto. Ins. Co.*, 895 F.3d 1166, 1172 (9th Cir. 2018) ("Mitigation of any unfairness, following objection, may take the form of granting the objecting party leave to file a surreply opposition to the new matter."). The more proportionate course here is for the Court to consider the reply exhibits as rebuttal and disregard any discrete point that goes beyond proper rebuttal scope—not to authorize a new round of briefing. *See JG v. Douglas County Sch. Dist.*, 552 F.3d 786, 803 n.14 (9th Cir. 2008) (finding no abuse of discretion in denying sur-reply where court did not consider the new evidence). There is no basis to strike MX1 through MX4 wholesale, particularly where the materials respond to the record Plaintiff created.

**E. Plaintiff's Reliance on Local Civil Rule 7.1(b)(2) Does Not Require Striking the Reply Exhibits.**

Rule 7.1(b)(2) requires the moving party to file with its motion documentary materials "on which the moving party intends to rely." That rule does not bar a movant from submitting material to rebut evidence first introduced by the opponent. Movants submitted the materials upon which their affirmative adequacy showing relied the opening memorandum. ECF No. 66-1 at 8–16. The reply exhibits responded to Plaintiff's attack on that showing. This is not *Skidmore*, where the movant attempted to cure deficiencies in its original evidentiary showing through its reply. 2025 U.S. Dist. LEXIS 268015, at *19–20. Here, the adequacy argument was fully presented before Plaintiff filed its Opposition.

## III. CONCLUSION

Movants established in their opening memorandum that the DRC provides an adequate alternative forum. Plaintiff then sought to rebut that showing with extensive additional evidence. Movants answered that evidence in Reply. Plaintiff's proposed Sur-Reply does not identify a defect that requires further briefing. Instead, it seeks another opportunity to litigate the significance of Movants' rebuttal evidence and advances additional substantive arguments.

For these reasons, Movants respectfully request that the Court deny Plaintiff's Motion for Leave to File Sur-Reply or, in the Alternative, to Strike Reply Evidence.

DATED this 9th day of October, 2026.

**KIRTON MCCONKIE**

*/s/ Jennifer Reinhardt-Tessmer*
Jennifer Reinhardt-Tessmer

**MUSOLINO & DESSEL, PLLC**

*/s/ Philip M. Musolino*
Philip M. Musolino

*Attorneys for The Democratic Republic of the Congo and Ministry of State in Charge of the Portfolio of the Democratic Republic of the Congo*

**ROLINSKI LAW GROUP, LLC**

*/s/ Sylvia J. Rolinski*
Sylvia J. Rolinski

**VARIN THOMAS LLC**

*/s/ J. Will Varin*
J. Will Varin

*Attorneys for Defendants Doudou Roussel Fwamba Likunde and Anthony Nkinzo Kamole*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 9th day of October, 2026, I electronically filed the foregoing document through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

- **C. Anderson Parker**
  andy@parkersanchez.com
- **Miguel Andrès Sànches-Ross**
  andres@parkersanchez.com
- **John F. Kurtz, Jr.**
  jfk@kurtzlawllc.com
- **Alyson Foster**
  alyson@dempseyfoster.com
- **J. Will Varin**
  willvarin@varinthomas.com
- **Jennifer Aiko**
  jmaiko@hollandhart.com
- **Kenneth Charles Shumard**
  kshumard@hawleytroxell.com
- **Sylvia J. Rolinski**
  sjr@rolinski.com
- **Tyler J. Anderson**
  tanderson@hawleytroxell.com

and all counsel of record via CM/ECF Notice.

*/s/ Jennifer Reinhardt-Tessmer*
Jennifer Reinhardt-Tessmer